# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-10322-GW(FFMx) | Date | July 11, 2013 |
|---|---|---|---|
| Title | McRO, Inc., v. Namco Bandai Games America, Inc. | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

John F. Petrsoric

Attorneys Present for Defendants:

Tony M. Diab
Lynn S. Herndon
Sonal N. Mehta - by telephone
Benjamin L. Singer

**PROCEEDINGS:** DEFENDANT NAUGHTY DOG, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (filed 06/10/13; Dkt. No. 105)

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's final ruling. Defendants' motion is GRANTED IN PART and DENIED IN PART. Defendant Naughty Dog, Inc.'s response to the amended complaint will be due 21 days from the date of this order.

:   04

Initials of Preparer   JG

*McRO, Inc., d.b.a. Planet Blue v. Naughty Dog, Inc.*, Case No. CV-12-10335-GW (FFMx) consolidated with *McRO, Inc., d.b.a. Planet Blue v. Namco Bandai Games America, Inc.*, CV 12-10322-GW (FFMx) (LEAD CASE)
Tentative Ruling on Defendant Naughty Dog's Motions to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)

## I. Background

On December 4, 2012, Plaintiff McRO, Inc., d.b.a. Planet Blue ("Plaintiff" or "Planet Blue") filed separate Complaints in this district against sixteen videogame companies (collectively, "Defendants"). *See, e.g., McRO, Inc., d.b.a. Planet Blue v. Namco Bandai Games America, Inc.*, No. CV 12-10332-GW (FFMx), Docket No. 1. The Complaints alleged that Defendants directly or indirectly infringed Plaintiff's patents for automatically animating the lip synchronization and facial expressions of 3D characters in video and computer games. *Id.* All sixteen of the Complaints were identical, with the exception of party names and the presence or absence of (verbatim) indirect infringement claims against certain defendants.[1]

Eleven of the sixteen Defendants, not including Naughty Dog, Inc. ("Naughty Dog"), filed or joined in motions to dismiss, which the Court granted on March 4, 2013. *See generally* Order, Docket No. 41. In its Order, the Court held that "the Complaints' generic references to methods that automatically animate lip synchronization and facial expression in Defendants' 'computer and/or videogames'" were "too conclusory and too vague to state a claim for relief." Order at 6. The Court indicated that to survive Defendants' motions, Plaintiff must "identify either a targeted product or a reasonably delineated category of products to give 'fair notice' of the claims being made." *Id.* "In the context of a dispute involving sixteen video and computer game manufacturers, a detailed description of Defendants' products is all the more necessary because Plaintiff does not allege its inventions cover *all* methods related to synchronizing facial expressions of animated characters in computer or video games." *Id.* at 7 (emphasis in original). In dismissing Plaintiff's Complaints with leave to amend, the Court concluded that without a "more detailed description of the allegedly infringing products, Defendants cannot fairly ascertain which of their different implementations of the lip synchronization and facial animation technologies are the 'accused products' described in Plaintiff's Complaints." *Id.*

Following the dismissal, Plaintiff filed First Amended Complaints ("FACs") and then Second Amended Complaints ("SACs"). *See, e.g.,* Docket Nos. 44, 65. The operative pleadings now provide a list of specific video games as having been made using the patented methods, including the release date and gaming system information for those games. *See, e.g.,* SAC, Docket No. 57-1.[2] The SACs also allege that Defendants "employ[] software methods and processes to automate the animation of lip synchronization and facial expression for its three-dimensional characters during

---

[1] In light of Plaintiff's near-identical Complaints and the immaterial case-to-case differences in the pleadings filed by the parties, the Court addressed all of Defendants' motions to dismiss set for March 4, 2013 in a single Order. *See generally* Docket No. 41.

[2] For the sake of convenience, the Court refers to the SAC filed against Namco Bandai Games America, Inc. when referencing allegations common to all Defendants.

1

the creation and development of the [identified games]" that infringe "either literally or by equivalents" one or more claims of the patents in suit. SAC ¶ 15. In addition, the SACs further allege that Defendants infringe by using software processes "for automatically performing and animating character lip synchronization using the phonetic structure of the words to be spoken by the characters." *Id.* ¶ 17.

On May 6, 2013, Naughty Dog filed a Motion to Dismiss. Docket No. 75.[3] On May 17, Plaintiff filed a First Amended Complaint against Naughty Dog. Docket No. 92. Because the amended complaint mooted the Motion to Dismiss, Naughty Dog withdrew it. Docket No. 94. On June 10, 2013, Naughty Dog filed the instant motion to dismiss portions of the First Amended Complaint, arguing that Plaintiff's allegations fail to state plausible claims for either willful infringement or infringement pursuant to 35 U.S.C. § 271(g). *See* Mot., Docket No. 105.

## II. Legal Standard
### A. *Motion to Dismiss for Failure to State a Claim*

A motion to dismiss for failure to state a claim raises a "purely procedural question not pertaining to patent law," for which courts apply "the law of the regional circuit." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007); *In Re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012); *Kelora Sys., LLC v. Target Corp.*, No. C 11-1058 CW, 2011 U.S. Dist. LEXIS 58332, at *7 n.1 (N.D. Cal. May 31, 2011).

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59; *see also William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

### B. *Infringement under 35 U.S.C. § 271(g)*
35 U.S.C. 271(g) provides as follows:

> Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented

---

[3] Also on May 6, 2013, other Defendants filed a Motion to Dismiss the amended pleadings. Docket No. 78. On May 30, 2013, the Court denied that motion. Docket No. 100. Naughty Dog's instant motion raises theories different than those argued in the motion already denied by the Court.

in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent. In an action for infringement of a process patent, no remedy may be granted for infringement on account of the noncommercial use or retail sale of a product unless there is no adequate remedy under this title for infringement on account of the importation or other use, offer to sell, or sale of that product. A product which is made by a patented process will, for purposes of this title, not be considered to be so made after —

>    (1) it is materially changed by subsequent processes; or
>    (2) it becomes a trivial and nonessential component of another product.

"Congress enacted § 271(g) to create an act of infringement when an entity 'without authority imports in the United States or sells or uses within the United States a product which is made by a process patented in the United States.'" *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1343 (Fed. Cir. 2012) (quoting S. Rep. No. 100–83, at 48 (1987)).

### C. *Timing of Notice Requirement for Willful Patent Infringement*

The Federal Circuit has held that an allegation of willful infringement must either be made based on the accused infringer's pre-litigation knowledge, or be maintained only if the patentee seeks a preliminary injunction:

> [I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. It is certainly true that patent infringement is an ongoing offense that can continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. Fed. R. Civ. Pro. 8, 11(b). So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct. By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. *See* 35 U.S.C. § 283; *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). **A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct**. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness.
>
> We fully recognize that an accused infringer may avoid a preliminary injunction by showing only a substantial question as to invalidity, as opposed to the higher clear and convincing standard required to prevail on the merits. *Amazon.com*, 239 F.3d at 1359 ("Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial. The showing of a substantial question as to invalidity thus requires less proof than the clear and convincing showing necessary to establish invalidity itself."). However, this lessened showing simply accords with the requirement that recklessness must be shown to recover enhanced damages. A substantial question about invalidity or infringement is likely sufficient not only to

3

> avoid a preliminary injunction, but also a charge of willfulness based on post-filing conduct.
>
> We also recognize that in some cases a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced. In that event, whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case.

*In re Seagate Tech.*, LLC, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (emphasis added).

### III. Analysis

#### A. *The Court Would Hold That Plaintiff Has Adequately Alleged Infringement Under 35 U.S.C. § 271(g)*

##### 1. 35 U.S.C. § 271(g) Is Not Limited to Acts of Importation

Naughty Dog argues that 35 U.S.C. § 271(g) is "a narrow, rarely-applied form of infringement directed to a patented process performed in a foreign country but embodied in a product imported into the United States." Mot. at 2. Based on its reading of 35 U.S.C. § 271(g), Naughty Dog argues that Plaintiff's allegation of infringement under that subsection should be dismissed because Plaintiff has "no factual basis to infer whether the patented process is even performed outside the U.S." *Id.*

Courts have reached conflicting conclusions concerning the territorial requirements of § 217(g), as well as the necessity of examining the legislative history of the section to interpret it. The plain language of the statute is not limited to circumstances in which the manufacture of the product via an infringing process is performed abroad. Instead, it establishes liability for importation, or offers for sale, sales, or uses of a product so manufactured. *Id.* Those acts are listed in the disjunctive and are thus independent acts of infringement. "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise[.]" *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). "It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883). Thus, in rejecting the argument made by a defendant that § 271(g) did not apply to its sales of products manufactured by an infringing process, the court in *Shamrock Technologies, Inc. v. Precision Micron Powders, Inc.* held that it "need not examine the legislative history of section 271(g) because where, as here, the terms of a statute are unambiguous, judicial inquiry is complete except in 'rare and exceptional circumstances.'" CV No. 91-0869, 1991 U.S. Dist. LEXIS 13142, at *5 (E.D.N.Y. Aug. 8, 1991) (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991)). Moreover, *Shamrock* noted that even if the terms of the statute had been unclear:

> the legislative history actually supports the application of section 271(g) to domestic sellers of infringing goods as well as manufacturers and importers of such goods. *See* H.R. Rep. No. 60, 100th Cong., 1st Sess., at 3 (1987) (stating that the purpose of section 271(g) is to provide "meaningful protection to owners of patented processes" because prior to its enactment there was "no remedy against parties who use or sell

4

the product, regardless where it is made"); S. Rep. No. 83, 100th Cong., 1st Sess. 46 (1987) (Section 271(g) "was crafted to apply equally to the use or sale of a product made by a process patented in this country whether the product was made (and the process used) in this country or in a foreign country"); H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 1085-86 (1988), reprinted in 1988 U.S.C.C.A.N. 2118-19 (stating that both the House and Senate bills provide that "using, selling, or importing a product made in violation of a U.S. process patent is an act of patent infringement") (emphasis added). *But Cf.* S. Rep. No. 83, 100th Cong., 1st Sess. 46 (1987) (stating that the inclusion of domestic process patent infringement in the bill is a formality to conform section 271(g) to the General Agreement on Tariff and Trade ("GATT")).

*Id.* at *5, n.4. The last point is important. The Senate Report on the bill stated that "[b]ecause of our obligations under the GATT treaty to refrain from trade discrimination, the process patent bill was crafted **to apply equally to the use or sale of a product** made by a process patented in this country **whether the product was made (and the process used) in this country or in a foreign country.**" S. Rep. No. 100-83 (1987), *reprinted in* 9-25 Chisum on Patents 100-60 (2013) (emphasis added). That statement fully supports the ordinary meaning of the statute, and undercuts Naughty Dog's limited reading.

Likewise, the court in *Avery Dennison Corp. v. UCB Films PLC* relied on the plain language of the statute in rejecting an argument that liability under § 271(g) required foreign manufacture. No. 95 C 6351, 1997 U.S. Dist. LEXIS 13594, at *7 n.2 (N.D. Ill. Oct. 17, 1997). And, in a decision recognizing the unsettled nature of the reach of § 271(g) and assuming without deciding that the statute means what it says, this Court has previously found the *Avery/Shamrock* line of cases persuasive over the line of cases relied on by Naughty Dog. *Designing Health, Inc. v. Erasmus*, CV 98-4758 LGB (CW), 2002 U.S. Dist. LEXIS 27790, at *32, n.6 (C.D. Cal. Feb. 26, 2002).

Naughty Dog relies on *Asahi Glass Co., Ltd. v. Guardian Industries Corp.*, which held that "'the fundamental purpose underlying passage of the statute has absolutely no application' in a scenario when the patented methods are being used in this country." 813 F. Supp. 2d 602, 614 (D. Del. 2011). *Asahi* held that "[t]he rationale is straightforward: Congress recognized that § 271(g) did not have to address unauthorized domestic uses of patented processes, because there are already remedies for such conduct (under 35 U.S.C. § 271(a))." 813 F. Supp. 2d at 614. This analysis reads much into, and out of, Congress's statements about what § 271(g) "had to" address. It is true that the Senate Report referred to § 271(g)'s nondiscriminatory reach as a "formality" to comply with GATT "with little or no practical consequences in patent enforcement" because "[t]he use of the process in this country is already an act of infringement." S. Rep. No. 100-83. But the fact that the legislature believed the non-discriminatory provision to be largely cumulative does not mean that it does not exist. While it may have been considered a "formality," the very same paragraph of the report says that the section applies "**equally** to the use or sale of a product made by a process patented in this country **whether the product was made (and the process used) in this country or in a foreign country.**" *Id.* (emphasis added). *Asahi*'s reading is therefore consistent with neither the language of the statute nor the legislative history's recitation of the statute's scope.

Further, *Asahi* relied for its conclusion on its own earlier decision in *British Telecommunications v. SBC Communications Inc.*, which resorted to the legislative history because the Federal Circuit did so in an earlier case. Civ. Nos. 03-526-SLR, 03-527-SLR, 03-528-SLR, 2004

5

U.S. Dist. LEXIS 29772, at *8 (D. Del. Feb. 24, 2004) (discussing *Bayer AG v. Housey Pharma., Inc.*, 340 F.3d 1367, 1376 (Fed. Cir. 2003)). But as discussed more fully in the following section, what the Federal Circuit found ambiguous in *Bayer* was not the phrase "[w]hoever . . . offers to sell, sells, or uses within the United States," but rather, what it means for a product to be "made by a process." 340 F.3d at 1371, 1377. Thus, it is unclear why *British Telecommunications* reached the legislative history at all, and it appears that it, as well as *Asahi*, rest on an shaky foundation.[4]

Naughty Dog also relies on *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1348 (Fed. Cir. 2000), which it cites for the statement that "[w]hen the process used abroad is the same as the process covered by a United States patent, liability for infringement arises only upon importation, sale or offers, or use in the United States as set forth in § 271(g)." Mot. at 7. But *Ajinomoto* merely says that when manufacturing happens abroad, there is no liability until importation, sales, or offers for sale in the United States; in other words, the statute has no extraterritorial effect. *Ajinomoto* says nothing to support Naughty Dog's position here, and the Federal Circuit did not address the applicability of § 271(g) to domestic manufacturing in *Ajinomoto*, whose facts concerned products produced abroad.

Even were the Court to accept Naughty Dog's characterization of the statute, Naughty Dog's argument would still fail. The allegedly infringing process was either performed in the United States or outside of the United States. If the alleged process occurred inside the United States, there would be infringement under at least § 271(a). If it occurred outside, there would be infringement under §271(g). Naughty Dog's argument that Plaintiff has "no factual basis to infer whether the patented process is even performed outside of the U.S." is an attempt to escape liability on the grounds that only Naughty Dog, and not Plaintiff, knows exactly where the allegedly infringing conduct occurred. That argument is contrary to the tenor of the Federal Circuit's recent decision in *K-Tech Telecommunication, Inc. v. Time Warner Cable, Inc.*, Nos. 2012-1425, 2012-1446, 2013 U.S. App. LEXIS 7766, at *22 (Fed. Cir. 2013) ("A defendant cannot shield itself from a complaint of direct infringement by operating in such secrecy that the filing of a complaint itself is impossible.").[5]

Finally, the Court should reject Naughty Dog's argument that § 271(g) is an indirect infringement statute, and thus requires more particularity in pleading than § 271(a). Reply, Docket No. 143, at 7. § 271(g) does not impose liability for the acts of others. It merely makes it an act of infringement to import, sell, offer to sell, or use, a product made by an infringing process, just like § 271(a) makes it an act of infringement to import, sell, offer to sell, use, or make a patented invention. Like § 271(a), § 271(g) imposes liability only on the individual who performs the enumerated acts. While § 271(a) makes it an act of infringement, inter alia, to sell a patented article

---

[4] Naughty Dog also relies on *Hughes Aircraft Co. v. National Semiconductor Corp.*, 857 F. Supp. 691, 698-99 (N.D. Cal. 1994), which held that § 271(g) did not apply to domestic manufacturing because it was "designed to provide a remedy within the United States for United States process patent holders whose processes were being used in other countries to manufacture goods for importation into the United States." Like *Asahi*, this ignores both the actual text of the statute and the statements in the legislative history establishing that while the statute was **motivated** by foreign manufacture, the statute was made equally applicable to domestic manufacture to comply with GATT's nondiscrimination rules.

[5] The Court discussed *K-Tech* in its Order Denying Defendants Namco Bandai et al.'s Motion to Dismiss. *See* Docket No. 100

6

or to make an article by a patented process, § 271(g) makes it an act of infringement to sell an article made by a patented process. Both involve direct, not indirect, liability.[6]

### 2. The Alleged Conduct Is "Making a Product," so 35 U.S.C. § 271(g) Applies

"[I]n order for a product to have been 'made by a process patented in the United States' it must have been a physical article that was 'manufactured' . . . the production of information is not covered." *Bayer*, 340 F.3d at 1377. Naughty Dog thus argues that "[t]he steps of the independent claims [of Plaintiff's patents] appear to be directed to particular methods of developing an animated scene within a group of scenes eventually accessed as part of a library of *information* within a game. Therefore . . . § 271(g) does not apply to information, such as the accused software code and libraries at issue in this case . . . ." Mot. at 10 (emphasis in original).

*Bayer* does not support that conclusion. *Bayer* involved a patent on a method of screening for substances that specifically inhibit or activate a particular protein; the information obtained from that screening process was allegedly used to determine which substances to manufacture. 340 F.3d at 1369-1370. Naughty Dog points to *Bayer*'s holding that the patented process must be used "directly in the manufacture of the product, and not merely as a predicate process to identify the product to be manufactured." Mot. at 10-11 (quoting *Bayer*, 340 F.3d at 1378). But the accused activity here is not analogous to the activity at issue in *Bayer*. The asserted methods for automatically animating lip synchronization and facial expressions of animated characters are allegedly used to make the accused games, not to decide which games to make. The non-manufacturing "information" in *Bayer* was of the sort that "a person possessing the allegedly infringing information could, under Housey's interpretation, possibly infringe by merely entering the country." *Bayer*, 340 F.3d at 1376 (Fed. Cir. 2003). Nothing of the sort is at issue here, where the "information" – the animated scenes – are integrated into the game.

Likewise, the holding that Naughty Dog cites from *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1323 (Fed. Cir. 2005) ("[b]ecause the 'transmission of information,' like the 'production of information,' does not entail the manufacturing of a physical product, section 271(g) does not apply") is not applicable to Naughty Dog's alleged activity. Here, the alleged infringement is not merely the transmission of information, but rather, Naughty Dog's use of the method to manufacture a "physical product."

While decided under § 271(f) rather than § 271(g), the Supreme Court's analysis in *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437 (2007), also appears instructive. The issue in *Microsoft* was whether "computers made in another country when loaded with Windows software copied abroad from a master disk or electronic transmission dispatched by Microsoft from the United States" could infringe under § 271(f), which provides that infringement occurs when one "'supplies . . . from the United States,' for 'combination' abroad, a patented invention's 'components.'" *Id.* at 441-42 (quoting § 271(f)(1)). The Court held that a copy of computer software that is "capable of interfacing with the computer," as opposed to "software detached from an activating medium," is a "component" of the computer on which the software is installed. *Id.* at 449, 451.

---

[6] While the parties in *Ormco Corp. v. Align Tech., Inc.*, 609 F. Supp. 2d 1057 (C.D. Cal. 2009), appear to have referred to § 271(g) as an indirect infringement statute, and the court employed that terminology, the issue was not before the court, and the court did not decide it.

This reading of *Microsoft* was applied to § 271(g) in *CNET Networks, Inc. v. Etilize, Inc.*, in which the accused manufactured product was an electronic catalog:

> This court agrees with *CNET* that *Microsoft* is instructive for the concept that an electronic catalog, like computer software, is not simply an intangible collection of information, but can also be thought of as having a physical, tangible embodiment once it is expressed and stored on computer readable media in the form of magnetic fields on a hard drive or etchings on a CD-ROM. The catalog in this case, therefore, is distinguishable from the abstract information at issue in *Bayer*. The claims in this case are directed toward creation of a product catalog stored on computer readable media, not the identification of whether a particular substance inhibits or does not inhibit a particular protein. In other words, the electronic catalog in this case, far from being abstract information or knowledge, is a physical article no different from a product catalog manufactured and assembled on paper bound with stitching, glue or staples. The court holds that the catalog is a "product" within the meaning of section 271(g) which is "made by" CNET's patented processes.

528 F. Supp. 2d 985, 994 (N.D. Cal. 2007). Similarly, *Ormco Corp. v. Align Tech., Inc.* involved the determination of "whether the 3D digital model can be considered a 'product made' under § 271(g)." 609 F. Supp. 2d 1057, 1076 (C.D. Cal. 2009). *Ormco* held that "the 3D digital model is not a mere package of information, but a 'creation' produced by 'practicing each step' of a patented process." *Id.* (citing *CNET*, 528 F. Supp. 2d at 994).

*Yangaroo Inc. v. Destiny Media Technologies Inc.*, cited by Naughty Dog, reached a different result than *CNET* and *Ormco* not because it disagreed that digital content could be a "product," but because "[w]hat is claimed in the '712 patent is 'a method of distributing content' that already exists. The '712 patent claims no method or process for the creation of the content that Yangaroo argues constitutes the product." 720 F. Supp. 2d 1034, 1038 (E.D. Wis. 2010) *aff'd*, 412 Fed. Appx. 305 (Fed. Cir. 2011). *See also CNET*, 528 F. Supp. 2d at 995 ("*NTP* is distinguishable because the claims in this case are directed to the creation and manufacture of a catalog, not to its transmission or delivery.")

Thus, the Court would hold that Plaintiff has adequately alleged infringement under 35 U.S.C. § 271(g).

### B. The Court Would Hold that Plaintiff has Not Adequately Alleged Willful Infringement

*Seagate* makes clear that an allegation of willfulness based on the accused infringer's post-suit knowledge of the patent can only be sustained if the plaintiff seeks a preliminary injunction. 497 F.3d at 1374 ("[W]hen an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction . . . . A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct."). Accordingly, the Northern District of California has held that "[k]nowledge of the Patents at Issue from service of the initial complaint does not warrant imposition of enhanced damages for willful conduct based solely upon post-filing conduct." *LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*, No. 11-CV-06173 YGR, 2012 U.S. Dist. LEXIS 101325, at *18 (N.D. Cal. May 30, 2012).

Plaintiff argues that "[t]his Court has ruled that *Seagate* is not controlling for pleading willful infringement, and therefore a 'plaintiff need not allege specific facts establishing recklessness under *Seagate*.'" Opp'n, Docket No. 124, at 4 (citing *Sony Corp. v. LG Elecs. U.S.A., Inc.*, 768 F. Supp. 2d 1058, 1064 (C.D. Cal. 2011)). *Sony*, which held that a plaintiff was not required to plead specific facts demonstrating objective recklessness under *Seagate*, is not on point. We are not here presented with a question of whether the claim contains sufficient factual detail. Instead, the question is whether the claim can **exist** under the circumstances present, where the alleged knowledge of the patent resulted only from the filing of the original complaint in the action and the plaintiff has not sought a preliminary injunction. The other cases cited by Plaintiff likewise do not address the issue of whether a willfulness claim can be pled based on the defendant's knowledge provided by the original complaint in a case. *Jardin v. Datallegro, Inc.*, No. 08-CV-462-IEG-RBB, 2009 U.S. Dist. LEXIS 3339, at *19 (S.D. Cal. Jan. 18, 2009); *Rambus, Inc. v. Nvidia Corp.*, No. C 08-3343 SI, 2008 U.S. Dist. LEXIS 95168, at *7 (N.D. Cal. Nov. 13, 2008); *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 903 (N.D. Cal. 2011); *Advanced Analogic Techs., Inc. v. Kinetic Techs., Inc.*, No. C-09-1360 MMC, 2009 U.S. Dist. LEXIS 57953, at *5-6 (N.D. Cal. July 8, 2009); *Milwaukee Elec. Tool Corp. v. Hitachi Koki Co.*, No. 09-C-948, 2011 U.S. Dist. LEXIS 15504, at *9 (E.D. Wis. Feb. 14, 2011).

Plaintiff does cite a case that is squarely at odds with *LML Holdings, Inc.*, and perhaps with *Seagate* itself. Opp'n at 5-6 (citing *Clouding IP, LLC v. Amazon.com, Inc.*, Nos. 12-641-LPS, 12-642-LPS, 12-675-LPS, 2013 U.S. Dist. LEXIS 73655 (D. Del. May 24, 2013)). In reaching its contrary conclusion, *Clouding* held that "[t]his dispute centers on the meaning of the terms 'pre-filing' and 'post-filing,' as used in *Seagate*," and noted *Seagate*'s statement that "a willfulness claim asserted **in the original complaint** must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." 2013 U.S. Dist LEXIS 73655, at *12 & n.2 (emphasis added) (quoting *Seagate*, 497 F.3d at 1374). It seems difficult to read the word "original" in *Seagate* as supporting the result reached by *Clouding* for two reasons. First, **everything** in an original complaint must be grounded in things that happened before the complaint was filed. In that sense, the phrase "must necessarily" can be read not as a legal prescription, but rather a simple statement of fact. The legal prescription comes in the following sentences, which state that a preliminary injunction is an adequate remedy for post-filing reckless infringement, and that patentees who do not seek that remedy "**should not** be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Seagate*, 497 F.3d at 1374 (emphasis added). Second, while *Clouding* expresses the legitimate concern that non-practicing entities will often be denied preliminary injunctions under *eBay v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), *Seagate* recognized that issue but nonetheless required such plaintiffs to attempt to obtain preliminary injunctions: "in some cases a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits . . . . In that event, whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case." 497 F.3d at 1374.

*Clouding* also advanced a practical argument: "[f]or purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-superceded original complaint formally alleging infringement." 2013 U.S. Dist. LEXIS 73655, at *13. That may have been so as a matter of practical logic were we writing on a clean slate, but the Federal Circuit has spoken clearly about the availability of willfulness in the absence of prelitigation

9

knowledge of the asserted patents. In *Seagate*, the Federal Circuit was itself concerned with "the practical concerns facing litigants" confronted with allegations of willful infringement. 497 F.3d at 1370. Specifically, the court was balancing a plaintiff's ability to attack an advice of counsel defense to willfulness against the need to maintain the attorney-client privilege for litigation counsel. *Seagate*'s limiting the availability of a willfulness claim was an integral part of its resolution of that problem: "[b]ecause willful infringement in the main must find its basis in prelitigation conduct, communications of trial counsel have little, if any, relevance warranting their disclosure, and this further supports generally shielding trial counsel from the waiver stemming from an advice of counsel defense to willfulness." 497 F.3d at 1374.

Thus, *Seagate* solved a knotty privilege waiver problem in part by drastically limiting the availability of willfulness claims when notice is delivered via lawsuit.[7] That decision was not a change in the pleading standard, but a change in the substantive applicability of the willfulness doctrine. It would eviscerate *Seagate* if a plaintiff could file an amended complaint alleging willfulness immediately after the original complaint was served. In sum, *Seagate* makes clear that where notice of the patent comes via the lawsuit, a plaintiff who wants to pursue a charge of willfulness needs to file a motion for a preliminary injunction, not an amended complaint.

Lastly, Plaintiff argues that pre-suit knowledge of the patent should be imputed to Naughty Dog because (a) Naughty Dog is a wholly-owned subsidiary of Sony Computer Entertainment America LLC ("SCEA"), (b) SCEA has argued in support of its motion to transfer in the parallel Delaware proceedings that marketing, financial, and administrative functions are shared between SCEA and Naughty Dog, and (c) SCEA had knowledge of the patent since at least January 2008. Opp'n at 1-2. However, Plaintiff did not include those allegations in its First Amended Complaint. "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998)). Further, knowledge of a patent by a parent corporation is not necessarily imputed to the subsidiary. *See Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1115 (N.D. Cal. 2007) (finding that the parent company's knowledge of the patent was not imputed to the subsidiaries because "[a]part from general allegations regarding ownership interests, [the plaintiff] has offered no evidence that would support imputing knowledge" from [the accused infringer] to its subsidiaries.)

## IV. Conclusion

For the foregoing reasons, the Court would GRANT-IN-PART and DENY-IN-PART Naughty Dog's motion to dismiss the First Amended Complaint. The Court would DISMISS the claim for willful infringement, which is currently premised on Defendant's knowledge of the patent via the filing of the instant lawsuit. Should Plaintiff later discover that Naughty Dog had pre-suit knowledge of the patents, Plaintiff might be able to seek leave to amend at that time.

---

[7] *Cf.* Alexander the Great's technique for untying the Gordian Knot. Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend 460 (Maria Leach, ed., Funk & Wagnalls, 1972); Bulfinch's Mythology 44 (Richard P. Martin, ed., 1991), both cited in *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 154 F.3d 812, 818 (8th Cir. 1998).

10