1    Counsel listed on signature page

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10                                WESTERN DIVISION

11   McRo, Inc., d.b.a. Planet Blue,          CASE No. 12-cv-10322-GW (FFMx)

12                                            DEFENDANTS' NOTICE OF
                              Plaintiff,      MOTION AND MOTION FOR
13                                            JUDGMENT ON THE PLEADINGS
                                              BASED ON UNPATENTABILITY
14        v.                                  UNDER 35 U.S.C. § 101;
                                              MEMORANDUM OF POINTS AND
15   Bandai Namco Games America, Inc., et     AUTHORITIES
     al.
16                                            Honorable George H. Wu

17                           Defendants.
                                             Hearing:
18                                           Date: August 14, 2014
19   Bandai Namco Games America, Inc., et     Time: 8:30 a.m.
     al.,                                     Courtroom: 10
20

21                  Counterclaim-Plaintiffs,  CONSOLIDATED WITH:
                                              12-cv-10323-GW (FFMx)
22                                            12-cv-10326-GW (FFMx)
          v.                                  12-cv-10327-GW (FFMx)
23                                            12-cv-10329-GW (FFMx)
24   McRo, Inc., d.b.a. Planet Blue,          12-cv-10331-GW (FFMx)
                                              12-cv-10333-GW (FFMx)
25                  Counterclaim-Defendants.  12-cv-10335-GW (FFMx)
                                              12-cv-10336-GW (FFMx)
26                                            12-cv-10337-GW (FFMx)
                                              12-cv-10338-GW (FFMx)
27                                            12-cv-10340-GW (FFMx)
28                                            12-cv-10341-GW (FFMx)

MOTION FOR JUDGMENT ON THE                   CASE No. 12-cv-10322-GW (FFMx)
PLEADINGS

12-cv-10342-GW (FFMx)
13-cv-01870-GW (FFMx)
13-cv-01874-GW (FFMx)
14-cv-00332-GW (FFMx)
14-cv-00336-GW (FFMx)
14-cv-00352-GW (FFMx)
14-cv-00358-GW (FFMx)
14-cv-00383-GW (FFMx)
14-cv-00389-GW (FFMx)
14-cv-00417-GW (FFMx)
14-cv-00439-GW (FFMx)

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON UNPATENTABILITY UNDER 35 U.S.C. § 101**

PLEASE TAKE NOTICE that on August 14, 2014, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10 of the above-referenced Court, located at 312 North Spring Street, Los Angeles, California, Defendants Bandai Namco Games America, Inc.; Sega of America, Inc.; Electronic Arts Inc.; Disney Interactive Studios, Inc.; Capcom USA, Inc.; Neversoft Entertainment, Inc.; Treyarch Corporation; Warner Bros. Interactive Entertainment; LucasArts; Activision Publishing, Inc.; Blizzard Entertainment, Inc.; Infinity Ward, Inc.; Atlus U.S.A., Inc.; Konami Digital Entertainment, Inc.; Square Enix, Inc.; Obsidian Entertainment, Inc.; Naughty Dog, Inc.; Sony Computer Entertainment America LLC; Sucker Punch Productions LLC; The Codemasters Software Company Limited; Codemaster, Inc.; Codemasters USA Group, Inc.; and Valve Corp. (collectively, "Defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(c), for an order finding U.S. Patent Nos. 6,307,576 (the "'576 patent") and 6,611,278 (the "'278 patent") (collectively, the "patents-in-suit") invalid under 35 U.S.C. § 101 for lack of patent-eligible subject matter, and granting Defendants judgment on the pleadings on that basis.

1   The grounds for this motion include that the patents-in-suit are directed to an
2   abstract idea and do not contain an inventive concept sufficient to transform the
3   claimed abstract idea into a patent-eligible application.

4   The motion is based upon this Notice and Motion, the attached Memorandum of
5   Points and Authorities, the concurrently filed Request for Judicial Notice, the
6   pleadings and records on file in this action, and upon any additional evidence and
7   argument that may be presented before or at the hearing of this motion.

8   This motion is made following the conference of counsel pursuant to L.R. 7-3.
9   Counsel met and conferred during the course of preparing the parties' Joint Statement
10  [D.I. 329] in advance of the June 30, 2014 Case Management Conference, as well as
11  during that Conference.

12  DATED: July 10, 2014                    Respectfully submitted,

13

14                                          WEIL, GOTSHAL & MANGES LLP

15                                          By:   /s/ Sonal N. Mehta
                                            Sonal N. Mehta
16                                          Attorneys for Defendants
                                            BANDAI NAMCO GAMES AMERICA,
17                                          INC.; SEGA OF AMERICA, INC.;
                                            ELECTRONIC ARTS INC.; DISNEY
18                                          INTERACTIVE STUDIOS, INC.;
                                            CAPCOM USA, INC.; NEVERSOFT
19                                          ENTERTAINMENT, INC.; TREYARCH
                                            CORPORATION; WARNER BROS.
20                                          INTERACTIVE ENTERTAINMENT;
                                            LUCASARTS; ACTIVISION
21                                          BLIZZARD, INC.; INFINITY WARD,
                                            INC.; AND INDEX DIGITAL MEDIA,
22                                          INC.

23                                          MORRISON & FOERSTER LLP

24                                          By: /s/ Benjamin J. Fox
                                            Benjamin J. Fox
25                                          Attorneys for Defendants
                                            KONAMI DIGITAL
26                                          ENTERTAINMENT, INC. AND
                                            SQUARE ENIX, INC.
27

28

1                             SPACH, CAPALDI & WAGGAMAN LLP

2                             By: /s/ *Madison Spach, Jr.*

3                             Madison Spach, Jr.
Attorneys for Defendant

4                             OBSIDIAN ENTERTAINMENT, INC.

5                             SHOOK, HARDY & BACON LLP

6                             By: /s/ *Beth Larigan*

7                             Beth Larigan
Attorneys for Defendants

8                             NAUGHTY DOG, INC.; SONY COMPUTER ENTERTAINMENT

9                             AMERICA LLC; AND SUCKER

10                           PUNCH PRODUCTIONS LLC

11                           BAKER & HOSTETLER LLP

12

13                           By: /s/ *Kevin W. Kirsch*
Kevin W. Kirsch

14                           Attorneys for Defendants

15                           CODEMASTERS USA GROUP, INC.,
CODEMASTERS, INC., and

16                           THE CODEMASTERS SOFTWARE COMPANY LIMITED

17

18                           K&L GATES LLP

19                           By: /s/ *Jan P. Weir*

20                           Jan P. Weir
Attorneys for Defendant

21                           VALVE CORPORATION

22                **ATTESTATION OF SIGNATURES**

23   I, Sonal N. Mehta, attest that all signatories listed, and on whose behalf the filing is

24   submitted, concur in the filing's content and have authorized the filing.

25

26   DATED: July 10, 2014            /s/     *Sonal N. Mehta*

27                                       Sonal N. Mehta

28

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND — THE PATENTS-IN-SUIT ............................................. 3

III.    LEGAL STANDARDS .................................................................................... 7

IV.     ARGUMENT — JUDGMENT SHOULD BE ENTERED IN
        DEFENDANTS' FAVOR BECAUSE PLAINTIFF'S CLAIMED
        INVENTION IS INELIGIBLE FOR PATENT PROTECTION .................... 7

        A.      Abstract Ideas Are Not Eligible For Patent Protection ........................ 7

        B.      The Patents-In-Suit Are Directed To Ineligible Subject Matter ......... 12

V.      CONCLUSION ............................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
No. 13-298, 110 U.S.P.Q.2d 1976, 2014 WL 2765283 (U.S. June 19,
2014) .................................................................................................passim

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
133 S. Ct. 2107, 186 L.Ed.2d 124 (2013).............................................9

*Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 177 L. Ed. 2d 792
(2010) .............................................................................................passim

*buySAFE, Inc. v. Google Inc.*,
964 F.Supp.2d 331 (D. Del. 2013) .......................................................8

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
___ F.Supp.2d ___, No. 12-cv-674, 2014 WL 923280 (E.D. Tex. Jan.
21, 2014) ...............................................................................................8

*Compression Tech. Solutions LLC v. EMC Corp.*,
No. 12-1746, 2013 WL 2368039 (N.D. Cal. May 29, 2013) .............10

*Constant v. Advanced Micro–Devices, Inc.*,
848 F.2d 1560 (Fed.Cir.1988) ..............................................................4

CyberSource *Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) .....................................................passim

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ....................................................7, 17

*Diamond v. Chakrabarty*,
447 U.S. 303, 309, 100 S. Cr. 2204, 65 L. Ed. 2d 144 (1980) ............9

*Dietgoal Innovations LLC v. Bravo Media LLC*,
No. 13-cv-8391 (S.D.N.Y. July 8, 2014)..............................................8

*Fort Props., Inc. v. Am. Master Lease LLC*,
671 F.3d 1317 (Fed. Cir. 2012) ........................................................22

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
333 U.S. 127, 68 S. Ct. 440, 92 L. Ed. 2d 588 (1948) ........................1

*Fuzzysharp Techs. Inc. v. Intel Corp.*,
No. 12-4413, 2013 WL 5955668 (N.D. Cal. Nov. 6, 2013)...............16

*Gametek LLC v. Zynga, Inc.*,
No. 13-cv-2546, 2014 WL 1665090 (N.D. Cal. Apr. 25, 2014) ..........8

*Gottschalk v. Benson*,
409 U.S. 63, 93 S. Ct. 253, 34 L. Ed. 2d 273 (1972) .....................2, 9

*In re Fout*,
   675 F.2d 297 (CCPA 1982) ...................................................................4

*In re Nomiya*,
   509 F.2d 566 (CCPA 1975) ...................................................................4

*Mayo Collaborative Servs. v. Prometheus Labs.,*
   *Inc.*, 566 U.S. ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012) .................passim

*OIP Techs, Inc. v. Amazon.com, Inc.*,
   No. 12-1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) ...........................10

*Parker v. Flook*,
   437 U.S. 584, 98 S. Ct. 2522, 57 L. Ed. 2d 451 (1978) .......................................2

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
   491 F.3d 1342 (Fed. Cir. 2007) ............................................................4

*Sjolund v. Musland*,
   847 F.2d 1573 (Fed. Cir. 1988) ............................................................4

**<u>STATUTES</u>**

35 U.S.C. § 101....................................................................passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The Supreme Court has made clear time and again that "abstract ideas" may not be removed from the public domain and subjected to the monopoly granted by our patent laws. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, No. 13-298, 110 U.S.P.Q.2d 1976, 2014 WL 2765283 (U.S. June 19, 2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. ___, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012); *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010).  These fundamental concepts are "part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none." *Bilski*, 130 S. Ct. at 3225 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130, 68 S. Ct. 440, 92 L. Ed. 2d 588 (1948)); *see also Alice Corp.*, 2014 WL 2765283, at *5-6.

Here, the patents-in-suit claim merely the abstract idea of synchronizing an animated character's mouth with the words he speaks using a set of rules.  But this alleged "invention" is nothing more than a simple algorithm implementing well-known and long-practiced mathematical formulae and relationships, which is unpatentable under 35 U.S.C. § 101.

Indeed, the patents-in-suit *concede* that the idea they claim is well-known and long-practiced in the prior art; they only claim to improve this process by implementing it on a computer, thereby allegedly speeding up its execution.  *See* Ex. A[1] ['576 patent] at 1:14-2:34.[2]  But "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." *Alice Corp.*, 2014 WL 2765283, at *3.  The patents-in-suit also make clear that the

---

[1]   All exhibit citations are to exhibits to the concurrently filed Request for Judicial Notice.

[2]   The '576 patent was attached to the operative complaint against each Defendant joining this Motion and is therefore part of the pleadings to these actions.

process they claim (and its underlying mathematical formulae) can be implemented solely in the mind of a practitioner, or by using pencil and paper.  *See* Ex. A ['576 patent] at 7:36-9:23.  But such a "mental process" cannot be given patent protection either—regardless of whether the claims are directed to the implementation of the process on a computer—because it is an abstract idea.  *See Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S. Ct. 253, 34 L. Ed. 2d 273 (1972) ("[M]ental processes[] and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work."); *Parker v. Flook*, 437 U.S. 584, 586, 594-95, 98 S. Ct. 2522, 57 L. Ed. 2d 451 (1978) (stating same); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) (invalidating claims directed to a mental process).

It is of no moment that the patents-in-suit purport to break down the abstract idea into steps—so did the patents in *Bilski* and *Alice Corp*.  Nor is it relevant that the patents-in-suit refer to various generic computer components or that they direct a practitioner to engage in other well-known, routine, and inconsequential steps in order to practice the idea they claim.  *See Alice Corp.*, 2014 WL 2765283, at *10 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *id.* at *15 (requiring the performance of "computer functions [that] are well-understood, routine, conventional activities previously known to the industry" is nothing more than "simply instruct[ing] the practitioner to implement the abstract idea . . . on a generic computer").

For these reasons, and for the reasons set forth more fully below, the patents-in-suit claim patent-ineligible subject matter under §101.  Accordingly, Defendants respectfully request that this Court find that all asserted claims of the patents-in-suit[3] are invalid and grant judgment on the pleadings in favor of Defendants on that basis.

[3] Plaintiff has asserted the following claims in this litigation: '576 patent, claims 1, 7-9, 13; '278 patent, claims 1-4, 6, 9, 13, 15-17.

MOTION FOR JUDGMENT ON THE PLEADINGS

2

CASE NO. 12-cv-10322-GW (FFMx)

1

## II.    BACKGROUND — THE PATENTS-IN-SUIT

2      The patents-in-suit, which share an identical specification, purport to claim the

3  exclusive right to perform rules-based lip-synchronized animation on a computer,

4  based on a well-known and long-practiced set of steps that can be performed in the

5  human mind or with pencil and paper.  The patents themselves acknowledge that their

6  purpose is to allow "for rapid, creative, and expressive animation products to be

7  produced in a very cost effective manner"—simply by using a computer to perform

8  some of the work normally done manually by an animator.  *See* Ex. A ['576 patent] at

9  2:38-44.

10     As the patents-in-suit admit, animators were already creating animations with

11 lip synchronization using a manual process substantially identical to the claimed

12 computer-aided process at the time of the claimed invention.[4]  *See* Ex. A ['576 patent]

13 at 1:14-17.

14     First, the animator would begin by obtaining a "[t]ime aligned phonetic

15 transcription[]" ("TAPT"), which is "a timed transcript of the sounds the animated

16 character is supposed to speak."  *Id.* at 1:32-34; Ex. C [Plaintiff's Opening Claim

17 Construction Brief [D.I. 230] ("PB Open. Br.")] at 7.[5]  The patents-in-suit state that

18 the TAPT "can be created by hand, as they currently are in the traditional animation

19 industry" or by automatic speech recognition programs.  Ex. A ['576 patent] at 1:39-

20

---

21 [4]    Admissions in the specification regarding the prior art are binding on the
patentee.  *See PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362
22 (Fed. Cir. 2007); *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1570
(Fed. Cir. 1988) ("A statement in the patent that something is in the prior art is
23 binding on the applicant and patentee for determinations of anticipation and
obviousness."); *Sjolund v. Musland*, 847 F.2d 1573, 1577–79 (Fed. Cir. 1988) (patent
24 specification admitted that certain matter was prior art, and thus "the jury was not free
to disregard [that matter]" and "must have accepted [it] as prior art, as a matter of
25 law"); *In re Fout*, 675 F.2d 297, 300 (CCPA 1982); *In re Nomiya*, 509 F.2d 566, 571
(CCPA 1975).

26 [5]    Valve Corporation separately reserves the right to make new claim construction
27 arguments at a later time.

28

43.  Similarly, the claimed invention first requires that the **user** supply a TAPT using these same, previously-known methods.  Ex. C [PB Open. Br.] at 7.

Next, to animate a character's mouth according to the TAPT, the animator would use what is called a "morph target" approach.  In this practice, the animator manually would create a number of different mouth models (a.k.a. morph targets): a reference (or neutral) model, and mouth models in several other positions.  Ex. A ['576 patent] at 1:45-50.  The morph targets each comprise a set of vertices, each model having "the same number of vertices, and each vertex on each model logically correspond[ing] to a vertex on each other model."  *Id.* at 1:50-57.  Once again, the claimed invention also requires that the **user** supply mouth models (morph targets) of his own creation.  Ex. C [PB Open. Br.] at 8.

Next, the animator would determine the "delta set" for each morph target.  Each delta set contains "[t]he deltas of each vertex on each morph target relative to [that same vertex on] the neutral," "computed as a vector from each vertex n on the reference to each vertex n on each morph target."  Ex. A ['576 patent] at 1:57-62.  Put differently, for each vertex, the animator would determine how to move the vertex's position from a neutral position (i.e., the vertex's baseline position) to a position corresponding to a particular target model (i.e., morph target)—e.g., vertex1 needs to move (x,y,z) units in three dimensions from the neutral model, vertex2 needs to move (x,y,z) from neutral, etc.  A "delta set" is a set of these transformations for each vertex on the model.  *See id.*  Determining this delta set could also be done using a computer (or, indeed, a basic calculator) by simply determining the difference in position of each vertex, between the neutral model and the target model.

Next, using the TAPT, the animator would decide what the animated face should look like at key points in time between the start time and the end time, and then "draw" the face at those times.  To do this, the animator would manually give certain "weights" to each morph target at each such time, based on, for example, the

current phoneme and what phonemes come earlier or later in the TAPT. *Id.* at 1:63-2:15. The animator would accomplish this weighting based on her own judgment, which would likely include an internal set of guidelines/rules based on her experience and skills. *Id.* at 2:29-30; *see also id.* at 1:63-2:28. Each frame of animation created at such a key point in time is called a "keyframe." *Id.* at 2:29-33.

The claimed invention similarly requires the **user** to provide a set of morph weight sets (the weightings of each morph target/delta set described above), as well as a set of rules that determine which morph weight set to apply based on the phonemes in the TAPT.[6] *See id.* at 4:4-14, 4:36-5:45, 11:30-32. The user of the claimed invention would then apply these **user-supplied** rules to the **user-supplied** TAPT. The rules specify which weightings should be used at certain key times, and a morph weight set is created at those key times. *Id.* at 5:46-6:2; *id.* at 7:10-13.

Finally, the animator would "fill in" the animation for the frames in between the keyframes in order to produce animation at a desired frame rate—a process called "interpolation." *See id.* at 2:31-34. The claimed invention similarly requires the user to interpolate among keyframes "using conventional methods." *Id.* at 6:3-9, 7:13-18.

In the claimed invention, the stream of morph weight sets is used to deform the neutral model, which animation is "then sent to a conventional computer animation system for integration with other animation." *Id.* at 9:17-20. "Alternatively, the morph weight set stream can be used directly by an animation program or package, wither [*sic*] interpolated or not." *Id.* at 9:20-22.

The patents-in-suit merely automate the foregoing process using a generic computer, without describing any specialized, new, or improved hardware or software.

---

[6] The patents-in-suit refer to this user-supplied set of rules as "extensible and freeform in the sense that they may be created as desired and adapted to a wide variety of animation characters, situations, and products." Ex. A ['576 patent] at 9:23-26. Put differently, the patents-in-suit are entirely agnostic as to **what** rules are used, so long that the user provides some set of rules.

*See* Ex. A ['576 patent] at 2:38-44; *see also* Ex. D [Claim Construction Hr'g Tr.] at 19:18-20:2 (Plaintiff admitting that "some forms of automated lip synchronization" were already practiced in the prior art), 84:11-24 (Plaintiff admitting that "transaction parameters" and "[t]he interpolation step" were already practiced in the prior art).  In fact, this "automation" step is the ***only*** requirement of the independent claims of the patents-in-suit that is not described as previously-known in the prior art:

| Independent Claims of the Patents-in-Suit | Previously Done Manually | Automating Step |
|---|---|---|
| '576 patent, claim 1. A method for automatically animating lip synchronization and facial expression of three-dimensional characters comprising: | | '576 patent at 2:38-54 |
| obtaining a first set of rules that define output morph weight set stream as a function of phoneme sequence and time of said phoneme sequence; | '576 patent at 1:63-2:28 | |
| obtaining a timed data file of phonemes having a plurality of sub-sequences; | '576 patent at 1:32-34 | |
| generating an intermediate stream of output morph weight sets and a plurality of transition parameters between two adjacent morph weight sets by evaluating said plurality of sub-sequences against said first set of rules; | '576 patent at 1:45-2:30 | |
| generating a final stream of output morph weight sets at a desired frame rate from said intermediate stream of output morph weight sets and said plurality of transition parameters; and | '576 patent at 2:29-37 | |
| applying said final stream of output morph weight sets to a sequence of animated characters to produce lip synchronization and facial expression control of said animated characters. | '576 patent at 2:29-37 | |
| '278 patent, claim 1. A method for automatically animating lip synchronization and facial expression of three-dimensional characters comprising: | | '576 patent at 2:38-54 |
| obtaining a first set of rules that defines a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence; | '576 patent at 1:63-2:28 | |
| obtaining a plurality of sub-sequences of timed phonemes corresponding to a desired audio sequence for said three-dimensional characters; | '576 patent at 1:32-34 | |
| generating an output morph weight set stream by applying said first set of rules to each sub-sequence of said plurality of sub-sequences of timed phonemes; and | '576 patent at 1:45-2:30, 2:29-37 | |
| applying said output morph weight set stream to an input sequence of animated characters to generate an output sequence of animated characters with lip and facial expression synchronized to said audio sequence. | '576 patent at 2:29-37 | |

1    **III.   LEGAL STANDARDS**

2        Whether a claim recites patent-eligible subject matter under § 101 is a question

3    of law.   *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012);

4    *CyberSource*, 654 F.3d at 1369.   The statutory § 101 inquiry is a "threshold test."

5    *Bilski*, 130 S. Ct. at 3225.   A Court may properly address this threshold test by way of

6    a motion for judgment on the pleadings.   *See, e.g.*, *Gametek LLC v. Zynga, Inc.*, Nos.

7    13-cv-2546-RS, 13-cv-3089-RS, 13-cv-3472-RS, 13-cv-3493-RS, 2014 WL 1665090

8    (N.D. Cal. Apr. 25, 2014); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,

9    ___ F.Supp.2d ___, No. 6:12-cv-674, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014);

10   *buySAFE, Inc. v. Google Inc.*, 964 F.Supp.2d 331 (D. Del. 2013); *see also Dietgoal*

11   *Innovations LLC v. Bravo Media LLC*, No. 13-cv-8391, slip op. at 2 n.1 (S.D.N.Y.

12   July 8, 2014) (granting summary judgment of unpatentability under § 101 and noting

13   that the motions "could equally validly have been styled motions for judgment on the

14   pleadings").

15   **IV.   ARGUMENT — JUDGMENT SHOULD BE ENTERED IN**
16   **DEFENDANTS' FAVOR BECAUSE PLAINTIFF'S CLAIMED**
     **INVENTION IS INELIGIBLE FOR PATENT PROTECTION**
17

18       **A.    Abstract Ideas Are Not Eligible For Patent Protection**

19       Section 101 of the Patent Act provides that "[w]hoever invents or discovers any

20   new and useful process, machine, manufacture, or composition of matter, or any new

21   and useful improvement thereof, may obtain a patent therefor, subject to the

22   conditions and requirements of this title."   35 U.S.C. § 101.   In recent years, the

23   Supreme Court has underscored two fundamental principles of § 101 applicable to this

24   case.

25       First, the Supreme Court has emphasized repeatedly that § 101 "contains an

26   important implicit exception: Laws of nature, natural phenomena, and abstract ideas

27   are not patentable."   *Alice Corp.*, 2014 WL 2765283, at *5 (quoting *Ass'n for*

28

*Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. ___, 133 S. Ct. 2107, 2116, 186 L.Ed.2d 124 (2013)); *see also Mayo*, 132 S. Ct. at 1293; *Bilski*, 130 S. Ct. at 3255 ("Phenomena of nature, mental processes, and abstract intellectual concepts are not patentable." (quoting *Benson*, 409 U.S. at 67)).[7]

These principles cannot be eligible for patent protection because "they are the basic tools of scientific and technological work" and are "free to all men and reserved exclusively to none." *Mayo*, 132 S. Ct. at 1293 (quoting *Benson*, 409 U.S. at 67, and *Diamond v. Chakrabarty*, 447 U.S. 303, 309, 100 S. Cr. 2204, 65 L. Ed. 2d 144 (1980)). Indeed, "'monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws." *Alice Corp.*, 2014 WL 2765283, at *5 (quoting *Mayo*, 132 S. Ct. at 1293).

A patent on an abstract idea effectively pre-empts the idea itself, and attempts to claim ownership of inventions that a patentee never conceived of, and did not contribute to the state of the art by way of his patent application. *See Bilski*, 130 S. Ct. at 3230-31; *Mayo*, 132 S. Ct. at 1294 (finding that, by covering a broad range of potential known ***and unknown*** uses of an abstract idea, a patent would pre-empt an entire field and "risk disproportionately tying up" the use of the abstract idea); *see also OIP Techs, Inc. v. Amazon.com, Inc.*, No. 12-1233-EMC, 2012 WL 3985118, at *20 (N.D. Cal. Sept. 11, 2012) ("The central question remains whether the patentee seeks broad monopoly rights over a basic concept, fundamental principle, or natural law without a concomitant contribution to the existing body of scientific and technological knowledge."); *Compression Tech. Solutions LLC v. EMC Corp.*, No. 12-1746-RMW, 2013 WL 2368039, at *8 (N.D. Cal. May 29, 2013) (holding that

---

[7]   Internal quotation marks, citations, and alterations omitted, and emphasis added, throughout except where otherwise noted.

claims would broadly cover almost all applications and thus pre-empt unknown future use even though the method was "limited to digital data and context insensitive parsing.").

Where a patent claim attempts to pre-empt a mathematical formula or algorithm, the Supreme Court has consistently found that claim to be directed to an abstract idea and therefore unpatentable subject matter.  In *Bilski*, the Supreme Court looked to precedent—namely *Benson* and *Flook*—to clarify what is an "abstract idea." The *Benson* Court found that "converting . . . numerals to pure binary numerals" was an abstract idea because "[a] contrary holding 'would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself.'"  *Bilski*, 130 S. Ct. at 3230 (quoting *Benson*, 409 U.S. at 71, 72).  The *Flook* Court held as abstract "a procedure for monitoring the conditions during the catalytic conversion process in the petrochemical and oil-refining industries."  *Id.* (discussing *Flook*, 437 U.S. at 594).  Notably, the *Flook* Court determined that, if the underlying mathematical algorithm was "assumed to be within the prior art, the application, considered as a whole, contain[ed] no patentable invention," and that "the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'"  *Id.* (quoting *Flook*, 437 U.S. at 594, and *Diamond v. Diehr*, 450 U.S. 175, 191-192, 101 S. Ct. 1048, 67 L. Ed. 2d 155 (discussing *Flook*)).  Accordingly, the *Bilski* Court held that "[t]he concept of hedging . . . is an unpatentable abstract idea, just like the algorithms at issue in *Benson* and *Flook*," since "[a]llowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Bilski*, 130 S. Ct. at 3231.

In *Alice Corp.*, the Supreme Court once again reinforced that a concept may be abstract even though it does not "exist[] in principle apart from any human action."

2014 WL 2765283, at *8.  The Supreme Court further confirmed that an "abstract idea" need not be a fundamental natural truth, finding that "[t]he concept of risk hedging [it] identified as an abstract idea in [*Bilski*] cannot be described as a preexisting fundamental truth," but was nonetheless an "abstract idea." *Id.*  In fact, the Court recognized that, "[a]lthough hedging is a longstanding commercial practice, it is a method of organizing human activity, not a truth about the natural world that has always existed." *Id.*  Nonetheless, the claims in both *Bilski* and *Alice Corp.* were held unpatentable because they were "abstract ideas in the understanding that risk hedging was a fundamental economic practice." *Id.*

The Federal Circuit, following the Supreme Court's guidance, has similarly held "that methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas—the 'basic tools of scientific and technological work' that are open to all." *Cybersource*, 654 F.3d at 1371 (quoting *Benson*, 409 U.S. at 67, and holding that a "mental process" is "a subcategory of unpatentable abstract ideas").  The *CyberSource* court also noted that, when a patent's claimed steps "could still 'be made [using a] pencil and paper,'" the claims are directed to an unpatentable mental process—an abstract idea. *Id.* (quoting *Flook*, 437 U.S. at 594-95).

Second, transformation of a patent-ineligible abstract idea "into a patent-eligible application requires more than simply stating the abstract idea while adding the words 'apply it.'" *Alice Corp.*, 2014 WL 2765283, at *9 (quoting *Mayo*, 132 S. Ct. at 1294).  That is, in order to be eligible for patent protection, a *particular application* of an abstract idea must "contain[] an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 2014 WL 2765283, at *9 (quoting *Mayo*, 132 S. Ct. at 1294).  Merely taking an abstract idea and adding steps (or breaking the idea into steps) involving "well-understood," "routine," or "conventional" activities does nothing to add an inventive

concept to an abstract idea. *Mayo*, 132 S. Ct. at 1294; *Flook*, 437 U.S. at 590. Similarly, limiting the application of an abstract idea to a particular "field of use or adding token postsolution components" does not transform the idea into a patent-eligible invention. *Bilski*, 130 S. Ct. at 3231.[8]

Most recently, in *Alice Corp.*, the Supreme Court confirmed that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice Corp.*, 2014 WL 2765283, at \*10. The fact that a user of the patented technology is instructed to use "some unspecified, generic computer" to perform those steps is not sufficient to confer patentability. *See id.*, 2014 WL 2765283, at \*11.

The *Alice Corp.* Court also confirmed—unanimously—that *Mayo* sets forth the correct test to apply to a computer-implemented process, notwithstanding the split decision in *Alice Corp.* at the Federal Circuit. *See Alice Corp.*, 2014 WL 2765283, at \*4. First, courts must "determine whether the claims at issue are directed to [a] patent-ineligible concept[]." *Id.*, at \*6. Where, as here, the claims of the patents-in-suit are directed to a patent-ineligible concept, courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (describing this second step "as a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent

---

[8]     "Postsolution component" refers to inconsequential steps appended to an abstract idea that do not meaningfully limit the scope of the concept. *See Flook*, 437 U.S. at 590 (rejecting "that the presence of specific 'post-solution' activity—the adjustment of the alarm limit to the figure computer according to the formula"—renders the performance of the mathematical formula patent-eligible, and further explaining that "[t]he notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance.").

in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'") (quoting *Mayo*, 132 S. Ct. at 1298, 1297, 1294).

**B.    The Patents-In-Suit Are Directed To Ineligible Subject Matter**

The patents-in-suit improperly attempt to claim abstract ideas, and no "inventive concept" exists to transform them into patent-eligible applications. They are, therefore, invalid for lack of patent-eligible subject matter.

**1.    The Patents-In-Suit Are Directed To An Abstract Idea**

The animation methods claimed in the patents-in-suit are merely directed to a fundamental, abstract animation practice. The patentee requests that the Court allow it to hold a monopoly over the abstract idea of rules-based synchronization of animated mouth movement, which is a fundamental and pre-existing industry wide animation practice, as the patents-in-suit readily acknowledge. *See supra*, Section II.[9] But this rules-based practice does not represent any improvement in the technology used to perform animation, or even the process of performing the animation itself—it simply sets forth the previously-known animation method as a series of mathematical steps, and instructs the user to perform those steps on a computer.

Most importantly, the patents-in-suit instruct the user to supply his own TAPT and rules to convert that TAPT into a series of morph weight sets. In fact, Plaintiff repeatedly characterized these "extensible and freeform" rules as "the crux of the invention" during the *Markman* hearing. *See, e.g.*, Ex. D [Claim Construction Hr'g Tr.] at 86:9-15. But even Plaintiff was forced to admit that the patents-in-suit do not actually **claim** that any particular rules must be used, instead describing them as "extensible and freeform." *See id.* at 86:24-87:12, 103:17-25; Ex. A ['576 patent] at

---

[9]    Perhaps even more than in *Bilski* and *Alice*, the idea that the human mouth looks a certain way while speaking particular sounds *is* indeed a "pre-existing fundamental truth" that "exists in principle apart from any human action." But even when applied to the field of animation, which is indeed a human activity, this concept does not become any less abstract.

9:23-26.  Instead, the patents-in-suit attempt to claim the use of **any and all** such "extensible and freeform" rules—or put more simply, the mere **idea** of using rules. That is, the patent purports to require the public (e.g., makers of automated lip-synchronization tools like FaceFX and Annosoft) to develop for themselves the proper set of rules to use in order to obtain an acceptable animation.  Of course, there are infinitely many such "sets of rules" that could be developed—including many that Plaintiff and the named inventor of the patents-in-suit never thought of—and the patents-in-suit attempt to claim, and thus monopolize, **all** of them.  In doing so, the patents-in-suit attempt to wholly pre-empt the use of **any** rules in the automated lip-sync process, thereby patenting the abstract idea of using rules itself.  *See Bilski*, 130 S. Ct. at 3230, 3231; *Mayo*, 132 S. Ct. at 1294.

The patents-in-suit then simply instruct the user to use a computer to apply those rules to the TAPT—a simple mathematical operation that, admittedly, a computer can perform faster than a human in his head or using a pencil and paper. But such rules—and the computer-based methods that apply them—cannot be patentable.  In *Flook*, the Supreme Court found that "a mathematical formula for computing 'alarm limits' in a catalytic conversion process was . . . a patent ineligible abstract idea," even though the patents implemented the fundamental concept in a specific way and directed it toward a specific field.  *Alice Corp.*, 2014 WL 2765283, at *9 (discussing *Flook*, 437 U.S. at 594-95); *see also Fuzzysharp Techs. Inc. v. Intel Corp.*, No. 12-4413-YGR, 2013 WL 5955668, at *13 (N.D. Cal. Nov. 6, 2013) (finding claims directed to computer graphics technology directed to an abstract idea and therefore unpatentable under § 101).  Here, the patents-in-suit attempt to claim no more than the use of a basic algorithm that implements fundamental mathematical formulae and relationships in a particular field.

Furthermore, as in *Flook*, the process claimed in the patents-in-suit can be performed solely with pencil and paper.  Indeed, the patents-in-suit confirm this fact

13

by providing a pencil-and-paper example of animating the word "hello." Ex. A ['576 patent] at 7:36-9:23. This pencil-and-paper example begins with a group of delta sets, *id.* at 7:43-51, a set of rules, *id.* at 7:58-8:34, and a TAPT, *id.* at 8:43-51. By simply applying the set of rules to the TAPT, one may (in one's mind or by using only pencil and paper) confirm that the appropriate output morph weight set stream is given. *Id.* at 8:57-9:9.[10]   The patents-in-suit then explain that this output morph weight set stream is to be interpolated "using conventional methods well known in the art." *Id.* at 9:12-14. But patents that merely claim the performance of such computations, which could be done solely in one's mind or using pencil and paper, are unpatentable. *See Flook*, 437 U.S. at 594-95; *CyberSource*, 654 F.3d at 1371.

### 2. The Patents-In-Suit Do Not Contain An "Inventive Concept" Sufficient To Transform Their Application Of An Abstract Idea Into A Patent-Eligible Invention

Turning to the second step of the *Mayo* test, the Supreme Court noted in *Alice Corp.* that "[a] claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Alice Corp.*, 2014 WL 2765283, at *9. "Simply appending conventional steps, specified at a high level of generality, [is] not *enough* to supply an inventive concept." *Id.* (emphasis in original); *see also Mayo*, 132 S. Ct. at 1294 (finding method not patentable, even when a series of "conventional," "routine," or "well-understood" limitations were appended to an otherwise unpatentable principle). Moreover, adding "a computer into the claims does not alter the analysis . . . ." *Alice Corp.*, 2014 WL 2765283, at *9; *see also Dealertrack*, 674 F.3d at 1333.

---

[10]   Significantly, the claims of the patents-in-suit do not claim the application of the rules used in this example, or indeed *any* particular rules—they merely claim that an output morph weight set stream is generated by "evaluating said plurality of sub-sequences against said first set of rules" (or similar)—that is, *any* set of rules. *See* Ex. A ['576 patent] at 11:36-39.

MOTION FOR JUDGMENT ON THE PLEADINGS

14

Instead, "the relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Alice Corp.*, 2014 WL 2765283, at *11.  The answer is no.  Method claim 1 of the '278 patent, for example, recites steps of obtaining rules defining morph weights as a function of phoneme sequence and times, obtaining timed phoneme sub-sequences corresponding to a desired audio sequence, generating morph weights by applying the rules to the sub-sequences, and applying the morph weights to animate characters synchronized to the audio sequence—all steps which may be done by hand.  Ex. B ['278 patent] at 11:43-59.[11]  The patents-in-suit admit that each of these steps was conventional, both when considered alone and as an ordered combination, because, as explained above, manual animation based on phonemes and morph weights was "traditional."  *See supra*, Section II; Ex. A ['576 patent] at 1:14-2:37.  Such conventional steps directed to mental processes cannot confer patentability.  *See Alice Corp.*, 2014 WL 2765283, at *9, 11; *see also supra*, Section III.A (citing cases).  Claims directed to a mental process, even when claimed as performed on a computer, are an improper attempt to monopolize the "basic tools of scientific and technological work" by "patent[ing] the use of human intelligence."  *CyberSource*, 654 F.3d at 1372-73.

At the *Markman* hearing in this matter, Plaintiff made clear that the claimed "invention" of the patents-in-suit is merely an automation of a long-known and long-practiced manual process:

> **What the invention was** was actually applying **specific rules** in not only the correspondence which was well known but also in timing and how you set up the start timing and how

---

[11]    The '278 patent was attached to the operative complaint against each Defendant joining this Motion and is therefore part of the pleadings to these actions.

you set up the stop timing so that when the — so that there was ***an automated fashion to arrive at a set of keyframes that previously needed to be done by feel and by hand to create***.

Ex. D [Claim Construction Hr'g Tr.] at 24:3-10.  But an examination of the elements of representative claim 1 of the '278 patent reveals that the patents-in-suit do *not* claim an inventive concept sufficient to transform this unpatentable abstract idea into a patentable application of the abstract idea.

The preamble to claim 1 recites a method for performing such animation "automatically," but even assuming *arguendo* that the preamble ties the claim to a computer, this is merely an instruction to perform the animation "using some unspecified, generic computer," which again is insufficient.  *See Alice Corp.*, 2014 WL 2765283, at *11; *supra*, Section III.A.  In fact, during claim construction, Plaintiff vehemently *opposed* a construction that would impose limitations on the preamble and require that there be no "human intervention" during the performance of the claimed steps.[12]  Ultimately, this Court construed "automatically" to mean that the claimed steps must only be performed in order, but that the steps need not be performed without human intervention.  Indeed, if the claimed methods of the patents-in-suit are not required to be performed "automatically" (that is, without human intervention), then the only purported advance over the prior art—saving time and performing lip synchronization more quickly—is lost.  Thus, there is no inventive concept sufficient to transform the unpatentable abstract idea into a patentable application of that idea.

The first limitation requires the user to "obtain[] a first set of rules."  Notably, the claim does not limit in any way what these rules might be, except that they must

---

[12]   Even with these limitations, the preamble would simply disclose abstract concepts performed by a generic computer.

"define[] a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence."  Indeed, the patent describes these rules as "*extensible and freeform* in the sense that they may be *created as desired* and adapted to a wide variety of animation characters, situations, and products."  Ex. A ['576 patent] at 9:23-26.  Put differently, the claimed "rules" must only take as input a TAPT and must output a morph weight set stream; beyond this requirement, the claims seek to pre-empt the use of *any* such rules—including those known to animation practitioners and used in the "traditional" method.  This makes sense, as the claimed method simply requires the user to "obtain" a set of rules—leaving the choice of those rules to the user.

Again, during claim construction Plaintiff argued that the "first set of rules" should be given its plain and ordinary meaning—simply any set of rules that can be applied to the animation process.  The Court agreed with Plaintiff and found that the term "first set of rules" needed no construction.  Thus, this "set of rules" is nothing more than a "set" of "rules," with no limitation on what those rules might be, how they are organized/stored, or how they are used.  As discussed in Section IV.B.1, *supra*, even Plaintiff admitted at the *Markman* hearing that the patents-in-suit claim *any and all* such rules.  There is no "inventive concept" in instructing the user to "obtain" an arbitrary set of rules that would be "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."  *Alice Corp.*, 2014 WL 2765283, at *6.

Next, claim 1 requires the user to "obtain[] a plurality of sub-sequences of timed phonemes corresponding to a desired audio sequence for said three-dimensional characters."  Once again, the patent simply instructs the user to provide this TAPT, which it specifically notes "can be created by hand, as they currently are in the traditional animation industry."  Ex. B ['278 patent] at 1:42-44; *see also* Ex. E [Plaintiff's Claim Construction Tutorial] at 4:05-4:20 (stating that the TAPT can be

generated "manually, as it's been done for a long time in 2d animation").  Again, there is no "inventive concept" in asking the user to supply something he would have created even to perform animation in the "traditional" method.

The third limitation requires "generating an output morph weight set stream by applying said first set of rules to each sub-sequence of said plurality of sub-sequences of timed phonemes."  While this limitation uses many terms of art, in practice it only involves performing simple math.  As shown in the patents' example of animating "hello," these rules can be as simple as using a particular morph weight set (e.g., (0,0,0,1,0,0)) when a specific phoneme is encountered (e.g., "oh" as in "old").  *See* Ex. B ['278 patent] at 8:7-9.  But this step, just like the first, does not claim any particular rules themselves.  Instead, it merely instructs a user to ***apply*** the rules—something that could be done in a user's mind or using a pencil and paper.  Indeed, in the prior art, an animator would use a set of rules based on his own skill and experience to determine, based on the TAPT, what the appropriate morph weight set should be at each keyframe.  *See* Ex. E [Plaintiff's Claim Construction Tutorial] at 8:21-8:40 ("The artist would animate the weights from viseme to viseme [i.e., of each morph target] at the times that each of the phonemes occurred in the audio track, either by eye, or if they had the luxury, by referencing the transcript.").  Once again, no "inventive concept" exists in merely instructing a user to apply a set of user-supplied rules to a user-supplied TAPT.

Finally, claim 1 requires the user to "apply[] said output morph weight set stream to an input sequences of animated characters . . . ."  The patents-in-suit explicitly admit that this step is one that can be performed by a "conventional computer animation system."  *See* Ex. B ['278 patent] at 9:22-27; Ex. E [Plaintiff's Claim Construction Tutorial] at 9:00-9:25 (referring to "industry-standard 3d software," which runs on a generic computer, performing this step).  Furthermore, the substance of this step fares no better.  In the prior art method, for example, a simple

morph weight set stream for two frames of animation with only two morph targets might be ((1,0), (0,1))—that is, the first frame consists of expressing the first morph target fully, and the second frame consists of expressing the second morph target fully.  To "apply" these to an animated character, an animator would simply use the first morph target as the facial model for the first frame, and the second morph target for the second frame.  Even if the second morph weight set was, for example, (.5,.5), the animator would simply average the location of each pixel between the two morph targets and use those pixel locations for the facial model at that frame.  This process can be performed completely by hand, and consists of no more than simple mathematics.  Thus, there is no "inventive concept" here—the claim merely instructs the user to use a conventional computer in a conventional way.

Analyzing the claim "as an ordered combination," as the Supreme Court described in *Alice Corp.*, yields the same result.  The "ordered combination" of the claim is precisely the same process that the patents-in-suit acknowledge was performed in the "traditional" method. *See supra*, Section II.  As described in Section II, *supra*, the animator would choose the proper morph weight set for each sub-sequence of timed phonemes using his own judgment.  This judgment would be informed by an internal set of guidelines, or rules, based on the animator's experience and skills.  For example, an animator would know that when she encounters an "oh," she should fully weight the "oh" morph target and unweight all of the other morph targets.  This is identical to the application of the types of rules contemplated in the specification of the patents-in-suit, *see, e.g.*, Ex. B ['278 patent] at 8:7-9 (showing example rule for "oh" phoneme that fully weights the "oh" morph target and unweights all others).   Critically, however, the patents-in-suit do not claim any *particular* rules at all.  Indeed, the fact that an animator would traditionally perform this same process in her mind only highlights the abstract nature of the idea claimed. *See CyberSource*, 654 F.3d at 1371.

The remaining asserted claims are also deficient.  Claim 2 of the '278 patent adds phoneme "correspondence rules" and "morph weight set transition rules" that merely elaborate on the abstract idea of animating based on rules.  Claim 3 of the '278 patent adds start and end times for morph weight transitions that were conventional.  *See* Ex. B ['278 patent] at 2:27-34 (conventional "keyframe" approach).  Claim 1 of the '576 patent is similar to claim 1 of the '278 patent but generates both intermediate and final streams of morph weights that likewise are conceptual and conventional.  *See* Ex. A ['576 patent] at 1:44-2:37, 7:13-15, 9:11-14.  The other asserted claims of both patents—none of which differs significantly from these claims for the purpose of analysis under § 101—present similar issues.[13]

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Judgment on the Pleadings Based On Unpatentability under 35 U.S.C. § 101.

DATED: July 10, 2014

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By:   */s/ Sonal N. Mehta*
Sonal N. Mehta
Attorneys for Defendants
BANDAI NAMCO GAMES AMERICA,
INC.; SEGA OF AMERICA, INC.;
ELECTRONIC ARTS INC.; DISNEY
INTERACTIVE STUDIOS, INC.;
CAPCOM USA, INC.; NEVERSOFT

---

[13]   The Supreme Court and Federal Circuit have both made clear that analyzing claims in groups is appropriate when those claims are sufficiently similar for the purpose of analysis under § 101.  *See Bilski*, 130 S. Ct. at 3223, 3231 (analyzing the "key claims" and then characterizing the "remaining claims" as "broad examples of how hedging can be used in commodities and energy markets"); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1322-24 (Fed. Cir. 2012) (analyzing 41 claims in two groups based on the presence or absence of a computer).

ENTERTAINMENT, INC.; TREYARCH
CORPORATION; WARNER BROS.
INTERACTIVE ENTERTAINMENT;
LUCASARTS; ACTIVISION
BLIZZARD, INC.; INFINITY WARD,
INC.; AND INDEX DIGITAL MEDIA,
INC.


MORRISON & FOERSTER LLP

By: /s/ *Benjamin J. Fox*
Benjamin J. Fox
Attorneys for Defendants
KONAMI DIGITAL
ENTERTAINMENT, INC. AND
SQUARE ENIX, INC.


SPACH, CAPALDI & WAGGAMAN
LLP

By: /s/ *Madison Spach, Jr.*
Madison Spach, Jr.
Attorneys for Defendant
OBSIDIAN ENTERTAINMENT, INC.


SHOOK, HARDY & BACON LLP

By: /s/ *Beth Larigan*
Beth Larigan
Attorneys for Defendants
NAUGHTY DOG, INC.; SONY
COMPUTER ENTERTAINMENT
AMERICA LLC; AND SUCKER
PUNCH PRODUCTIONS LLC


BAKER & HOSTETLER LLP

By: /s/ *Kevin W. Kirsch*
Kevin W. Kirsch
Attorneys for Defendants
CODEMASTERS USA GROUP, INC.,
CODEMASTERS, INC., and
THE CODEMASTERS SOFTWARE
COMPANY LIMITED


K&L GATES LLC

MOTION FOR JUDGMENT ON THE
PLEADINGS

21

CASE NO. 12-cv-10322-GW (FFMx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: /s/ *Jan P. Weir*
Jan P. Weir
Attorneys for Defendant
VALVE CORPORATION

## ATTESTATION OF SIGNATURES

I, Sonal N. Mehta, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: July 10, 2014          /s/     *Sonal N. Mehta*
                                          Sonal N. Mehta