MISHCON DE REYA NEW YORK LLP
Mark S. Raskin, (*Pro Hac Vice*)
Email: mark.raskin@mishcon.com
750 7th Avenue, 26th Floor
New York, New York 10019
Telephone: 212.612.3270
Facsimile: 212.612.3297

RUSS AUGUST & KABAT
Marc A. Fenster, State Bar No. 181067
Email: mfenster@raklaw.com
Irene Y. Lee, State Bar No. 213625
Email: ilee@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: 310.826.7474
Facsimile: 310.826.6991

Attorneys for Plaintiff
McRO, Inc., d.b.a. Planet Blue

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| McRO, Inc., dba Planet Blue,<br><br>Plaintiff,<br><br>v.<br><br>Namco Bandai Games America, Inc., et al.<br><br>Defendants. | Case No. 12-cv-10322-GW (FFMx)<br><br>Honorable George H. Wu<br><br>**PLANET BLUE'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT OF UNPATENTABILITY UNDER 35 U.S.C. §101**<br><br>**CONSOLIDATED WITH:**<br>12-cv-10327-GW (FFMx)<br>12-cv-10329-GW (FFMx)<br>12-cv-10331-GW (FFMx)<br>12-cv-10333-GW (FFMx)<br>12-cv-10335-GW (FFMx)<br>12-cv-10336-GW (FFMx)<br>12-cv-10337-GW (FFMx)<br>12-cv-10338-GW (FFMx)<br>12-cv-10340-GW (FFMx)<br>12-cv-10341-GW (FFMx)<br>12-cv-10342-GW (FFMx)<br>13-cv-01870-GW (FFMx)<br>14-cv-00332-GW (FFMx)<br>14-cv-00336-GW (FFMx)<br>14-cv-00352-GW (FFMx)<br>14-cv-00358-GW (FFMx) |

14-cv-00383-GW (FFMx)
14-cv-00417-GW (FFMx)

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................... 1

II. Argument ............................................................................................... 3

    A.  The Legal Standard .......................................................................... 3

    B.  Application Of The Mayo Framework ............................................... 8

        1.  Defendants Fail to Follow *Mayo* Or Establish the
           Rosenfeld Patents Cover an "Abstract Idea" ............................... 9

        2.  The Claims Cover Patent Eligible Subject Matter ..................... 13

        3.  Essential Elements Meaningfully Limit The Scope Of The
           Claims ...................................................................................... 15

        4.  The Machine or Transformation Test ........................................ 19

        5.  Defendants Have Also Patented Technology Related to
           Lip-Synchronization .................................................................. 20

        6.  Defendants' Attacks on Software Patents Should Be
           Rejected ................................................................................... 22

III. CONCLUSION ..................................................................................... 23

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  No. 13-298, 110 U.S.P.Q.2d 1976, 2014 U.S. LEXIS 4303
  (June 19, 2014) ................................................................*passim*

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008) ..............................................7

*Bilski, v. Kappos*,
  561 U.S. 593, 130 S. Ct. 3218 (2010) ..........................4, 6, 7, 19

*Cafasso v. Gen. Dynamics C4 Sys.*,
  637 F.3d 1047 (9th Cir. 2011) ..........................................4, 8

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
  717 F.3d 1269 (Fed. Cir. 2013). .....................................5, 10, 18

*Diamond v. Diehr*,
  450 U.S. 175 ..........................................................6, 7, 8, 22

*Digitech Image Tech., LLC v. Electronics For Imaging, Inc.*,
  No. 13-1565 (Fed. Cir. July 11, 2014) ......................................22

*Fr. Telecom S.A. v. Marvell Semiconductor*,
  2014 U.S. Dist. LEXIS 52564 (N.D. Cal. Apr. 14, 2014) ...............9, 18, 19

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist
  Congregational Church*,
  887 F.2d 228 (9th Cir. 1994) ...............................................3

*Gottschalk. CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .............................................17

*Gottschalk v. Benson*,
  409 U.S. 63, 93 S. Ct. 253 (1972) .........................................17

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*,
  644 F.3d 934 (9th Cir. 2011) ...............................................3

ii

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
  566 U.S. ___, 132 S. Ct. 1289 (2012) ........................................................*passim*

*Parker v. Flook*,
  437 U.S. 584, 98 S. Ct. 2522 (1978) ................................................................ 6

*Research Corp. Techs. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010) ...................................................................... 19

*TQP Development, LLC v. Intuit Inc.*,
  No. 2:12-180-WCB, 2014 U.S. Dist. LEXIS 20077
  (Feb. 19, 2014 E.D. Tex.), ........................................................... 17, 19, 20

*Ultramercial, Inc. v. Hulu, LLC*,
  722 F.3d 1335 (Fed. Cir. 2013) ................................................... 3, 4, 8, 18

*Xerox Corp v. 3Com Corp.*,
  458 F.3d 1310 (Fed. Cir. 2006) .................................................................... 20

**Statutes**

Patent Act ............................................................................................... 8, 10

Section 101 of the Patent Act ................................................................*passim*

**Other Authorities**

http://www.scotusblog.com/2014/06/symposium-supreme-court-leaves-patent-
  protection-for-software-innovation-intact/ ............................................... 23

Rule 12(b)(6) ............................................................................................ 4, 8

Rule 12(c) ............................................................................................. 3, 4, 8

U. S. Const., Art. I, §8, cl 8 ......................................................................... 5

PLANET BLUE'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT OF UNPATENTABILITY UNDER 35 U.S.C. §101

## I.     INTRODUCTION

Once upon a time, Defendants Disney, LucasArts, Electronic Arts, Sony, and Warner Brothers, each either hired (and paid) Mr. Rosenfeld for lip synchronization projects (*see, e.g.*, Petrsoric Decl.,[1] Ex. 1 LucasArts invoices) or invited him to demonstrate his technology.  One of these Defendants, Warner Brothers, described Mr. Rosenfeld's technology as a "revolutionary lip synch technique."  (*Id.*, Ex. 2, PB098336.)

Now Defendants argue that the Rosenfeld Patents are broad—so broad that they are completely abstract, that they comprise a mental process that could have all been done by hand, and that they would preempt an entire industry. Defendants allege that Mr. Rosenfeld's inventive—nee "revolutionary"— technology, which clearly improved a technical field, was abstract and known (but not to Warner Brothers, LucasArts, Disney, Sony or Electronic Arts, though). Therefore, Defendants claim, the Rosenfeld Patents constitute unpatentable subject matter under 35 USC §101. They now ask this court to dismiss Plaintiff's claim, allowing them to continue to freely use Mr. Rosenfeld's patented technology.

Here's the truth: Defendants' § 101 argument is conclusory and based on an unsupported, and unsupportable, assumption that the technology is an "abstract idea."  Defendants' motion factually mischaracterizes the patents and the record. An industry expert flatly refutes many of Defendants' factual mischaracterizations (as shown in his Declaration submitted with this Opposition).  Mr. Rosenfeld's invention cannot be performed completely by hand (if it could would an animation company like Disney have bothered meeting with him?).  To automatically produce synchronized animation at a frame rate of 30 frames per second required movement of millions of vertices in fractions of a second.  This was a

---

[1] "Petrsoric Decl." refers to the Declaration of John F. Petrsoric In Support of Planet Blue's Opposition to Defendants' Motion For Judgment On The Pleadings Based On Unpatentability Under 35 U.S.C. § 101.

1    "revolutionary" approach to lip synchronized animation.

2          Defendants deny that the production of lip-synchronized characters that is

3    the output of the methods of the Rosenfeld Patents is a tangible result.  But there is

4    a tangible result— animation of three dimensional characters whose lip and facial

5    movements are synchronized to their speech.  This tangible result is incorporated

6    into the hundreds of video games developed, published and sold by Defendants in

7    the form of cut scenes and/or during gameplay.  Finally, Defendants' analysis

8    ignores the claim language and the totality of the claims themselves; by selectively

9    focusing on portions of the claims, Defendants violate the Supreme Court's

10   instructions on how to analyze 101 issues and, in doing so, deliberately ignore the

11   true meaning and contribution of Mr. Rosenfeld's inventions.

12         It was only last year that Defendants characterized Mr. Rosenfeld's

13   inventions as "a narrow approach to 'animating lip synchronization and facial

14   expressions' of animated characters."  (D.I. 24, Notice of Motion and Defendants'

15   Motion to Dismiss Complaints, pp, 1-2, *see also* pg. 8, ll. 7-8.)  Defendants

16   anticipated that such narrow characterizations would provide them with easy non-

17   infringement positions such that they would escape this case early.  Since

18   Defendants' non-infringement positions failed to materialize, Defendants later

19   represented to the Court that this case would be quickly resolved following the

20   claim construction process.  Again, Defendants representations proved incorrect.

21   Defendants also alleged that the case would be resolved via Naughty Dog's

22   petition for Inter Partes Review, but the Patent Office refused to institute the

23   review, and then denied Naughty Dog's request for reconsideration.  Defendants

24   are running out of ways to dispose of this case and avoid liability; all their

25   attempts so far have failed.

26         Defendants have already undermined their argument by their previous

27   actions (*see e.g.*, Warner Bros. and LucasArts etc.), their previous positions in this

28   case and their recent patenting of similar technology.  Defendants and the Patent

2

1    Office all recognize the validity and value of Mr. Rosenfeld's technology. There

2    is no abstract idea here; rather Mr. Rosenfeld contributed to society a remarkable

3    improvement in lip-synchronization technology, used to create tangible, viewable,

4    lip-synchronized, three dimensional characters. Every asserted claim requires the

5    production of a tangible, non-abstract result, namely the "generat[ion of] an output

6    sequence of animated characters with lip and facial expression synchronized to

7    said audio sequence." Defendants' motion should be denied.

8    **II.    ARGUMENT**

9        **A.    The Legal Standard**

10         To succeed on a Rule 12(c) judgment on the pleadings, "the moving party

11   [must] establish[] on the face of the pleadings that there is no material issue of fact

12   and that the moving party is entitled to judgment as a matter of law." *Jensen*

13   *Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d

14   934, 937, n.1 (9th Cir. 2011); Fed.R.Civ.P. 12(c). In adjudicating the motion,

15   "[a]ll allegations of fact by the party opposing the motion are accepted as true, and

16   are construed in the light most favorable to that party." *General Conference Corp.*

17   *of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887

18   F.2d 228, 230 (9th Cir. 1994). Because every patent is presumed valid and to have

19   been issued properly, absent clear and convincing evidence to the contrary, "it will

20   be rare that a patent infringement suit can be dismissed at the pleading stage for

21   lack of patentable subject matter." *Ultramercial, Inc. v. Hulu*, *LLC*, 722 F.3d

22   1335, 1338 (Fed. Cir. 2013)*, vacated on other grounds, remanded*, No. 13-255,

23   2014 U.S. LEXIS 4647 (U.S. June 30, 2014) (remanded for further consideration

24   in light of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, No. 13-298, 110 U.S.P.Q.2d

25   1976, 2014 U.S. LEXIS 4303 (June 19, 2014)). Indeed, "the *only* plausible

26

27

28

reading of the patent must be that there is clear and convincing evidence of [§ 101] ineligibility" before a patent is found invalid.  *Id* at 1339 (emphasis in original).[2]

Like a Summary Judgment Motion filed under Rule 12(b)(6), a Motion for Judgment on the Pleadings under Rule 12(c) also cannot succeed if a disputed issue of material fact exists.  *See Ultramercial*, 722 F.3d at 1339 ("The presence of factual issues coupled with the requirement for clear and convincing evidence normally will render dismissal under Rule 12(b)(6) improper."); *see also Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047,  1054, n.4 (9th Cir. 2011) ("we have said that Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule") (internal quotations omitted).

Section 101 of the Patent Act states that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  "In choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope."  *Bilski, v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 3225 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980).  "The [Supreme] Court's precedent provides three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'"  *Id*.  The Defendants' motion relies only on the "abstract ideas" exception.  (*See Defendant's Opening Brief*, D.I. 338 at 1-2 ("Op. Br. "))

Recently, in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, No. 13-298 (June 19, 2014), the Supreme Court, rather than altering its § 101 jurisprudence, confirmed the approach for deciding questions of patent-eligibility it previously laid out in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.,* 566 U.S. ___, 132

---

[2] Although *Ultramercial* involved a Rule 12(b)(6) motion to dismiss, a Rule 12(c) motion is decided under the same standard. *See infra* at 4.

S. Ct. 1289 (2012).  *Alice*, No. 13-298, slip op. at 7.[3]  The Court described the concern driving the basis of the § 101 exemptions as one of pre-emption.  *Alice*, No. 13-298, slip op. at 5.  Abstract ideas, along with laws of nature and natural phenomena, are "the basic tools of scientific and technological work."  *Alice*, No. 13-298, slip op. at 6 (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 186 L.Ed.2d 124, slip op. at 11 (2013)).  "'[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws.  *Mayo supra*, at ___ (slip op., at 2); see U. S. Const., Art. I, §8, cl 8 (Congress "shall have Power . . . To promote the Progress of Science and useful Arts").  We have 'repeatedly emphasized this . . . concern that patent law not inhibit further discovery by improperly tying up the future use of ' these building blocks of human ingenuity.  *Mayo, supra*, at ___ (slip op., at 16) (citing *Morse*, supra, at 113).  *Id.*

However, "an invention is not rendered ineligible for patent simply because it involves an abstract concept."  *Id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187) (1980).  Even if a patent incorporates an abstract idea, it is still patent-eligible if such an idea is applied to a new and useful end.  *Id*. Unlike patents directed specifically to an abstract idea, patents directed to the ***application*** of an abstract idea bear no comparable risk of pre-empting all use of an idea or principle.  *See id.*

The Supreme Court has acknowledged that "at some level, all inventions

---

[3] Defendants concede that the Supreme Court's *Alice Corp.* decision did not alter the approach to § 101 patent-eligibility first articulated in *Mayo* and followed by the Federal Circuit in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269  (Fed. Cir. 2013).  (*See, e.g.*, Op. Br. at 11 ("The *Alice Corp.* Court also confirmed—unanimously—that *Mayo* sets forth the correct test to apply to a computer-implemented process . . . ."); *see also* Petrsoric Decl. Ex. 3, Scheduling Conference before the Hon. George Wu, Tr. at 10:13-15, June 30, 2014) ("It is true that the most recent CLS decision from the Supreme Court confirmed that the Mayo law is correct.") (Ms. Sonal Mehta, counsel for Defendants)).

embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* slip op. at 6 (citing *Mayo*, slip. op. at 2) (internal quotations marks omitted).  The Supreme Court established guidelines for determining when a patent complies with the requirements of § 101(and does not run afoul of the abstract idea exception).  *See Bilski*, 561 U.S. at 3231.

In *Parker v. Flook*, 437 U.S. 584, 98 S. Ct. 2522 (1978), the Supreme Court considered a patent on the procedure for monitoring the variables in a catalytic conversion process according to a mathematical formula.  The Court found the claim was invalid and explained that "[r]espondent's process is unpatentable under § 101, not because it contains a mathematical algorithm as one component, but because once that algorithm is assumed to be within the prior art, the application, *considered as a whole*, contains no patentable invention."  *Flook*, 437 U.S. at 594 (emphasis added).  The patentability of the claim did not turn on the novelty of the mathematical formula or abstract idea found in the claim, but rather on whether the process as a whole was "new and useful."  *Id.* at 590-91.  Thus, "[e]ven though a phenomenon of nature or mathematical formula may be well known, an inventive application of the principle may be patented."  *Id*.

In *Diamond v. Diehr*, 450 U.S. 175, 101 S. Ct. 1048 (1981), the Supreme Court addressed a patent directed toward a process for curing synthetic rubber by constantly monitoring temperatures inside a mold, and calculating the cure time according to a mathematical equation.  The Court found the process was patent-eligible.  *Diehr*, 450 U.S. at 193.  Unlike in *Flook*, where the claim limitations beyond the mathematical algorithm contained only well-known processes, the claim in *Diehr* added a novel set of practical steps and limitations to an abstract formula, rendering the claim patentable.  The Court recognized that even though the patentee's "process admittedly employs a well-known mathematical equation . . . they do not seek to pre-empt the use of that equation.  Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other

6

steps in their claimed process." *Id.* at 187.  Thus, the Court reaffirmed that the ***application*** of these abstract ideas and mathematical formulae could be patented even though abstract ideas and mathematical formulae were not patentable standing alone.  *See id.* ("It is now commonplace that an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.")

In *Bilski, v. Kappos*, 130 S. Ct. 3218 (2010), the Supreme Court considered the Federal Circuit's "machine or transformation" test in which "A claimed process is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008).  The Court held that while this machine-or-transformation test is a useful and important clue for determining patentability under § 101 it "is not the sole test for deciding whether an invention is a patent-eligible process." *Bilski*, 130 S. Ct. at 3227 (internal quotation marks omitted) (finding the patent at issue claimed unpatentable subject matter based on precedent rather than the machine or transformation test).

The proper analysis for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas, was articulated by the Supreme Court in *Mayo* and recently confirmed in *Alice Corp.  See Alice*, slip op. at 7-11.  "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts.  If so, we then ask, what else is there in the claims before us?  To answer that question, we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* at 7 (citing *Mayo*, slip op. at 8-9) (internal quotations and citations omitted).

In *Alice Corp.*, the Supreme Court reaffirmed that generic computer implementation of an abstract idea does not transform an abstract idea into a patent-eligible invention.  *See id.* at 10.  However, "[w]hen assessing computer

7

implemented claims, while the mere reference to a general purpose computer will not save a method claim from being deemed too abstract to be patent eligible, the fact that a claim is limited by a tie to a computer is an important indication of patent eligibility." *Ultramercial*, 722 F.3d at 1348 (citing *Bilski*, 130 S. Ct. at 3227). "There is no dispute that . . . many computer-implemented claims are formally addressed to patent-eligible subject matter."[4] *Alice,* slip. op. at 13-14.

### B.    Application Of The Mayo Framework

The asserted claims are method claims, directed to a process for producing three-dimensional computer-generated animations (sometimes referred to as "CGI"), where a computer represents and manipulates image data using specialized software, to produce computer animated characters having lip and facial movements synchronized to their speech. (Markman Order, D.I. 298 at p. 6.) Because all of the claims at issue constitute a "process," they are expressly included within the scope of 35 U.S.C. §101 ("Whoever invents or discovers any new and useful process . . . or any new and useful improvement thereof, may obtain a patent therefor . . . .")

---

[4] The Patent Act primarily focuses on criteria such as novelty, nonobviousness, and written description for determining patent validity. The § 101 patent-eligibility inquiry should not be conflated with these other criteria. *See Diehr*, 450 U.S. at 190 ("The question therefore of whether a particular invention is novel is wholly apart from whether the invention falls into a category of statutory subject matter.") Inquiries into patent validity, particularly novelty and nonobviousness, can raise a plethora of factual issues relating to, *inter alia,* the state of the art at the time of the invention. For example, "any inquiry into the scope of preemption—how much of the field is 'tied up' by the claim—by definition will involve historic facts: identifying the 'field,' the available alternatives, and preemptive impact of the claims in that field." *Id.* Such factual disputes should render the dismissal of a claim under a Rule 12(c) judgment on the pleadings improper. *See Ultramercial* at 1339 ("The presence of factual issues coupled with the requirement for clear and convincing evidence normally will render dismissal under Rule 12(b)(6) improper."); *see also Cafasso*, 637 F.3d at 1054, n.4 (9th Cir. 2011).

To determine whether the claims may fall within one of the judicial exceptions for patent eligibility, the *Mayo* framework requires that the Court first determine "whether the claims at issue are directed to … [a] patent-ineligible concept." *Mayo,* slip op. at 8.  To answer that question, the Court must consider the elements of each claim both individually and as "an ordered combination." When viewed under this directive, the claims clearly contain patent-eligible subject matter.  It is only by attempting to ignore the "ordered combination" of the claims, and instead improperly focus on selected excerpts of the claims in a vacuum, that Defendants arrive at a purported contrary result.

> ### 1.    Defendants Fail to Follow *Mayo* Or Establish the Rosenfeld Patents Cover an "Abstract Idea"

Rather than properly employ the *Mayo* framework to assess the claims of the Rosenfeld Patents, Defendants improperly dissect the claims, arguing that they incorporate various "abstract" ideas.  By ignoring the complete scope of the claims themselves, and refusing to analyze them in totality, Defendants fail to adhere to the Supreme Court's instruction.

Defendants allege that "the patents-in-suit claim merely the abstract idea of synchronizing an animated character's mouth with the words he speaks using a set of rules."  (Op. Br. at 1 ll. 13-14)  This presumes that "synchronizing an animated character's mouth with the words he speaks using a set of rules" is indeed an abstract idea.  Defendants provide no explanation or justification for this conclusory assumption.  Presumably, Defendants only reach this assumption by ignoring multiple claim elements, including the "generating . . ." steps of the asserted claims.  Since Defendants have offered no reason why their summary characterization, or their improper cherry-picking of selected claim elements, is remotely appropriate, their motion should be denied.  *See France Telecom* at *28, n. 5 ("Marvell essentially asserts that the entirety of Claims 1 and 10 is the abstract idea without explaining why that is the case. This is insufficient to meet the 'high

9

1    level of proof' needed to succeed on this motion.")

2            Defendants' approach also diverts the focus from the claims themselves to

3    what they characterize as an "inventive concept" from which a subjective

4    judgment can be made.[5]  Defendants allege that Planet Blue conceded that the

5    "idea" of the claims was well known.  That is completely untrue.  While Planet

6    Blue acknowledges that certain aspects of the claims were known in the art—Mr.

7    Rosenfeld did not make his inventions in a vacuum—this argument goes to

8    whether there may be a question of validity under §§ 102, 103 (and ignores the

9    totality of the claims).  The Federal Circuit has cautioned against conflating the

10   analysis of the conditions of patentability in the Patent Act (e.g., §§ 102, 103) with

11   inquiries into patent eligibility.  *CLS Bank*, 717 F.3d at 1302 ("The eligibility

12   inquiry is not an inquiry into obviousness, novelty, enablement, or any other

13   patent law concept.").

14           Defendants repeatedly claim that the "patents-in-suit concede that the idea .

15   . . is well-known and long-practiced in the prior art."  (Op. Br. at pg, 1, ll. 18-19,

16   emphasis omitted.)  Defendants' own actions belie this fact.  Calling Mr.

17   Rosenfeld's technology "revolutionary" and paying him to perform lip

18   synchronization for their games argues for the uniqueness and value of his

19   technology.  This point is bolstered by Defendants' identification of a portion of

20   the specification from column 1 to column 2 without any argument or assertion as

21   to how that material allegedly shows that the limitations of all the asserted claims

22   were known in the art.  Simple logic further undermines Defendants' assertion.  A

23   patentee simple does not waste the time, money and effort to prosecute a patent

24   

25   [5]  Defendants' approach also contradicts the positions they took regarding the
     scope of the claims in the Markman process.  See, e.g., Markman Order at p. 5
26   ("Defendants argue that the term "automatically" modifies the verb "animating,"
     and the whole claim is one for automatic animation, as shown by the fact that the
27   claimed steps "comprise" the automatic method.")  As such, they now should be
28   estopped from arguing to the contrary.

application for an invention they casually indicate was known in the art.  The Patent Office's refusal to institute the IPR petition filed by Naughty Dog also supports this point.  (Petrsoric Decl., Ex.4 Order Denying Institution of '576 Patent IPR Review.)[6]

Defendants further rely on alleged admissions by Planet Blue during the Markman Hearing that the steps of the claimed methods were well-known.  While Planet Blue did admit "that 'some forms of automated lip synchronization' were already practiced in the prior art" (Op. Br. at pg. 6, ll. 2-3, citations omitted), Defendants further assertion is an attempt to grossly mislead the Court.  Planet Blue did not say that "transaction parameters" were already practiced in the prior art.  Planet Blue said just the opposite, as the hearing transcript indicates:

> MR. WHITMAN: One, I would like to go back, and I think counsel has repeatedly said that the rules were known in the art. But I am not sure that is accurate. I think counsel is just making that up.

> We haven't seen anything where timing rules, for example, have been shown in the art. Transaction parameters were shown in the art. I think that these rules are part of the invention. The invention is set forth in the claim. Yes. The interpolation step, perhaps that was known in the art. Interpolation is not even mentioned in the claim. What the claim

---

[6] The PTAB recognized that the limitations of the claims of Rosenfeld Patents were not known in the prior art.  For example, with respect to the Peng reference, it stated: "the claim requires that the rules define a morph weight set stream as a *function of . . . times associated with said phoneme sequence*" (pg. 12); "Petitioner's discussion of Peng . . . does not identify any disclosure in Peng that corresponds to a morph weight set stream being defined as a *function of time of said phoneme sequence" (id.)*; "Peng's discussion of weight vectors on pages 48 and 50-51 does not indicate that the weight vectors are a function of phoneme times or that they contain any time values" (*id.*); "we are not persuaded that Peng discloses a first set of rules that defines a morph weight set stream as a function of time of said phoneme sequence" (pg. 13).  Numerous other reasons for rejection of the Naughty Dog IPR request are stated with respect to the Waters (pg. 16), Kaneko (pp. 18-19), Parke (pg. 21) and obviousness (pg. 23) challenges.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

requires is that you generate a final stream of output morph weight sets at a desired frame rate using the intermediate stream and the transition parameters.

(Op. Br., Ex. D at 84:11-24.)

It is clear from the context that the cited statement regarding "transaction parameters" (i.e., "transition parameters") was part of the previous sentence, but transcribed as a separate sentence. Planet Blue was saying that "transition parameters" were ***not*** known in the art. Defendants have mischaracterized the record in this instance.

The supposed further "admissions" to which Defendants cite (Op. Br. at 15) are also taken out of context. Planet Blue was attempting to explain at least part of the "inventive concept," the application of specific rules,[7] including timing rules, through newly specialized software to achieve what was laboriously done by hand (through the animator's "feel") in the prior art.

Because Defendants never attempt to define the concepts of the asserted method claims as a whole and instead create a purported inventive concept from thin air, they have failed to satisfy the criteria established by the Supreme Court in *Mayo* and confirmed in *Alice*. Their arguments do not show by clear and convincing evidence that the claims are directed to an "abstract idea." When analyzed in their totality, taking all of the individual elements of the claim and the

---

[7] Defendants argue that the "rules" of the patents are so abstract that they place no meaningful limitation on the claims. This is simply false. Claim 1 of the '576 patent requires that the "rules define output morph weight set stream as a function of phoneme sequence and time of said phoneme sequence." The PTAB rejected aspects of the Naughty Dog IPR Request on the grounds that the prior art did not meet this limitation. *See*, supra, fn 6. Moreover, the asserted dependent claims further limit the "rules." (*See* '576 patent, cl. 13, col. 12, ll. 22-28; '278 patent, cls. 2-3, col. 11, ll. 60-67.) Again, if the "rules" limitations are as broad as Defendants contend, there will be issues of novelty and non-obviousness addressed separately from the patentability issue at hand. The prior art in the Naughty Dog IPR Request clearly did not raise such issues. *See*, supra, fn 6.

"ordered combination" of those elements into account, it is clear that claims are not directed to an abstract idea.  The Rosenfeld Patents are not ineligible under §101.

### 2.      The Claims Cover Patent Eligible Subject Matter

Claim 1 in both the '576 and '278 patents recite steps to produce a real and tangible result—computer animated characters whose lip movement and facial expression are synchronized to their speech.  This result is evident and demonstrable in the accused products, during the playing of the accused games.

As an example, claim 1 of the '576 patent recites:

A method for automatically animating lip synchronization and facial expression of three-dimensional characters comprising:

obtaining a first set of rules that define output morph weight set stream as a function of phoneme sequence and time of said phoneme sequence;

obtaining a timed data file of phonemes having a plurality of sub-sequences;

generating an intermediate stream of output morph weight sets and a plurality of transition parameters between two adjacent morph weight sets by evaluating said plurality of sub-sequences against said first set of rules;

generating a final stream of output morph weight sets at a desired frame rate from said intermediate stream of output morph weight sets and said plurality of transition parameters; and

applying said final stream of output morph weight sets to a sequence of animated characters to produce lip synchronization and facial expression control of said animated characters.

The Rosenfeld Patents solve a particular problem in the computer animation industry and, thus, at their core represent an improvement in a real and established technology.  At the time of the invention's conception, the first major feature-length CGI film, Toy Story (which was animated by hand), had just been released and Silicon Graphics was delivering high-performance computers that would

13

allow the CGI market to expand rapidly.  Using existing CGI technology, Mr. Rosenfeld sought to effectively, efficiently and rapidly generate CGI character animations with lip movements synchronized to the accompanying dialog.  Mr. Rosenfeld conceived of a specific and effective method to accomplish this.  The brilliance of his idea was noted by certain of the Defendants, hiring him to perform lip synchronization and calling his technique "revolutionary."

Taking the claims at the highest possible level, they are directed to producing three-dimensional, CGI character animations.  The claims require that the characters be "automatically" animated, including the automatic "setting of morph weights at keyframes."  (D.I. 298, Ruling on Claim Construction at p. 6.)  The claims at issue produce a tangible, concrete result, satisfying the second prong of the *Mayo* framework.   Under the *Mayo* framework, the analysis stops here – there is no patent-ineligible subject matter in the claims.  This result comes into stark relief when the additional limitations of the claims are considered and the claim is analyzed *in toto*, as required by *Mayo*.

To create speaking CGI characters, the claims require many specific steps.  The claims start with a time-aligned, phonetic sequence (TAPT).  But from that point on, the Rosenfeld inventions break new ground, employing a series of concrete software steps to achieve a concrete result— computer animated characters whose lip movement and facial expression are synchronized to their speech, using precise blending and timing rules.  More particularly, the automatic generation of character animation is dependent upon the generation of a particular data structure, called the "morph weight set," that is to be applied to the CGI facial models to produce the animation.[8]  In addition, the computer must obtain rules that

---

[8] The Court construed the term "morph weight set" as "a set of values, one for each delta set, that, when applied, transform the neutral model to some desired state, wherein each delta set is the set of vectors from each vertex on the neutral (reference) model to each vertex on a model of another mouth position."  (D.I. 298 at p. 9.)

1    define the "morph weight set" in terms of the spoken phonemes and the timing of

2    those phonemes.   Claim 1 of the '576 patent and the dependent claims of the '278

3    patent add the further limitation that a set of "transition parameters" be generated

4    along with the "stream of morph weight sets."

5            As Warner Brothers said: "revolutionary."

6    ### 3.    Essential Elements Meaningfully Limit The Scope Of
7    The Claims

8            Even assuming, *arguendo*, that Defendants are correct and that the

9    underlying fundamental concepts of the Rosenfeld Patents are directed to an

10   abstract idea, the patents are still eligible under §101.  The claims as a whole

11   incorporate numerous essential elements that meaningfully limit the scope of the

12   claims.  Specifically, the claims require that "morph weight sets" and "transition

13   parameters" be automatically generated in response to rules regarding phonemes

14   and the timing of those phonemes.  The resulting "morph weight sets" are applied

15   to the CGI models to generate CGI character animations.  The Defendants have

16   repeatedly asserted that their accused processes do not infringe because they fail to

17   employ "morph weight sets," as that term has been construed by the Court.  Now,

18   Defendants ask the Court to ignore what they previously characterized as concrete

19   and narrow (and allegedly not used), and to instead find the claims directed to an

20   overly broad, abstract idea that fails to limit the claim.  Defendants cannot have it

21   both ways.

22           The Court is also asked to find that the claims in their totality are so abstract

23   as to cover all forms of lip synchronization in character animation.  This includes

24   animation by pen-and-paper, and the many alternative, computer-generated (and

25   non-accused) forms that Defendants employ.

26           Defendants point to statements in the Rosenfeld Patents that describe the

27   prior art forms of CGI lip-synchronization and make the bald-faced assertion that

28   the invention was being practiced by hand.  The Rosenfeld Patents, however,

15

stated that the "current practice for three dimensional **computer** generated speech animation is by manual techniques," such as by manually manipulating sliders. ('576 patent at 2:29-37.)  Notably, this passage (also cited by Defendants) contradicts their assertion that the invention can be practiced with pen-and-paper because the Rosenfeld Patents expressly state that even the prior art techniques involved computers at some level.  *Id.*  Defendants provide no evidence that either manually drawing characters with pen and paper or using computer graphics with manual sliders (or using any other form of prior art technique) meet the limitations of the asserted claims (other than a lawyer-generated table that mixes and matches selected words, not actual claim elements), nor can they.  Of course, if Defendants' allegations that all of the recited claim elements were admitted as being in the prior art or known in the prior art were correct, the Patent Office would have instituted Naughty Dog's IPR request.  In any event, Defendants' argument conflates a § 101 analysis with a § 102/103 analysis.

As part of their "pen and paper" argument, Defendants allege that the "generating" steps of the claim can be performed by a human being.  This directly contradicts the position that the Defendants took in their claim construction brief, where they emphasized the importance of the automatic nature of the invention in overcoming the prior art's "laborious and lengthy protocols." (D.I. 246 at pg 6, ll. 23-24.)  The Court recognized that "the invention automates the setting of morph weight sets at the keyframes." (D.I. 298 at pg 6., citing the '576 patent at 2:29-37 and 7:10-18.)  As Dr. Gleicher notes, the generation of morph weight sets by hand (even using a calculator) is highly infeasible and contrary to the "automatic" nature of the invention.  (Gleicher Decl. at ¶¶11-15.)  The patented claims simply do not preempt any form of manual animation.  It is not the case that the required models and morph weight sets could be created by hand and applied, either by hand or computer, to generate 3-D character animation.   Defendants concede as much.

16

1    Defendants rely on *Gottschalk v. Benson*, 409 U.S. 63, 93 S. Ct. 253 (1972),

2   for the proposition that "mental processes, and abstract intellectual concepts are

3   not patentable, as they are the basic tools of scientific and technological work."

4   *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).  The court in *TQP Development,*

5   *LLC v. Intuit Inc.* recognized that "[t]aken out of context, that statement is quite

6   broad."  *TQP Development, LLC v. Intuit Inc.*, No. 2:12-180-WCB, 2014 U.S.

7   Dist. LEXIS 20077, *7 (Feb. 19, 2014 E.D. Tex.), (Bryson, J., sitting by

8   designation).  Defendants have done precisely that and mischaracterized the law.

9   (Op. Brief at 2, 10.)  Critically, it is only "computational methods which can be

10  performed *entirely* in the human mind" that are the basic tools of scientific and

11  technological work the Supreme Court was referring to in *Gottschalk*.

12  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1337 (Fed. Cir. 2011)

13  (citations omitted).  In *Gottschalk*, the Court held that a process claim directed to a

14  formula for converting binary-coded decimal numerals into pure binary code was

15  not patentable as it would "wholly pre-empt the mathematical formula and in

16  practical effect would be a patent on the algorithm itself."  *Gottschalk*, 409 U.S. at

17  71-72.  Unlike *Gottschalk*, the Rosenfeld Patents do not claim an algorithm that

18  would pre-empt a mathematical formula or any other basic tool of technological

19  work.

20    Defendants further assert that the animator would apply morph weights

21  based on personal judgment.  (Op. Brief at 19, ll. 15-19.)  But the Rosenfeld

22  claims require exact weight sets to be applied to achieve repeatable, efficient

23  results.  Drawing multiple facial models and applying personal judgment is

24  directly contrary to the requirements of the claim.  The claims require the

25  calculation of exact vertex locations, exact changes in those vertices, and morph

26  weights.

27    In a footnote, Defendants assert that "the idea that the human mouth looks a

28  certain way while speaking particular sounds is indeed a 'pre-existing fundamental

17

truth' that 'exists in principle apart from any human action.'" (Op. Br. at pg. 12, fn 9.) Should this be a suggestion that the patents attempt to pre-empt all forms of generating CGI character animations with synchronized lip and facial movement, Planet Blue notes that there are many forms of CGI character animation that fall outside the scope of the claims. This includes facial capture, where the facial movements of the CGI characters are derived from the movements of real people, typically actors that have markers applied to their face. (Gleicher Decl., ¶¶ 16-17.) Cameras capture the locations and movements of the markers and computer software is employed to translate the captured locations and movements to the movement of the resulting CGI character. (*Id*.) Because the facial motion of the CGI characters is directly derived from actors, there is no need to obtain phonetic sequences or rules, and at least the first two steps of the asserted claims are not met. (*Id*.) Other forms of CGI lip synchronization are excluded from the claims as well. (*Id*., ¶ 18.)

The Rosenfeld Patents' claims are not highly generalized as the Defendants suggest. While "any claim can be stripped down, simplified, generalized or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed," the Court cannot ignore "the concrete, palpable, tangible limitations of the invention the patentee actually claims." *CLS Bank Int'l,* 717 F.3d at 1298; *see also* Gleicher Decl., ¶¶ 9-10, 19-20. For this reason, Defendants arguments of abstraction should be rejected. The asserted claims contain numerous concrete limitations, all of which are performed in a specific way by a computer. There is no risk of pre-emption and, at the very least, as Dr. Gleicher's declaration elucidates, there is a material issue of fact as to Defendants' assertion of pre-emption, making a motion directed to the pleadings inappropriate. *Ultramercial*, 722 F.3d at 1339; *see also Fr. Telecom S.A. v. Marvell Semiconductor*, 2014 U.S. Dist. LEXIS 52564, *40 (N.D. Cal. Apr. 14, 2014) (finding that the non-moving party's undisputed declaration

18

stating that the claim could not be performed in a human was sufficient to defeat summary judgment).

### 4.        The Machine or Transformation Test

A further indication that the Rosenfeld Patents claim patent-eligible subject matter is that the claims satisfy at least the transformation prong of the "machine or transformation" test.  The patents use rules and timing parameters to allow a computer to automatically generate animation data that is applied to 3D CGI characters to produce a tangible result.  Although it is not necessary to satisfy the machine-or-transformation test to comply with § 101, the test is still an important tool for determining patent-eligibility.  *See Bilski,* 561 U.S. at 3227 ("This Court's precedents establish that the machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101").

Whether the result achieved by a method claim satisfies the machine-or-transformation test is measured in the context of the particular technological field of the claim.  *See, e.g., TQP Development, LLC*, 2014 U.S. Dist. LEXIS 20077, *19 (finding an invention in the field of cryptology that transformed data in a secure form was patent-eligible as this was what the field of cryptology was all about).  The methods in the Rosenfeld Patents do not simply reorganize or manipulate data, but in fact generate or create animation data.  The static face of a non-speaking character and its associated dialog is transformed into an animated character whose lips are synchronized to its associated dialog.

Courts have repeatedly found inventions that transform data patent-eligible when the transformation of data is commensurate with the technology field of the patent.  *See, e.g., Fr. Telecom S. A.*, 2014 U.S. Dist. LEXIS 52564 at *34 (finding that the transformation of digital data elements into a distinct series of coded data elements likely met the transformation prong of the machine or transformation test).  In *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir.

2010), the Federal Circuit examined a patent for converting image data into a form a computer can display as a half-tone image.  The court found that this claim presented "functional and palpable applications in the field of computer technology" and was indeed, patent-eligible.  In *TQP Development*, Judge Bryson discussed the invention at issue in *Xerox Corp v. 3Com Corp.*, 458 F.3d 1310 (Fed. Cir. 2006), which constituted a writing convention that would be easy for a computer to read in order for the writing to be interpreted by the computer.  *See TQP Development*, 2014 U.S. Dist. LEXIS 20077 at *19; *Xerox Corp.*, 458 F.3d at 1311.  He noted the invention was "a useful and specific technology that could be advantageously employed in the field of computer technology" and thus, patent-eligible.

It is clear that "an inventor can get a patent on a method that makes information more readily understood and recognized." *TQP Development*, 2014 U.S. Dist. LEXIS 20077, at *20.  The Rosenfeld Patents go far beyond that. However, a key concept of the Rosenfeld Patents was an innovative approach to lip-synchronized animation that allowed a computer to automatically do what previously was done manually.  This concept, in combination with the other steps in the Rosenfeld Patents, transformed dialog and static character faces into a concrete result that was valuable to the field of 3D animation.   This satisfies the machine or transformation test and renders the invention in the Rosenfeld Patents patentable.

### 5.    Defendants Have Also Patented Technology Related to Lip-Synchronization

U.S. Patent No. 8,743,125 ("the '125 patent"), entitled "Method and apparatus for providing natural facial animation," recently issued to inventor Masanori Omote.  (Petrsoric Decl., Ex. 5 at 1.)  The patent is presently assigned to Sony Computer Entertainment Inc. ("SCEI"), but was originally assigned to defendant Sony Computer Entertainment America ("SCEA").  (Petrsoric Decl.,

20

Ex. 6.)  SCEI is the parent corporation of defendants SCEA, Sucker Punch and Naughty Dog and Mr. Omote is an employee of SCEA.  (Petrsoric Decl., Ex. 7.)

SCEA's recently issued patent contains claims that are remarkably similar to the claims of the Rosenfeld Patents.  Below is a comparison of claim 4 of SCEA's '125 patent and claim 1 of the '278 patent.  The patents each have identically-directed limitations (color coded for ease of comparison) and are both directed to producing lip-synchronized facial computer animation.  There is one difference, however:  the Rosenfeld '278 patent requires that the "morph weight sets" be applied to produce a tangible animation result, whereas Sony's '125 patent only appears to perform pure data manipulation.

| Claim 1 of the '278 Patent | Claim 4 of the '125 Patent |
|---|---|
| A method for automatically animating lip synchronization and facial expression of three-dimensional characters comprising: | A computer implemented method for facial animation, comprising the computer implemented steps of: |
| obtaining a first set of rules that defines a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence; | receiving phonemes in a sequence of speech from a speech recognition engine; |
| obtaining a plurality of sub-sequences of timed phonemes corresponding to a desired audio sequence for said three-dimensional characters; | associating at least two of said phonemes with corresponding visemes which represent facial expressions; defining a viseme weighting parameter vector in which each element stands for a weight of one viseme; |
| generating an output morph weight set stream by applying said first set of rules to each sub-sequence of said plurality of sub-sequences of timed phonemes; and | applying said viseme weighting parameter vector to each viseme to limit any of a velocity and acceleration component in connection with a transition from a first one of the visemes to a second one of the visemes; and establishing and applying a maximum value to the velocity component or acceleration component to limit the velocity component or acceleration component, wherein as a distance between the first viseme and the second viseme decreases, the velocity component or acceleration component decreases from the maximum value to zero. |
| applying said output morph weight set stream to an input sequence of animated characters to generate an output sequence of animated characters with lip and facial expression synchronized to said audio sequence. | |

For SCEA to obtain a recent patent that is remarkably similar to the Rosenfeld Patents at issue underscores its disingenuousness.  It cannot pursue and

21

obtain a patent that is virtually identical in subject matter to the Rosenfeld Patents, while simultaneously asserting that the Rosenfeld Patents are directed to ineligible subject matter.  SCEI's and SCEA's pursuit of their '125 patent undermines their credibility in challenging the patentability of the Rosenfeld Patents.

Defendants Electronic Arts and Activision Publishing have also filed for and been granted patents claiming methods for producing CGI animation.  (*See* Petrsoric Decl., Ex. 8, U.S. Patent No. 7,610,182 at col. 40, l. 51 – col. 41, l. 27; Ex. 9, U.S. Patent No. 8,713,516 at col. 40, l. 53 – col. 41, l. 9.)  Even a cursory review of these patents reveals that each patent contains method claims where many, if not all, of the steps of the claim could be performed by "pen-and-paper." This further illustrates Defendants' hypocrisy in challenging the Rosenfeld Patents.

### 6.    Defendants' Attacks on Software Patents Should Be Rejected

Although the Supreme Court held in *Alice Corp* that generic computer implementation of an abstract idea is not patent-eligible under § 101, it did not bar process claims implemented in software from patent-eligibility.  *Digitech Image Tech., LLC v. Electronics For Imaging, Inc.*, No. 13-1565, (Fed. Cir. July 11, 2014); *see also* Bilski at 3227 (recognizing that the Supreme Court has determined that innovations such as computer programs are patent-eligible).  Far from abstract, advances in computer technology—both hardware and software—drive innovation in every area of scientific and technical endeavor.  Applying Defendants' approach of broadly labeling the entire multi-step process claimed in the Rosenfeld Patents as abstract would likely invalidate all software patents.  The fact that a patented process is implemented in software does not render a claim to that process unpatentable under § 101.  *Diamond v. Diehr*, 450 U.S. 175, 187 (1981) ("[A] claim drawn to subject matter otherwise statutory does not become nonstatutory simply because it uses a mathematical formula, computer program, or

22

digital computer.").

Also contrary to what Defendants might suggest, the Supreme Court in *Alice* did not deviate from its precedent regarding the patentability of software. As numerous commentators have noted, the Court actually reinforced the basic concepts behind software patents. (*See* http://www.scotusblog.com/2014/06/symposium-supreme-court-leaves-patent-protection-for-software-innovation-intact/ ("the Supreme Court's unanimous ruling subtly conveyed a much more significant judgment: software, as a class, is every bit as worthy of patent protection as any other medium in which innovation can be practiced"), by David Kappos, former director of the U.S. Patent and Trademark Office.)

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion should be denied.

DATED: July 24, 2014                    Respectfully submitted,

                                        MISHCON DE REYA NEW YORK LLP

                                        By: _/s/ Mark S. Raskin_____
                                            Mark S. Raskin
                                            John F. Petrsoric
                                            Eric P. Berger


                                        RUSS AUGUST & KABAT
                                            Marc A. Fenster
                                            Irene Y. Lee

                                        Attorneys for Plaintiff
                                        McRo, Inc., d.b.a. Planet Blue

23

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2014, the foregoing document was filed electronically via the Court's Electronic Case Filing System (ECF).  Notice of the filing is being served upon all counsel of record automatically through Notice of Electronic Filing.

*/s/ Mark S. Raskin*
Mark S. Raskin

PLANET BLUE'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT OF UNPATENTABILITY UNDER 35 U.S.C. §101