DURIE TANGRI LLP
SONAL N. MEHTA (SBN 222086)
smehta@durietangri.com
EUGENE NOVIKOV (SBN 257849)
enovikov@durietangri.com
CATHERINE Y. KIM (SBN 308442)
ckim@durietangri.com
TIMOTHY P. HORGAN-KOBELSKI (SBN 319771)
tkobelski@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  415-362-6666
Facsimile:   415-236-6300

Attorneys for Defendants
Electronic Arts Inc.; Activision Publishing, Inc.;
Blizzard Entertainment, Inc.; and Infinity Ward, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| MCRO, INC., D.B.A. PLANET BLUE,<br><br>Plaintiff,<br><br>v.<br><br>BANDAI NAMCO GAMES AMERICA, INC., et al.,<br><br>Defendants. | Lead Case No. 12-cv-10322-GW (FFMx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LIMITED REOPENING OF DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  July 23, 2018<br>Time:  8:30 a.m.<br>Ctrm:  9D<br>Judge: Honorable George H. Wu<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>CONSOLIDATED WITH: |
| MCRO, INC., D.B.A. PLANET BLUE,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Case No. 2:12-cv-10329-GW (FFMx) |

| | |
|---|---|
| MCRO, INC., D.B.A. PLANET BLUE, | Case No. 2:14-cv-00336-GW (FFMx) |
| Plaintiff, | |
| v. | |
| ACTIVISION PUBLISHING, INC. and BLIZZARD, ENTERTAINMENT, INC., | |
| Defendants. | |
| MCRO, INC., D.B.A. PLANET BLUE, | Case No. 2:14-cv-00352-GW (FFMx) |
| Plaintiff, | |
| v. | |
| INFINITY WARD, INC., | |
| Defendant. | |
| MCRO, INC., D.B.A. PLANET BLUE, | Case No. 12-cv-10335 GW (FFMx) |
| Plaintiff, | |
| v. | |
| NAUGHTY DOG, INC. | |
| Defendant. | |
| MCRO, INC., D.B.A. PLANET BLUE, | Case No. 14-cv-00332 GW (FFMx) |
| Plaintiff, | |
| v. | |
| SUCKER PUNCH PRODUCTIONS LLC | |
| Defendant. | |
| MCRO, INC., D.B.A. PLANET BLUE, | Case No. 14-cv-00383 GW (FFMx) |
| Plaintiff, | |
| v. | |
| SONY COMPUTER ENTERTAINMENT AMERICA LLC | |
| Defendant. | |

### NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 23, 2018, at 8:30 a.m., or as soon thereafter as this matter can be heard before the Honorable George H. Wu of the United States District Court for the Central District of California, at 350 West 1st Street, Courtroom 9D, 9th Floor, Los Angeles, CA, 90012, Defendants Electronic Arts Inc.; Activision Publishing, Inc.; Blizzard Entertainment, Inc.; Infinity Ward, Inc.; Naughty Dog, Inc.; Sony Computer Entertainment America LLC[1]; and Sucker Punch Productions LLC (collectively, "Defendants"), through their counsel hereby move for an Order for limited reopening of discovery based on the disclosures in the expert report of Plaintiff's damages expert.  Defendants seek:  (1) Rule 30(b)(6) testimony from McRo regarding the content and circumstances of McRo's litigation settlements and negotiations for U.S. Patent. No. 6,307,576 ("'576 patent") and U.S. Patent. No. 6,611,278 ("'278 patent"); and (2) production of documents and communications related to the content and circumstances of McRo's litigation settlements for the '278 and '576 patents, including specifically all negotiation communications with the relevant counterparties and any non-privileged internal communications and documents related to the settlement negotiations.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the supporting declaration in support thereof, served and filed herewith, the other documents on file in this matter, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 25, 2018.

---

[1] Sony Interactive Entertainment LLC is the successor-in-interest to Sony Interactive Entertainment America LLC, which was formerly known as Sony Computer Entertainment America LLC.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................... 1

II.  FACTUAL BACKGROUND .................................................................. 2

III. LEGAL STANDARD ............................................................................. 6

IV.  ARGUMENT ........................................................................................... 7

    A.   Trial is Not Imminent. .................................................................. 7

    B.   McRo Would Not Be Prejudiced by Limited Supplemental Discovery because McRo Possesses the Information and the Case Schedule Would Not Change. ........................................................ 7

    C.   Defendants Diligently Sought the Information During Fact Discovery, while McRo Took the Position that the Information Was Irrelevant............. 8

    D.   The Need for Additional Discovery Was Unforeseeable in Light of McRo's Discovery Conduct. ...................................................... 11

    E.   Supplemental Discovery Will Lead to Relevant Evidence Concerning McRo's Damages Theory. ......................................... 11

V.   CONCLUSION...................................................................................... 14

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LIMITED REOPENING OF
DISCOVERY / CASE NO. 12-CV-10322-GW (FFMX)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adv. Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
  265 F.3d 1294 (Fed. Cir. 2001) ..........................................................................3

*City of Pomona v. SQM N. Am. Corp.*,
  866 F.3d 1060 (9th Cir. 2017) ...........................................................................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) .............................................................................3

*Morning Star Packing Co. v. SK Foods, L.P*,
  No. 2:09-CV-00208-KJM-EFB, 2017 WL 117891 (E.D. Cal. Jan. 11,
  2017) ..................................................................................................................8

*United States ex rel. Schumer v. Hughes Aircraft Co.*,
  63 F.3d 1512 (9th Cir. 1995) .............................................................................6

*Wake Forest Acquisitions, L.P. v. Vanderbilt Commercial Lending, Inc.*,
  No. 2:15-CV-02167 KJM DB, 2018 WL 1586362 (E.D. Cal. Apr. 2,
  2018) ..................................................................................................................7

*Zest IP Holdings, LLC v. Implant Direct Mfg.*,
  No. 10-0541-GPC WVG, 2013 WL 5211940 (S.D. Cal. Sept. 13, 2013) ..............6, 7

**Rules**

Fed. R. Civ. Proc. 16(b) ............................................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

McRo's damages expert (David Kennedy) made a central decision in his analysis based on information that McRo failed to disclose (and argued was irrelevant) during fact discovery—despite the fact that Defendants have sought the information since early 2017.

████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████████████.

Prior to serving Mr. Kennedy's damages report, McRo had never disclosed this damages theory in response to Defendants' requests.  To the contrary, McRo resisted Defendants' discovery into McRo's settlement agreements, at times taking the position that Defendants had no need for such discovery because the settlement agreements were not relevant to establishing a reasonable royalty rate.  ECF No. 596-01 at 7–9.  However, following the close of fact discovery, Mr. Kennedy formed his damages opinion ████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████. During discovery, Defendants sought documents concerning the settlement negotiations—including communications with counterparties and any non-privileged internal communications—

but McRo refused to produce them.  And McRo's Rule 30(b)(6) designee on the relevant topics was not able to answer any questions about the content and circumstances of the settlement negotiations at his deposition.  Defendants therefore have had no opportunity to test Mr. Raskin's one-sided account of the facts, let alone develop a full and fair record on which the Court can assess Mr. Kennedy's opinion under *Daubert*, or, if the opinion makes it to trial, on which the jury can rely.

Accordingly, Defendants request that the Court reopen discovery to allow the following two items of supplemental discovery to complete the record and thereby allow the Court and jury to assess Mr. Kennedy's methodology and his opinion at the *Daubert* stage and at trial: (1) Rule 30(b)(6) testimony from McRo regarding the content and circumstances of McRo's litigation settlements and negotiations for the '278 and '576 patents; and (2) production of documents and communications related to the content and circumstances of McRo's litigation settlements for the '278 and '576 patents, including specifically all negotiation communications with the relevant counterparties and any non-privileged internal communications and documents related to the settlement negotiations.

## II.   FACTUAL BACKGROUND

To date, McRo has resolved its disputes with fifteen defendants by entering into settlement agreements ("Settlements").  Since early 2017, Defendants have sought production of documents and other information related to these Settlements and the circumstances under which they were negotiated.  Declaration of Eugene Novikov ("Novikov Decl.") Ex. 1 at 2–3 (Defs.' Feb. 1, 2017 RFPs Nos. 50, 51); *id.*, Ex. 2 at 5 (Defs.' May 11, 2017 Rog Nos. 5-6).  Although McRo produced certain Settlements in response to Defendants' Requests for Production, McRo did not produce any documents, communications, or other information related to the negotiations, which would have fallen within the scope of Defendants' requests.  *Id.*, Ex. 3 at 7–8 (McRo's Mar. 3, 2017 RFP Responses Nos. 50, 51).  Similarly, although Defendants' 30(b)(6) topics for McRo's deposition covered this material, McRo's 30(b)(6) designee was unable to answer questions about the context or content of McRo's Settlement negotiations.  Novikov Decl.

Ex. 4 at 579:18–581:7 (Rosenfeld Tr.); *id.*, Ex. 5 at 5 (Defs.' 30(b)(6) Notice Nos. 20-21).

McRo never indicated during fact discovery that it intended to rely on the Settlements in its damages analysis, even when McRo served a supplementary response to Defendants' damages-contentions interrogatory in the final months of fact discovery. *Id.*, Ex. 6 at 5–8 (McRo's June 12, 2017 Rog Response No. 5); *id.*, Ex. 7 at 5–14 (McRo's Sept. 18, 2017 Supp. Rog Response No. 5).  In fact, after the close of fact discovery, McRo took the opposite position: that the Settlements were irrelevant to McRo's damages analysis.  Thus, when Defendants sought production of the Settlements that had been entered into after the close of fact discovery, McRo opposed the motion (unsuccessfully).  ECF No. 596–01.  McRo argued that "defendants have no need for the documents they demand" because "'license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty.'"  *Id.* at 3, 8 ((quoting *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012)); *see also id.* at 9 ("[McRo's] position is consistent with 'the policy in favor of protecting settlement negotiations from being admitted as evidence, thus serving to encourage settlements.'" (quoting *Adv. Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001)).

Yet in Mr. Kennedy's expert report, his calculation of a minimum reasonable royalty relied heavily on ██████████████████████████████████████ ██████████████████ Novikov Decl. Ex. 8 ¶¶ 346-351 (Kennedy Rpt. § 11.C.2); *see also id.* ¶¶ 129–149, 291–293, 334–339, 353–357 (Kennedy Rpt. §§ 7.B.2, 10.A.1, 11.B.5, 11.C.3) (█████████████████████████████████████████████

3

1  ████████████████████████████████████████████████████

2  ██████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  █████████████████████████████████

6         Thus, Mr. Kennedy's damages opinion is remarkable in that—even though McRo

7  had entered into over a dozen Settlements at the time—Mr. Kennedy's calculation

8  included ███████████████████████████████████████

9  Settlements). *Id.* ██████████████████████████████████

10  █████ *E.g.*, Novikov Decl. Ex. 9 at 586:9–14 (Kennedy Tr.).  As a result, the lump-sum

11  amounts of the Settlements that Mr. Kennedy relied on ████████████████

12  ████████████████, whereas the lump-sum amounts of the Settlements he

13  disregarded ██████████████████.  Novikov Decl. Ex. 8 ¶¶ 129–149 & Ex. 2B

14  (Kennedy Rpt. § 7.B.2 & Ex. 2B).

15         In partial justification of his decision to consider only the ████████████

16  █████████ Settlements and to disregard the others, Mr. Kennedy ██████████

17  ████████████████████████████████████████████████

18  ██████████████████████ First, Mr. Kennedy noted that the three

19  Settlements he selected ███████████████████████

20  ████████████████████████████████.  *See Id.*, Ex. 8 ¶¶ 346–351 (Kennedy Rpt. § 11.C.2); *see also id.*, Ex. 9 at

21  ██████.  *See Id.*, Ex. 8 ¶¶ 346–351 (Kennedy Rpt. § 11.C.2); *see also id.*, Ex. 9 at

22  231:22–232:1 (Kennedy Tr.) (discussing "the ██████████████████████

23  ████████████████████████████████████████████

24  ██████").  Second, Mr. Kennedy considered the ███████████ licenses to be

25  noteworthy because they █████████████████████████████████████

26  █████.  *Id.*, Ex. 8 ¶¶ 141, 143, 348 (Kennedy Rpt. §§ 7.B.2, 11.B.5); *see, e.g.*, *id.*, Ex. 9 at

27  246:22–247:15 (Kennedy Tr.).

28         Mr. Kennedy's report does not explain ***why*** these characteristics purportedly render

the ████████████████ licenses to be the best indicators of a minimum reasonable royalty.[2]  However, Mr. Kennedy's deposition testimony revealed that █



Novikov Decl. Ex. 9 at 249:13–250:15 (Kennedy Tr.); *see also id*. at 235:7–236:25, 265:20–269:10 (similar exchanges regarding the ████████████████ Settlements).

---

[2] This is just one of several defects in Mr. Kennedy's analysis that will be the subject of an upcoming *Daubert* motion.

And although McRo served certain Defendants with supplemental damages reports earlier this month ███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████.  Novikov Decl. Ex. 10 at 2 (Kennedy Supp. Rpt.).  Thus, it is evident that McRo intends to proceed to trial on a damages theory that is based on unverified, self-serving information that was selectively provided to McRo's expert by counsel and that was not disclosed in response to Defendants' inquiries during fact discovery.  Limited supplemental discovery is therefore warranted to complete the record regarding McRo's damages theory.

## III.   LEGAL STANDARD

Upon a showing of good cause, the Court may modify a case schedule to reopen discovery.  Fed. R. Civ. Proc. 16(b)(4).  In determining whether good cause exists, the Ninth Circuit has directed trial courts to consider the following factors:

> 1) whether trial is imminent,
>
> 2) whether the request is opposed,
>
> 3) whether the non-moving party would be prejudiced,
>
> 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court,
>
> 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and
>
> 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)).  The decision whether to reopen discovery is committed to the sound discretion of the trial court.  *Zest IP Holdings, LLC v. Implant Direct Mfg.*, No. 10-0541-GPC WVG, 2013 WL 5211940, at *2 (S.D. Cal. Sept. 13, 2013).  Motions to reopen "are more often granted when the opposing party's actions caused delay or when the need to amend arises

from some unexpected or outside source." *Wake Forest Acquisitions, L.P. v. Vanderbilt Commercial Lending, Inc.*, No. 2:15-CV-02167 KJM DB, 2018 WL 1586362, at *3 (E.D. Cal. Apr. 2, 2018).

## IV. ARGUMENT

Although McRo opposes Defendants' request for supplemental discovery, the remaining five factors weigh in favor of Defendants' limited request.  In circumstances such as these, courts have recognized that there exists "good cause" to reopen discovery, and the Court should therefore grant Defendants' request.  *E.g.*, *Zest IP Holdings, LLC*, 2013 WL 5211940, at *2 (finding good cause to reopen discovery where "[s]ome of the information sought by Defendants is relevant to the issues of damages in this action and may affect the opinions of Plaintiffs' and Defendants' expert witnesses on damages").

### A. Trial is Not Imminent.

Trial is presently set for October 2, 2018.  ECF No. 581 at 2.  Given the limited scope of Defendants' present request (a single deposition and a single request for documents that are expected to be within McRo's control), reopening discovery should not affect the dates that have already been set by the Court, including the October trial date.  Indeed, there is sufficient time for this discovery to take place, as it should, before the *Daubert* motions and motions in limine are to be filed.

### B. McRo Would Not Be Prejudiced by Limited Supplemental Discovery because McRo Possesses the Information and the Case Schedule Would Not Change.

McRo would not be prejudiced by limited supplemental discovery, as McRo already possesses the information that Defendants seek; indeed, Mr. Kennedy **relied** on a subset of the information about McRo's settlement negotiations (i.e., the alleged facts about the ███████████████████ licenses that Mr. Raskin chose to convey) in forming his damages opinion.  Thus McRo **could have** provided this information during the normal course of fact discovery—McRo simply chose not to, even though Defendants requested information about McRo's Settlement negotiations and damages theories through Requests for Production, Novikov Decl. Ex. 1 at 2-3 (Defs.' Feb. 1, 2017

7

RFPs Nos. 50, 51), interrogatories, *id.*, Ex. 2 at 5 (Defs.' May 11, 2017 Rogs Nos. 5, 6), and 30(b)(6) deposition, *id.*, Ex. 4 at 579:18–581:7 (Rosenfeld Tr.).

In circumstances such as these, reopening discovery for the development of evidence that could have been produced during the normal course of discovery is not prejudicial for the party opposing discovery. *E.g.*, *Morning Star Packing Co. v. SK Foods, L.P*, No. 2:09-CV-00208-KJM-EFB, 2017 WL 117891, at *7 (E.D. Cal. Jan. 11, 2017) (concluding that the party opposing reopened discovery would not be prejudiced where the party "simply will have to engage in the normal discovery process that would have taken place," and ultimately finding good cause to reopen discovery (internal quotation omitted)). This is particularly true here, where McRo has made the information regarding settlement negotiations a central issue by offering an expert opinion that relies on a selective and self-serving subset of the information.

Nor would McRo be prejudiced by a change in case schedule; as set forth above, the limited scope of this request would not require a change to the case schedule. As a result, this factor weighs in favor of reopening discovery.

### C. Defendants Diligently Sought the Information During Fact Discovery, while McRo Took the Position that the Information Was Irrelevant.

Defendants' request for supplemental discovery is based on McRo's failure to disclose this damages theory or to produce documents and information about the settlements and negotiations during fact discovery, not any lack of diligence on the part of the Defendants. In fact, as described below, Defendants have consistently sought information about McRo's settlement agreements since early 2017.

*First*, in February 2017, Defendants served Requests for Production numbers 50 and 51, which sought production of documents and things concerning licenses, settlements, and negotiations for the license or transfer of rights for the patents-in-suit. Novikov Decl. Ex. 1 at 2–3 (Defs.' Feb. 1, 2017 RFPs Nos. 50, 51). McRo responded that it had produced responsive Settlements, but McRo did not agree to produce other documents about the Settlements or the negotiations leading thereto. *Id.*, Ex. 3 at 7–8

(McRo's Mar. 3, 2017 RFP Responses Nos. 50, 51).

***Second***, in May 2017, Defendants served a damages-contention interrogatory, seeking McRo's method of computing damages and the underlying facts.  Novikov Decl., Ex. 2 at 5 (Defs.' May 11, 2017 Rog No. 5).  In its initial and supplementary responses in June 2017 and September 2017, McRo did not contend that it would rely on Settlements as a basis for computing a reasonable royalty rate.  *Id.*, Ex. 6 at 5–8 (McRo's June 12, 2017 Rog Response No. 5); *id.*, Ex. 7 at 5–14 (McRo's Sept. 18, 2017 Supp. Rog Response No. 5).  In fact, the Settlements are not mentioned at all.  Instead, ████████

██████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████   *Id.*

Defendants also served an interrogatory asking for a description of "all efforts to license, negotiate a license, enter a settlement agreement, or otherwise negotiate or enter into agreements" related to the patents-in-suit.  *Id.*, Ex. 2 at 5 (Defs.' May 11, 2017 Rog No. 6).  McRo responded by identifying Bates numbers for its pre-suit 2008 notice letters, pre-suit 2008 negotiations with Activision and Disney, and the post-suit Settlements, but McRo provided no information about any Settlement negotiations.  *Id.*, Ex. 6 at 8 (McRo's June 12, 2017 Rog Response No. 6).

***Third***, in October 2017, Defendants sought information about McRo's settlement negotiations through their Rule 30(b)(6) deposition of McRo.  In fact, Defendants asked questions that should have elicited (among other things) the very information that Mr. Raskin later selectively conveyed to Mr. Kennedy and upon which Mr. Kennedy relied.  However, notwithstanding the fact that Defendants had specifically noticed deposition topics concerning McRo's efforts to license and settle, *id.*, Ex. 5 at 5 (Defs.' Aug. 31, 2017 30(b)(6) Notice Nos. 21, 22), McRo's designee was unable to answer questions about McRo's settlement efforts and negotiations:

██   ████████████████████████████████████

9



*Id.*, Ex. 4 at 579:18–581:7 (Rosenfeld Tr.) (objections omitted).

*Fourth*, between January and May of 2018, Defendants engaged in meet-and-confer correspondence and motion practice to obtain Settlements that McRo entered into following the close of fact discovery, and McRo consistently opposed Defendants' efforts to obtain the Settlements in time to use them in expert reports.  *See* ECF Nos. 596, 602, 610, 723 (all summarizing Defendants' efforts to obtain Settlements from McRo). However, despite Defendants' consistent requests for information on McRo's Settlements and their underlying negotiations, McRo did not reveal that it would be relying on the

Settlements and underlying negotiations in support of its damages theory until Mr. Kennedy's expert report (which he subsequently confirmed in his deposition and supplemental report, served earlier this month).  Such a late disclosure in the face of Defendants' repeated requests weighs in favor of supplemental discovery.

And although Defendants did not move to compel production of this information during discovery, that fact does not mean that Defendants failed to show diligence. During fact discovery, Defendants had no reason to press the issue because McRo's position prior to Mr. Kennedy's opinion was that it would calculate a reasonable royalty based on one of three other methods, and McRo provided no notice or disclosure that it would rely on the Settlements in any way.  Novikov Decl. Ex. 7 at 5–14 (McRo's Sept. 18, 2017 Supp. Rog Response No. 5).  Consistent with that disclosure, McRo actually took the position that the Settlements were ***not relevant*** to damages as recently as February 2018.  ECF No. 596-01 at 7–9.  Thus, it is McRo's reversal—rather than any lack of diligence by Defendants—that warrants this supplemental discovery.

### D.   The Need for Additional Discovery Was Unforeseeable in Light of McRo's Discovery Conduct.

As set forth above, the need for additional discovery was unforeseeable prior to the expert discovery period.  McRo had expressed not only that it planned to rely on one of three other damages-computation methodologies to which the Settlements were not disclosed to be an input, Novikov Decl. Ex. 7 at 5–14 (McRo's Sept. 18, 2017 Supp. Rog Response No. 5), but also that it considered the Settlements to be ***not relevant*** to the issue of reasonable royalty.  ECF No. 596-01 at 7–9.  Defendants therefore had no reason to foresee that the Settlements would form the basis for Mr. Kennedy's damages analysis, and this factor weighs in favor of reopening discovery.

### E.   Supplemental Discovery Will Lead to Relevant Evidence Concerning McRo's Damages Theory.

The requested discovery directly relates to a central feature of Mr. Kennedy's damages opinion: his decision to calculate a minimum reasonable royalty rate based on

11

certain Settlements but not others.  Moreover, by opting to have Mr. Kennedy make this decision by relying on self-serving, one-sided information about the negotiations of particular Settlements provided by Mr. Raskin, McRo has put the negotiations underlying *all* of its Settlements directly at issue.  This limited supplemental discovery— communications and other documents constituting or relating to McRo's settlement negotiations, and a 30(b)(6) deposition to provide the testimony about the circumstances of the Settlement agreements and the underlying negotiations that Mr. Rosenfeld was previously unprepared to give—will therefore lead to relevant evidence concerning Mr. Kennedy's opinions, his underlying bases and methodologies, and the underlying facts as told to Mr. Kennedy by Mr. Raskin.

The relevance of—and need for—this discovery is highlighted by Mr. Kennedy's blind reliance on the statements from Mr. Raskin as to the context and content of certain Settlement negotiations.  Indeed, Mr. Kennedy confirmed at his deposition that

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LIMITED REOPENING OF
DISCOVERY / CASE NO. 12-CV-10322-GW (FFMX)



Novikov Decl. Ex. 9 at 233:10–236:19 (Kennedy Tr.); *accord id.* at 249:13–25, 250:9–15, 260:13–19, 268:19–269:10; *see also supra* at 5 (████████████████████ ████████████████).  Nor did Mr. Kennedy investigate whether the other Settlements (those he excluded from his analysis) had the same characteristics as the Settlements he chose to include (namely, that the ████████████████████████████ ████████████████████.  *E.g.*, Novikov Decl. Ex. 9 at 194:10–195:9, 200:5–9, 203:10–19, 216:4–22, 220:12–18, 224:16–226:16, 277:22–25, 282:8–11 (Kennedy Tr.).  Thus, the supplemental discovery will produce relevant evidence to allow the factfinder to test each of these steps of Mr. Kennedy's analysis and thereby judge the admissibility of Mr. Kennedy's opinion and weigh the damages evidence based on a complete record.

# V. CONCLUSION

It is clear from Mr. Kennedy's report and deposition that Mr. Raskin simply fed Mr. Kennedy a selective set of one-sided assertions to support the novel damages position McRo wanted to take.  But while Mr. Kennedy apparently saw fit to develop a damages opinion based on selective information from Mr. Raskin, Defendants, and importantly, the Court and jury, should not be asked to do the same.  To the extent that McRo intends to rely on this new damages theory—which, again, it did not disclose during fact discovery—Defendants are entitled to complete the record so that the Court and jury may fairly weigh the evidence and evaluate Mr. Kennedy's opinion.

Dated:  June 22, 2018                          DURIE TANGRI LLP


                                                         By: _____/s/ Eugene Novikov_____
                                                                            EUGENE NOVIKOV

                                                         Attorney for Defendants
                                                         Electronic Arts Inc.; Activision Publishing,
                                                         Inc.; Blizzard Entertainment, Inc.; and
                                                         Infinity Ward, Inc.

Dated:  June 22, 2018                          SHOOK HARDY AND BACON LLP


                                                         By: _____/s/ Beth A. Larigan_____
                                                                            BETH A. LARIGAN

                                                         Attorney for Defendants
                                                         Naughty Dog Inc.; Sony Computer
                                                         Entertainment America LLC; Sucker Punch
                                                         Productions LLC

## **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-4.3.4, regarding signatures, I, Eugene Novikov, attest that concurrence in the filing of this document has been obtained.

*/s/ Eugene Novikov*
EUGENE NOVIKOV

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LIMITED REOPENING OF DISCOVERY / CASE NO. 12-CV-10322-GW (FFMX)

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2018 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Eugene Novikov*
EUGENE NOVIKOV

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR LIMITED REOPENING OF DISCOVERY / CASE NO. 12-CV-10322-GW (FFMX)