UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE GEORGE WU

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

MCRO, INC.,
PLAINTIFF,

VS.

NAMCO BANDAI GAMES AMERICA, INC., ET AL.,
DEFENDANT,

NO. CV 12-10322 GW

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

THURSDAY, JUNE 28, 2018

KATIE E. THIBODEAUX, CSR 9858
U.S. Official Court Reporter
312 North Spring Street, #436
Los Angeles, California 90012

APPEARANCES OF COUNSEL:

FOR PLAINTIFF:

MISHCON DE REYA LLP
BY: MARK RASKIN
-and- MICHAEL DEVICENZO
-and- JOHN PETRSORIC
-and- ERIC BERGER
750 Seventh Avenue 26th Floor
New York, NY 10019

FOR DEFENDANTS:

DURIE TANGRI LLP
BY: SONAL NARESH MEHTA
217 Leidesdorff Street
San Francisco, CA 94111

MORRISON AND FOERSTER LLP
BY: RYAN MALLOY
-and- WENDY RAY
707 Wilshire Boulevard
Suite 6000
Los Angeles, CA 90017

SHOOK HARDY AND BACON LLP
BY: JOHN GARRETSON
-and- BETH A. LARIGAN
2555 Grand Boulevard
Kansas City, MD 64108

PILLSBURY WINTHROP SHAW PITTMAN LLP
BY: EVAN FINKEL
725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017

LOS ANGELES, CALIFORNIA; THURSDAY, JUNE 28, 2018

10:31 A.M.

- - - -

THE COURT: All right. Let me call the matter of McRo versus Namco, et al.

Let me have appearances starting with the plaintiff's counsel first.

MR. DEVINCENZO: Good afternoon, Mike DeVincenzo on behalf of McRo. With me is Mark Raskin, John Petrsoric and Eric Berger.

THE COURT: For the defense?

MS. MEHTA: Good morning, your Honor. Sonal Mehta and Eugene Novikov from Durie Tangri on behalf of the defendants, Electronic Arts, Activision Publishing, Blizzard Entertainment and Infinity Ward, Inc.

MS. RAY: Good morning, your Honor. Wendy Ray from Morrison and Foerster on behalf of defendant Square Enix.

MR. MALLOY: Good morning, your Honor. Ryan Malloy on behalf of the defendant Square Enix.

MR. GARRETSON: Good morning, your Honor. John Garretson on behalf of defendant Sony Interactive

Entertainment America, Sucker Punch and Naughty Dog, and, also, with me, my colleague Beth Larigan.

MR. FINKEL: Good morning, your Honor. Evan Finkel of Pillsbury Winthrop appearing on behalf of Disney Interactive and Lucas Arts.

THE COURT: All right. We are here on various motions for summary judgment, summary adjudication, et cetera.

I have issued a tentative that addresses only some of the motions because I think the way I have ruled will be more or less dispositive, but I have indicated that this is a tentative ruling because there is a question that I have always had that nobody ever addresses even though I keep on hinting. So, now, I am no longer hinting. I want it to be addressed, and that is this issue of enablement. So my tentative is subject to that.

I presume somebody is going to want to argue something because there are so many of you that I presume that my chances of getting out of here without hearing from one side or the other is nil.

MR. DEVINCENZO: You are correct, your Honor. We will go forward, I guess.

THE COURT: All right.

MR. DEVINCENZO: We have been litigating under the

operative construction for five years. Or four years.

With respect to delta sets, there has been no dispute, and both parties agreed during the claim construction process that it is the set of vectors from each vertex on the neutral reference model to each vertex on the model of another map position.

Plaintiff's expert addressed that construction, and he applied it to the accused games and expressed opinions on why the accused games meet that construction.

Now, on summary judgment, it appears that -- well, the court has changed the construction, and --

THE COURT: I don't think I have changed my construction. I -- the construction I have is the construction that I have, and, at one point in time, there was, during the time of the Markman hearing, there was an attempt by the plaintiff to attempt to sway me as to another approach which it was referred to as some sort of mathematical representation, and I had said no as to that.

MR. DEVINCENZO: Okay. Then let me -- the court's tentative said vectors are limited to magnitude and direction in three space. That doesn't appear in the original construction, and that is inconsistent with how the experts from both parties as well as the technical

treatises and publications treat the term vector.

So we read that as a narrowing of the construction. It is not an application of the construction which -- am I wrong?

THE COURT: Well, that is the nature of the dispute.

Let me hear from the defense.

MS. MEHTA: Thank you, your Honor. I think Mr. DeVincenzo does have it wrong, and I think your Honor's tentative ruling has it exactly right. He is correct that we have been operating under the court's claim construction for over four years. This case should have ended after that claim construction.

We told your Honor up front at the first CMC, maybe the second CMC in this case, in 2013, that we believed that the claim construction issue on morph weight sets was going to be dispositive. And we said it would be dispositive because it would preclude bone animation from being accused.

We went through the full claim construction proceeding. Your Honor rejected their argument trying to change the definition in the patent specification, adopted our claim construction, and that should have been the end of it.

Instead, we have now been having five years of

flip-flopping or four-and-a-half years of flip-flopping from now on what it is that they are pointing to for the delta set. The core of your Honor's tentative ruling goes through and explains why whether it is the theory that the lawyers are offering or the theory that their expert offered which are two different theories, irrespective of that, the tentative ruling has it exactly right. They can't meet that claim construction ruling.

That is it. That is ere we are. This summary judgment motion should be granted, and, if they want to take it up on appeal, then, fine, they will take it up on appeal.

THE COURT: I expect they will.

MS. MEHTA: They might.

MR. DEVINCENZO: But that is the issue. We can meet the claim construction as it is written. As it is written in the original opinion.

MR. DEVINCENZO: It is the new construction that limits vectors to magnitude and directions.

THE COURT: Let me put it this way, I don't think I came up with a new construction. And, again, so, again, you are saying, well, you have come up with a new construction. No, I didn't come up with a new construction. This is consistent with my original construction. It is consistent with, again, what I said

in terms of the Markman. I had my Markman ruling in front of me.

And so, again, and it is even partially consistent with what even your position was at the time of the Markman hearing because prior, on page 9, prior to the discussion of the mathematical representation contention, your side already made a statement in regards to, as to what the morph weight set should become in that regard. So, again, I don't see this as an about face for the court. I think it is entirely consistent with what I said originally.

MR. DEVINCENZO: Okay. Instead of about face, it is a further refinement at least.

MR. DEVINCENZO: The ordinary meaning of vectors, both parties' experts agree is not limited to magnitude and direction in three space. The one example and the definitional example doesn't mention magnitude, doesn't mention direction, and doesn't mention three space. I am looking at page 10 of your decision.

They are just not mentioned. The court seems to believe that since it says a vector, that means one. However, the very next sentence in the stack, or two sentences later, it says, there was one delta set for each morph target. It never says there is one vector for each difference. "A," in patent parlance, as we all know

means one or more.

So the definition provided in the spec, we would be happy with that definition, and there is a question of fact under that definition. It is just when we add the additional requirement which we believe is an additional requirement, and I understand this court doesn't, and I am not going to -- that it has to be each individually have to be vectors with magnitude and direction in three space, that is where we have a problem. Also, we require one to one. The very sentence above the definitional language says bridging correspondence one to one is not necessary.

MR. DEVINCENZO: May not be necessary.

THE COURT: Well, I cited that. So let me hear from the defense.

MS. MEHTA: Yes, your Honor. So what we have here is an attempt to reargue the claim construction that was resolved years ago. This is a quintessential case of deciding what the scope of the claims is. There is no factual dispute as to how the products work. The source code and the game assets have been available to them, not for all of the games, but, for some of them, they have looked at it.

The experts have offered their opinions. We have been all the way through fact discovery, all the way

through expert discovery. The question is after having had every opportunity for five years to come up with a viable infringement theory, have they come up with one that would actually put the products within the scope of the claims. The claim scope question is a question of claim construction that is a question of law. Your Honor resolved that in the claim construction ruling.

Whether or not they are going to be able to go back on appeal and challenge that will be I think a question of waiver which we will let the federal circuit deal with, but, for purposes of this court's analysis, the question is, is the theory that they have put forth after having had every opportunity to prove their case, does it allow for those products to be read within the scope of the claims as properly construed. And the answer is no.

All that you have herd from Mr. DeVincenzo is, well, the way your Honor is interpreting vector is different than the way that vector could be interpreted out there in the world. I agree that, in some other circumstance, a vector might be interpreted differently. That is not the question.

The question is what are the vectors that are described and claimed in the patent and in the asserted claims, and that is the question that we have been

working with your Honor to resolve four years, and your Honor has it exactly right. And their reading now that it could be any ordered set of numbers is inconsistent with the specification, with the claimed method and all of the evidence that has been cited by your Honor in the tentative ruling.

MR. DEVINCENZO: Your Honor, this is -- the question is and counsel dutifully avoided it, does the sentence relied on in the specification limit the word vector to a vector with, vectors with magnitude and direction in three space where there is one to one. That is the question that was not resolved in the prior construction. It is not in the prior construction, and you haven't heard an argument on why it would be so limited.

THE COURT: I think she has been passed something. She is going to come up with something right now.

MS. MEHTA: Yes, your Honor. I have been passed something from their own expert in his infringement expert report at Paragraph 6.10 where he said, under the court's construction, a delta set also requires that each of the models has a corresponding set of vertices. Otherwise, there cannot be a vector between each vertex on the neutral and the delta models. That is their own expert's interpretation and application of the claim

construction.

What Mr. DeVincenzo is trying to do now is to create some smoke around one sentence out of the specification. Your Honor has analyzed not only that one sentence out of context as Mr. DeVincenzo would have you do it but in the context of the remainder of the specification which makes very clear exactly what the method is that is being claimed and very clear in, as you found, lexicographic language what it is that the claimed morph weight set requires and therein what the claimed delta set requires.

And they haven't pointed to anything differently. He can keep plucking sentences out of the specification all he wants, that is not going to change the meaning of the claims and the patent as your Honor has been consistently reading them since the beginning of this case and as the federal circuit has read them as you pointed out in your tentative order.

MR. DEVINCENZO: Your Honor, a vector, when used in the lexicographical definition, is not limited to one. It is one or more. And that is really one or more. That is what it means in the context of patent law. And they say plucking sentences, there is only two sentences that mention vectors -- the one right here where there is no evidence that one of skill in the art could understand it

the way defendants propose for purposes of their summary judgment.

In fact, defendant's own expert was pointed to this very sentence, was asked -- and this is Dobkin, Exhibit 21 to the Raskin dec, 108, 15. He was pointed to the sentence, the one definitional lexicographical sentence and asked: It only says the vectors must be computed; correct? And he says, it says the vectors are computed, it doesn't, you know, say more than that. But the next question, does it say how the vectors must be stored? Their own expert says it doesn't specifically say how they have to be stored.

Just let me finish.

This court's tentative says that one skilled in the art would understand that sentence to specifically say how the vector is stored, and specifications are interpreted from the viewpoint of one of skill in the art. Their own expert's testimony is consistent with the declaration of Dr. Gleicher who said the term vertex animation does not appear in the patents nor does the concept even arise. The patent do not require a per vertex animation, DI 440-7, Paragraph 44.

And us attorneys could argue all we want on what this sentence means, but how it is understood by one of skill in the art is what controls. And there is no

dispute on that.

MS. MEHTA: No, your Honor, that is not correct.

So, first of all, what Mr. DeVincenzo is doing is focusing on the description of vector. The claim language that we are talking -- a vector doesn't appear in the claim directly. The claim language that we are talking about is morph weight set. There is a lexicographic definition of morph weight set -- that is the definition I was referring to which your Honor found in the original claim construction ruling -- that requires a delta set.

Then, your Honor did exactly what is required under Phillips which is that you went through the intrinsic record and even analyzed the extrinsic record which is the dictionary definitions to decide what it is that that delta set meaning would include, what is within the scope of the claim properly as a matter of law. That is a legal question.

Even if they were right that this was a question of claim construction and you were changing your claim construction, they would not be able to rely on the testimony of their expert or any of this that is happening now because claim construction is closed and nobody was opining on claim construction.

These are all background statements made in

the context of the infringement question. The claim construction record that you have before you and that you have had before you since 2013 or whenever it was that we had the claim construction hearing --

THE COURT: 2014.

MS. MEHTA: -- is very clear. 2014. And you have analyzed it consistently, and what they are now trying to do is say, well, we are not happy with the outcome of that ruling and because it clearly establishes non-infringement. So we want you to go back and revisit it, and we are going to pluck the word vector out of the specification and a sentence from the defendant's experts that is not talking about the delta set requirement. It is talking about what that sentence requires in terms of storage which is not the question at issue.

These are all distractions from the fundamental ruling that your Honor has issued in the tentative and is well supported, and, if they disagree with it, ready to go up on appeal subject to the enablement motion.

MR. DEVINCENZO: Your Honor, the -- coming up in the context of the claim construction as this court has further defined what vector means in the context of the specification. Has further defined it. The court's opinion states the court clarifies the term vector in the

context of the claim term morph weight sets refers to a vector with direction and magnitude in three dimensional space. Page 14. I -- or at least the tentative purports to clarify your own construction.

Under the construction as it exists, without such clarification, there is a question of fact regarding infringement. So the reason this is coming up now is not because we are trying to change the construction. Defendants are happy with the construction. I mean, plaintiffs are happy with the construction.

Defendants infringe under that construction. It is when you add a clarification that narrows it in a manner that is inconsistent with how the experts from both parties would interpret the specification. That is what plaintiff is concerned about.

MS. MEHTA: And, your Honor, may I just briefly address from the procedural perspective, I am not going to get back into the fighting about the specification. I think your Honor has a great handle on that. From a procedural perspective, the question is, is this a change in the claim construction. That is the argument they are making. It is not a change in the claim construction.

What has happened is your Honor ruled on what the claim construction is, and they have ginned up a theory, they, slash, their expert whose theories aren't

completely consistent, have ginned up a set of theories to try to argue out from under the claim construction that they lost.

And your Honor is correctly saying that is an inappropriate reading of the court's claim construction. That is a quintessential summary judgment question. It is not a question of fact. The jury is in no position to decide what your Honor meant by the claim construction. That is a question of law that is in the sole discretion of the court and is within the court's purview.

That is the EMC case from the federal circuit. It is 02Micro. That is your Honor's job to decide claim scope. They might try to get out from under the claim scope through all of these assertions that they are making now, but you have resolved the claim scope. And you have found that because there is no factual dispute as to how the products operate, non infringement as a matter of law is appropriate.

This is a quintessential case for the dividing line between the court's job deciding the scope of the claims and then the jury's job to decide if there is a factual dispute whether or not something actually falls within that set scope.

THE COURT: Let me just indicate that when I use the term, when I used the word clarifies on Page 14, it

was in response to the arguments that were raised by the plaintiff. I do not feel that I have come across a change of my Markman position or something new. I clarified because of the arguments that were raised, and I was, in the course of that, rejecting the arguments that were raised by the plaintiff.

So it is not a, you know, a clarification in the sense that it is something new. I am just simply responding in case it was unclear, maybe, to the plaintiff as to what I said, I am telling you what I am saying. But for the reasons that I have stated on pages from page 10, 11, 12 and 13, that is the reason why on page 14 I am saying for the reasons stated the court clarifies that the term in the context of the claim term morph weight sets refers to, et cetera, et cetera.

So it is for those reasons that I am making that statement, but I do not feel that I have changed my Markman ruling in any way, shape or form in this process.

What other arguments do you want to make?

MR. DEVINCENZO: If Dr. Gleicher got up and testified that the construction -- can he testify? He has to testify that a vector means --

THE COURT: Let me stop you.

MR. DEVINCENZO: That is --

THE COURT: Let me stop you. At the time, if this

was a Markman hearing, then, obviously, at that point in time, I would have, I should have allowed for expert testimony if proffered at that point in time. But that is not the situation as my recollection has it because I did allow for a tutorial, and then we went to the Markman hearing itself.

And so, again, this is not a situation where at this point in time, I would entertain additional evidence in regards from expert testimony as to Markman because, again, the Markman construction was done many years ago at this point.

MR. DEVINCENZO: Okay. Then I would just like to point out two things on page 11.

THE COURT: Okay.

MR. DEVINCENZO: You state in footnote 8, federal circuit, you say, said the difference in the locations of these vertices, and it goes on, form a delta set of vectors. Plaintiff is fine with that construction. The difference at the top, you say, the differences between two corresponding vertices represent the vectors. We are fine with that.

It is the magnitude and direction in threek space was never previously raised by the defendants. The first time that come up with was in the context of summary judgment, the first time, a year ago, when their

own expert said, typically, it would be limiting that way. So it wasn't addressed at the first claim construction hearing.

MS. MEHTA: Your Honor, we are just rehashing the same thing we have been rehashing all day. Your Honor ruled on a claim construction, and they have been trying to get around the claim construction. And your Honor has rejected all of the arguments that they have made as to why that is not the appropriate scope of the claims. The scope of the claims is set. Summary judgment follows, and your Honor has asked us to file our enablement motion, and within seven days we will get you your joint status reports and a proposed briefing schedule on the enablement motion so we can send this up to the federal circuit.

THE COURT: It is nice when I have agreed with your position, isn't it?

MS. MEHTA: Yes, your Honor. It does.

MR. DEVINCENZO: I just want to point one other thing out when you referenced the formula.

THE COURT: Yes.

MR. DEVINCENZO: As support for the magnitude and direction in three space. You state on page 12 the portion of the patent spec makes no reference to the typical case and does not hold itself out to be

exemplary. The very sentence after the formula is introduced, it says, for example. That is the only other time vector is used. It is used twice. It is in this portion of the spec and the other portion of the spec.

There is no evidence that one skilled in the art would believe it was limited to directions in three space requiring magnitudes. Defendants have never argued that. They didn't argue it in claim construction. So the clarifications based on those two points in the spec, and we respectfully ask the court to look at it and ask the court to look at it in the context of the understanding of one skilled in the art and look at it in the context of with the understanding as defendants have admitted that the normal meaning of vector is broader.

So is there something here that would narrow it that is clear and unambiguous such that one of skill in the art could not find the ordinary meaning applies. And if you look at these two sentences or these two portions with the typical understanding of claim construction which is we are not going to narrow things beyond what they mean to one of skill in the art.

If we look at it in that context, we respectfully ask the court to reconsider the tentative to the extent of the clarification. We are obviously fine with the words of the construction as they presently

exist.

MS. MEHTA: And, your Honor, so let me respond to that in a couple of ways. First of all, we don't agree that that is the ordinary meaning of vector in the context of the specification. What Phillips says, and this is binding precedent as you know, is you look at the terms in the context of the patent claims in the specification. That is what your Honor has done, and, in fact, there is an ordinary meaning which we cited which your Honor cited in footnote 9 which is precisely the meaning that is being offered.

Setting that aside, when you actually look at it in the context of the specification, as your Honor has done, the system that is being described, the method that is being described, the thing that would meet the primary object of the invention, as your Honor pointed out, requires that you calculate the vectors in three space so that you know how to move the vectors from one facial model to the next facial model to get to the delta set. That is the whole point of this.

What Mr. DeVincenzo is suggesting, as your Honor correctly rejected throughout this analysis, is that we are going to start to broaden vector so much based on out of context definitions of the term that it loses the meaning that would actually be consistent with

the claimed invention in the specification. That is not what Phillips requires you to do or allows you to do.

MR. DEVINCENZO: Just real quickly on that three space point because we came back in opposition and showed that it is not limited to directions which are X, Y, Z coordinates or Cartesian as this court found in its clarification. In their entire reply, they never argue not once that the specification is limited to directions in three space. Instead, just like counsel just said, it has got to be three space: Rotation, scale and translation.

Our vectors in three space, they are not Cartesian directions which are X, Y, Z, but they are vectors in three space. They describe the difference, the difference which is what is required by the court's construction. What the fed circuit said, they describe the difference. They just don't do it as directions in three space, as directions in three space which isn't mentioned anywhere in the specification.

MS. MEHTA: And my response to that, your Honor, would be what the specification makes clear is that you have to move the vertices from one facial model to another. That is what the delta set is. And he keeps talking about Cartesian coordinates and scale rotation and translation. The scale rotation and translation that

they are pointing to are the bone transforms.

They are not vectors that would give you the direction and magnitude of movement of the vertices between the models which is what is required in the claims and consistently and exclusively described in the specification. And what you haven't seen in any of the briefing, not at the claim construction stage, not at the early summary judgment stage and not now, when we are four months away from trial, is any evidence from them that there is anything in this patent specification that would support any other reading of what the vectors have to be other than the statement that the word vector can be so broad in any other context.

In this context which is the only context that matters, this is the meaning of vector. And, in fact, if they were going to read vector so broadly as to cover bone transforms which is necessary for their infringement theory, that is the whole point of the written description motion which is it is not in this patent specification. The patent would be invalid if Mr. DeVincenzo was right. Your Honor has correctly construed the scope of the claims.

MR. DEVINCENZO: Your Honor, I understand counsel has repeatedly said in this patent it is limited in the way this court did in its clarification. That is not

what the expert said. That is not what the literature says.

At the time their expert pointed to the sentence this court relies on as definitional and said it does not place a limit on how things are stored. Now, defendants argue, and it is just pure attorney argument, no support that it is limited to directions in three space with magnitude. That is not stated in the spec. It is not stated in the formula.

Other vectors can be used besides vectors in three space, and this court has turned to us in its tentative and said where is your evidence that other vectors can be used but that is not how we do claim construction. You take the meaning to one of skill in the art which everybody agrees is not limited in the manner clarified by this court or all the experts agree. I'm sorry. The attorneys, we always disagree.

And then you look and say they have to show, no, that formula would be limited. One of skill in the art would understand that is limited to directions in X, Y, Z. None of their experts said that. It is just attorney argument.

MS. MEHTA: Again, we are rehashing claim construction. The experts were not opining on claim construction. There were no experts at the claim

construction stage. If they wanted to have Dr. Gleicher come and talk about what vector meant or what delta set meant at claim construction, they had the opportunity to do that. They failed to do that. The best, now, that they have been able to come up with is a statement from our expert saying that that one particular sentence doesn't define how the vectors are stored.

Number one, that is not the question because the question is what are the vectors, and, actually, really, what are the delta sets. So it is orthogonal to the question before the court, number one, and, two, again, it is focused on one sentence as if the court's tentative ruling is all based on that one sentence. It is not.

The court's tentative ruling is based on the entire prior claim construction proceedings and all of the evidence that is collected by the court which is it is a well-supported claim construction.

MR. DEVINCENZO: Vectors is mentioned twice. It is not one sentence, and the formula --

THE COURT: Well, you guys are repeating yourselves at this point in time. Anything else either side wants to argue?

MR. DEVINCENZO: Can we have a -- well, I guess since you say that, no.

THE COURT: No? Okay. All right. In that case, then, let's talk about scheduling.

So I have asked for something, actually two groups of things in a week. Is that going to be possible?

MS. MEHTA: Yes, your Honor. That should be possible.

THE COURT: Okay. So you guys want to step outside for a brief moment and talk about the scheduling of those items through past one week, and whatever you guys will agree to, I will probably agree to. And then just come back to me in a couple of minutes, and we will put it on the record.

MS. MEHTA: Certainly, your Honor. Thank you.

THE COURT: Thank you.

(Recess from 11:01 to 11:07 a.m.)

THE COURT: All right. Let me ask counsel, did you come up with a schedule?

MS. MEHTA: Yes, your Honor. We did. Subject to your availability. With respect to the enablement motion, defendants would propose to file that on July 19th. The opposition would be due three weeks later which should be August 9th. Then, the reply would be two weeks later, August 23rd. And then we would request a hearing dates from your Honor at your convenience after

August 23rd. I will put it on for September the 6th.

MS. MEHTA: Thank you, your Honor.

Your Honor also asked in the tentative that we consider the declaratory judgment counterclaims for invalidity. Given that we will be moving for summary judgment of invalidity under enablement, that issue I think will have to be dealt with after that motion is resolved. If your Honor grants the motion, then we prevail on our counter claims for invalidity. If you deny it, then we would dismiss those without prejudice pending the appeal.

THE COURT: All right.

MS. MEHTA: And then with respect to settlement, we have currently scheduled a July 12th post mediation status conference in this case. So the defendants have all scheduled mediations to take place --

THE COURT: Who are you guys using?

MS. MEHTA: It is different for different groups. The Disney group is using Judge Tevrizian. The remainder of us are using Judge Feess. I believe now, in light of your Honor's order, I don't know whether Square Enix is going to be mediating or not.

For Disney, I'm sorry, for Sony, Activision and EA, we all have mediations scheduled and, we are willing to go forward with them. I understand Mr. Raskin

doesn't want to mediate. So the question is we are willing to go forward with the mediation between now and July 12. Do you want to have a July 12th post mediation status conference, or how do you want to do that?

THE COURT: I basically wanted to know what the parties' position is on further mediation settlement talks. I don't expect obviously them to be done by July 19th because, again, there is so much up in the air at this point in time anyway. I just wanted to know the willingness of the parties to do that, and, apparently, it seems to me everybody is with the possible exception of --

MS. MEHTA: The plaintiff.

MR. RASKIN: There are a couple of issues with respect to mediation. The first is that obviously in light of the tentative and assuming that the court is going to adopt it, it doesn't make much sense to the parties to mediate at that point. Obviously, we have no case on infringement.

Additionally, we had asked -- there is an issue of time, the burden of time and the burden of money. With respect to time, we had asked the defendants if they would agree to half day mediation sessions, and, except for Square Enix, all the other defendants had said that they would only attend a full day mediation session.

The second issue is --

THE COURT: Let me just ask, with both mediators, both Feess and Tevrizian at the same time simultaneously?

MS. MEHTA: No. We have different dates for each defendant.

MR. RASKIN: So that kind of, effectively, our client would have to take five day off of work in order to attend all the mediations. With Disney, well, the parties were close enough that we thought that a full-day mediation would be effective. I don't know what is going to happen now. With respect to all the other defendants, the parties were very far apart, and it did not make sense.

THE COURT: Well, again, all I want to know is the willingness. I am not insisting at this point in time because, again, you can lead a horse to water, but you can't make it drink. At least, that is how the saying goes.

But sometimes with a good mediator -- but, again, I just wanted to know what the parties' positions were. That is all I am asking for at this point.

MR. RASKIN: I think at this point our client would be disinclined to engage in mediation.

MS. MEHTA: So, your Honor, then, would we vacate the July 12 post mediation status conference, or would

you like to see us, then, to talk about status generally?

THE COURT: If you guys do not go actually into some kind of mediation or something like that, then the answer would be why I have a post mediation status conference because the only thing you would tell me is we didn't mediate. And I would say, oh, that is a surprise.

But now that you have told me that you will not, apparently not. Again, but, there might be a lot of -- let's just put it this way, I presume that there were other defendants who had settled so I presume there was some basis that the -- that was being utilized to effectuate those settlements. And, so, again.

MR. RASKIN: Yes, your Honor, but I think that was before the motion for summary judgment was granted.

THE COURT: Maybe you should have had the settlement discussions two months ago.

MS. MEHTA: Your Honor, one other clarifying question with regard to the case schedule. So we are currently set for an October 2nd trial date. Obviously, that won't be going forward. Can we just have a formal order from your Honor vacating all other deadlines except for the briefing and hearing on the enablement motion?

THE COURT: I presume there is no objection to that.

MR. DEVINCENZO: Your Honor, assuming you are

going to enter the tentative.

THE COURT: Well, let me put it this way, judging from my comments during the oral argument, what can I say. The prospect looks high that I will.

MR. RASKIN: If that is the case obviously.

THE COURT: But I will -- I will be amending the tentative slightly, but anything else in that regard?

MS. MEHTA: No. So your Honor, so we will have the briefing schedule on the hearing on the motion for lack of enablement.

THE COURT: I will take the trial date off at this point in time because, frankly, I have another case that is older than this one that is scheduled to go to trial in October that will kick yours out anyway. So I wouldn't go be going to trial on yours, even if it was scheduled for trial in October, I wouldn't be doing it.

MS. MEHTA: Understood. And all the pretrial deadlines, I assume we can vacate?

THE COURT: Obviously, there is no pretrial deadlines at this point in time. The only thing we have are those dates insofar as the enablement is concerned, and at that hearing date which I had set for September the 6th, was it?

MS. MEHTA: Yes, your Honor.

THE COURT: I will also call that a scheduling to

see what else remains in this case. So what I want the parties to do is to give me by noon on the September 4th aside from the enablement motion, what else in this case assuming that I grant the motion for summary judgment on this matter. Although, frankly I don't know if if I would be granting the motion for summary judgment because I want to see the enablement because the enablement aspect of it may have some effect. Although, I don't know what exactly the effect it would have.

MS. MEHTA: I don't see how that would be the case, your Honor. I think what I was envisioning at least and I think the federal circuit might appreciate is having your analysis of those two issues so that there are alternative grounds to affirm the judgment.

THE COURT: What I am saying, though, is that something may be said in the enablement aspect that might affect the way that I look at this issue. That is all I am saying, and that is one of the reasons why I wanted to have that discussion in front of me. So what I would probably wind up doing is indicating that I might be altering the tentative, but as I have indicated, I will probably not rule on the motion for summary judgment until such time as I have already considered the enablement motion as well because, as I have indicated, this was a tentative.

MS. MEHTA: Your Honor, that is certainly fine. I think the only request I would have is that we not, then, have this enablement issue which is on a separate claim requirement, right, which is the first set of rules claim requirement be an opportunity to start reopening and rearguing bones.

THE COURT: No. Let me put it this way, if something that is said, I will open it, but until I say it is reopened, it is not reopened.

MS. MEHTA: Thank you your Honor.

MR. DEVINCENZO: Your Honor, with respect to the court's granting in part of our motion for summary judgment of no anticipation, does the court envision issuing a full opinion with respect to its thoughts on the issue?

THE COURT: No. I will just simply indicate, but, again, I will not be doing that either until such time as I deal with the enablement issue. And, at that point in time, I will give an omnibus final decision on the points. Okay?

Thank you. Have a very nice day, everybody.

MS. MEHTA: Thank you, your Honor.

MR. RASKIN: Thank you, your Honor.

(Proceedings concluded.)

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: July 2, 2018

/s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

**MR. DEVINCENZO: [24]**
**MR. FINKEL: [1]** 4/2
**MR. GARRETSON: [1]** 3/23
**MR. MALLOY: [1]** 3/21
**MR. RASKIN: [6]** 29/13 30/5 30/21 31/12 32/4 34/22
**MS. MEHTA: [30]**
**MS. RAY: [1]** 3/18
**THE COURT: [38]**

**-**

**-and [5]** 2/5 2/5 2/6 2/14 2/18

**/**

**/s [1]** 35/12

**0**

**02Micro [1]** 17/12

**1**

**10 [2]** 8/19 18/12
**10019 [1]** 2/7
**10322 [1]** 1/8
**108 [1]** 13/5
**10:31 [1]** 3/2
**11 [2]** 18/12 19/13
**11:01 [1]** 27/16
**11:07 [1]** 27/16
**12 [4]** 18/12 20/23 29/3 30/25
**12-10322 [1]** 1/8
**12th [2]** 28/14 29/3
**13 [1]** 18/12
**14 [3]** 16/3 17/25 18/13
**15 [1]** 13/5
**19th [2]** 27/22 29/8

**2**

**2013 [2]** 6/15 15/3
**2014 [2]** 15/5 15/6
**2018 [3]** 1/16 3/1 35/10
**21 [1]** 13/5
**217 [1]** 2/11
**23rd [2]** 27/24 28/1
**2555 [1]** 2/18
**26th [1]** 2/6
**28 [3]** 1/16 3/1 35/4
**2800 [1]** 2/22
**2nd [1]** 31/19

**3**

**312 [1]** 1/21

**4**

**436 [1]** 1/21
**44 [1]** 13/22
**440-7 [1]** 13/22
**4th [1]** 33/2

**6**

**6.10 [1]** 11/20
**6000 [1]** 2/15
**64108 [1]** 2/19
**6th [2]** 28/1 32/23

**7**

**707 [1]** 2/14
**725 [1]** 2/22
**750 [1]** 2/6
**753 [1]** 35/4

**9**

**90012 [1]** 1/21
**90017 [2]** 2/15 2/23
**94111 [1]** 2/11
**9858 [2]** 1/20 35/12
**9th [1]** 27/23

**A**

**a.m [2]** 3/2 27/16
**able [3]** 10/8 14/21 26/5
**about [12]** 8/9 8/12 14/7 15/13 15/14 16/15 16/18 23/24 26/2 27/2 27/9 31/1
**above [2]** 9/11 35/7
**above-entitled [1]** 35/7
**accused [3]** 5/8 5/9 6/19
**across [1]** 18/2
**Activision [2]** 3/17 28/23
**actually [7]** 10/4 17/22 22/12 22/25 26/9 27/3 31/2
**add [2]** 9/5 16/12
**additional [3]** 9/5 9/6 19/8
**Additionally [1]** 29/20
**address [1]** 16/17
**addressed [3]** 4/15 5/7 20/2
**addresses [2]** 4/9 4/14
**adjudication [1]** 4/7
**admitted [1]** 21/14
**adopt [1]** 29/17
**adopted [1]** 6/23
**affect [1]** 33/17
**affirm [1]** 33/14
**after [6]** 6/13 10/1 10/13 21/1 27/25 28/7
**afternoon [1]** 3/11
**again [16]** 7/21 7/22 7/25 8/3 8/9 19/7 19/10 25/23 26/12 29/8 30/14 30/16 30/20 31/8 31/12 34/17
**ago [4]** 9/18 19/11 19/25 31/16
**agree [7]** 8/15 10/20 22/3 25/16 27/11 27/11 29/23
**agreed [2]** 5/3 20/16
**agrees [1]** 25/15
**air [1]** 29/8
**al [2]** 1/9 3/8
**all [34]**
**allow [2]** 10/14 19/5
**allowed [1]** 19/2
**allows [1]** 23/2
**already [2]** 8/7 33/23
**also [5]** 4/2 9/10 11/21 28/3 32/25
**altering [1]** 33/21
**alternative [1]** 33/14
**Although [2]** 33/5 33/8
**always [2]** 4/13 25/17
**am [14]** 4/14 6/4 8/18 9/7 16/17 18/8 18/10 18/10 18/13 18/16 30/15 30/21 33/15 33/18
**amending [1]** 32/6
**AMERICA [2]** 1/9 4/1
**analysis [3]** 10/11 22/22 33/13
**analyzed [3]** 12/4 14/14 15/7
**ANGELES [5]** 1/15 1/21 2/15 2/23 3/1
**animation [3]** 6/19 13/20 13/22
**another [4]** 5/6 5/18 23/23 32/12
**answer [2]** 10/16 31/4
**anticipation [1]** 34/13
**any [7]** 11/3 14/22 18/18 24/6 24/9 24/11 24/13
**anything [4]** 12/12 24/10 26/22 32/7
**anyway [2]** 29/9 32/14
**anywhere [1]** 23/19
**apart [1]** 30/12
**apparently [2]** 29/10 31/8
**appeal [5]** 7/11 7/12 10/9 15/19 28/11
**appear [3]** 4/23 8/20 14/5
**appearances [2]** 2/1 3/9
**appearing [1]** 4/4
**appears [1]** 5/11
**application [2]** 6/3 11/25
**applied [1]** 5/8
**applies [1]** 21/17
**appreciate [1]** 33/12
**approach [1]** 5/18
**appropriate [2]** 17/18 20/9
**are [55]**
**aren't [1]** 16/25
**argue [7]** 4/18 13/23 17/2 21/8 23/7 25/6 26/23
**argued [1]** 21/7
**argument [6]** 6/21 11/14 16/21 25/6 25/22 32/3
**arguments [5]** 18/1 18/4 18/5 18/19 20/8
**arise [1]** 13/21
**around [2]** 12/3 20/7
**art [10]** 12/25 13/15 13/18 13/25 21/6 21/12 21/17 21/21 25/15 25/20
**Arts [2]** 3/17 4/5
**as [46]**
**aside [2]** 22/12 33/3
**ask [5]** 21/10 21/10 21/23 27/17 30/2
**asked [7]** 13/4 13/7 20/11 27/3 28/3 29/20 29/22
**asking [1]** 30/21
**aspect [2]** 33/8 33/16
**asserted [1]** 10/24
**assertions [1]** 17/14
**assets [1]** 9/21
**assume [1]** 32/18
**assuming [3]** 29/16 31/25 33/4
**attempt [3]** 5/17 5/17 9/17
**attend [2]** 29/25 30/8
**attorney [2]** 25/6 25/22
**attorneys [2]** 13/23 25/17
**August [3]** 27/23 27/24 28/1
**August 23rd [2]** 27/24 28/1
**August 9th [1]** 27/23
**availability [1]** 27/20
**available [1]** 9/21
**Avenue [1]** 2/6
**avoided [1]** 11/8
**away [1]** 24/9

**B**

**back [5]** 10/9 15/10 16/18 23/4 27/12
**background [1]** 14/25
**BACON [1]** 2/17
**BANDAI [1]** 1/9
**based [4]** 21/9 22/24 26/13 26/15
**basically [1]** 29/5
**basis [1]** 31/11
**be [55]**
**because [21]**
**become [1]** 8/8
**been [15]** 4/25 5/2 6/11 6/23 6/25 9/21 9/25 10/25 11/5 11/16 11/18 12/16 20/5 20/6 26/5
**before [4]** 15/2 15/3 26/11 31/14
**beginning [1]** 12/16
**behalf [6]** 3/12 3/16 3/20 3/23 3/25 4/4
**being [6]** 6/19 12/8 22/11 22/14 22/15 31/11
**believe [4]** 8/21 9/5 21/6 28/20

**B**

**believed [1]** 6/16
**BERGER [2]** 2/6 3/13
**besides [1]** 25/10
**best [1]** 26/4
**BETH [2]** 2/18 4/2
**between [5]** 11/23 17/20 19/19 24/4 29/2
**beyond [1]** 21/21
**binding [1]** 22/6
**Blizzard [1]** 3/18
**bone [3]** 6/18 24/1 24/17
**bones [1]** 34/6
**both [6]** 5/3 5/25 8/15 16/14 30/2 30/3
**Boulevard [2]** 2/14 2/18
**bridging [1]** 9/11
**brief [1]** 27/9
**briefing [4]** 20/13 24/7 31/22 32/9
**briefly [1]** 16/16
**broad [1]** 24/13
**broaden [1]** 22/23
**broader [1]** 21/14
**broadly [1]** 24/16
**burden [2]** 29/21 29/21

**C**

**CA [3]** 2/11 2/15 2/23
**calculate [1]** 22/17
**CALIFORNIA [4]** 1/2 1/15 1/21 3/1
**call [2]** 3/7 32/25
**came [2]** 7/21 23/4
**can [12]** 7/15 12/13 18/21 20/14 24/12 25/10 25/13 26/24 30/16 31/20 32/3 32/18
**can't [2]** 7/8 30/17
**cannot [1]** 11/23
**Cartesian [3]** 23/6 23/13 23/24
**case [18]**
**CENTRAL [1]** 1/2
**certainly [2]** 27/14 34/1
**CERTIFICATE [1]** 35/1
**certify [1]** 35/4
**cetera [3]** 4/8 18/15 18/15
**challenge [1]** 10/9
**chances [1]** 4/20
**change [6]** 6/22 12/14 16/8 16/20 16/22 18/3
**changed [3]** 5/12 5/13 18/17
**changing [1]** 14/20
**circuit [7]** 10/10 12/17 17/11 19/16 20/15 23/16 33/12
**circumstance [1]** 10/21
**cited [4]** 9/14 11/5 22/9 22/10
**City [1]** 2/19
**claim [51]**
**claimed [6]** 10/24 11/4 12/8 12/9 12/10 23/1
**claims [12]** 9/19 10/5 10/15 10/25 12/15 17/21 20/9 20/10 22/7 24/5 24/22 28/9
**clarification [6]** 16/6 16/12 18/7 21/24 23/7 24/25
**clarifications [1]** 21/9
**clarified [2]** 18/4 25/16
**clarifies [3]** 15/25 17/25 18/14
**clarify [1]** 16/4
**clarifying [1]** 31/17
**clear [5]** 12/7 12/8 15/6 21/16 23/21
**clearly [1]** 15/9
**client [2]** 30/7 30/22
**close [1]** 30/9
**closed [1]** 14/23
**CMC [2]** 6/14 6/15
**code [2]** 9/21 35/5
**colleague [1]** 4/2
**collected [1]** 26/17
**come [11]** 7/22 7/23 10/2 10/3 11/17 18/2 19/24 26/2 26/5 27/12 27/18
**coming [2]** 15/21 16/7
**comments [1]** 32/3
**completely [1]** 17/1
**computed [2]** 13/8 13/9
**concept [1]** 13/21
**concerned [2]** 16/15 32/21
**concluded [1]** 34/24
**conference [5]** 28/15 29/4 30/25 31/5 35/9
**conformance [1]** 35/8
**consider [1]** 28/4
**considered [1]** 33/23
**consistent [7]** 7/24 7/25 8/4 8/10 13/18 17/1 22/25
**consistently [3]** 12/16 15/7 24/5
**construction [68]**
**construed [2]** 10/15 24/21
**contention [1]** 8/7
**context [19]**
**controls [1]** 13/25
**convenience [1]** 27/25
**coordinates [2]** 23/6 23/24
**core [1]** 7/3
**correct [5]** 4/22 6/10 13/8 14/2 35/5
**correctly [3]** 17/4 22/22 24/21
**correspondence [1]** 9/12
**corresponding [2]** 11/22 19/20
**could [5]** 10/19 11/3 12/25 13/23 21/17
**counsel [6]** 2/1 3/10 11/8 23/9 24/23 27/17
**counter [1]** 28/9
**counterclaims [1]** 28/4
**couple [3]** 22/3 27/12 29/14
**course [1]** 18/5
**court [22]**
**court's [13]** 5/21 6/11 10/11 11/21 13/14 15/24 17/5 17/10 17/20 23/15 26/12 26/15 34/12
**cover [1]** 24/16
**create [1]** 12/3
**CRR [1]** 35/12
**CSR [2]** 1/20 35/12
**currently [2]** 28/14 31/19
**CV [1]** 1/8

**D**

**date [4]** 31/19 32/11 32/22 35/10
**dates [3]** 27/25 30/4 32/21
**day [6]** 20/5 29/23 29/25 30/7 30/9 34/21
**days [1]** 20/12
**DE [1]** 2/4
**deadlines [3]** 31/21 32/18 32/20
**deal [2]** 10/11 34/18
**dealt [1]** 28/7
**dec [1]** 13/5
**decide [4]** 14/15 17/8 17/12 17/21
**deciding [2]** 9/19 17/20
**decision [2]** 8/19 34/19
**declaration [1]** 13/19
**declaratory [1]** 28/4
**defendant [5]** 1/10 3/20 3/23 3/25 30/5
**defendant's [2]** 13/3 15/12
**defendants [15]** 2/9 3/17 13/1 16/9 16/11 19/23 21/7 21/13 25/6 27/21 28/15 29/22 29/24 30/11 31/10
**defense [3]** 3/14 6/7 9/15
**define [1]** 26/7
**defined [2]** 15/23 15/24
**definition [7]** 6/22 9/2 9/3 9/4 12/20 14/8 14/9
**definitional [4]** 8/17 9/11 13/6 25/4
**definitions [2]** 14/15 22/24
**delta [14]** 5/2 7/3 8/23 11/21 11/24 12/11 14/11 14/16 15/13 19/17 22/19 23/23 26/2 26/10
**deny [1]** 28/10
**describe [2]** 23/14 23/16
**described [4]** 10/24 22/14 22/15 24/5
**description [2]** 14/4 24/19
**DEVICENZO [1]** 2/5
**DeVincenzo [8]** 3/11 6/9 10/17 12/2 12/5 14/3 22/21 24/21
**DI [1]** 13/22
**dictionary [1]** 14/15
**did [6]** 14/12 19/5 24/25 27/17 27/19 30/12
**didn't [3]** 7/23 21/8 31/6
**difference [6]** 8/25 19/16 19/19 23/14 23/15 23/17
**differences [1]** 19/19
**different [5]** 7/6 10/19 28/18 28/18 30/4
**differently [2]** 10/21 12/13
**dimensional [1]** 16/2
**direction [9]** 5/23 8/16 8/18 9/9 11/11 16/2 19/22 20/23 24/3
**directions [9]** 7/19 21/6 23/5 23/8 23/13 23/17 23/18 25/7 25/20
**directly [1]** 14/6
**disagree [2]** 15/18 25/17
**discovery [2]** 9/25 10/1
**discretion [1]** 17/9
**discussion [2]** 8/6 33/19
**discussions [1]** 31/16
**disinclined [1]** 30/23
**dismiss [1]** 28/10
**Disney [4]** 4/5 28/19 28/23 30/8
**dispositive [3]** 4/11 6/17 6/18
**dispute [6]** 5/3 6/6 9/20 14/1 17/16 17/22
**distractions [1]** 15/16
**DISTRICT [3]** 1/1 1/2 1/4
**dividing [1]** 17/19
**DIVISION [1]** 1/2
**do [19]**
**Dobkin [1]** 13/4
**does [10]** 6/9 10/14 11/8 13/10 13/20 13/20 20/18 20/25 25/5 34/13
**doesn't [11]** 5/23 8/17 8/17 8/18 9/7 13/9 13/11 14/5 26/7 29/1 29/17
**Dog [1]** 4/1
**doing [4]** 14/3 32/16 33/20 34/17
**don't [11]** 5/13 7/20 8/9 22/3 23/17 28/21 29/7 30/10 33/5 33/8 33/10
**done [4]** 19/10 22/8 22/14

**D**

**done... [1]** 29/7
**Dr. [3]** 13/19 18/20 26/1
**Dr. Gleicher [3]** 13/19 18/20 26/1
**drink [1]** 30/17
**due [1]** 27/22
**DURIE [2]** 2/10 3/16
**during [3]** 5/3 5/16 32/3
**dutifully [1]** 11/8

**E**

**EA [1]** 28/24
**each [8]** 5/5 5/5 8/24 8/25 9/7 11/21 11/23 30/4
**early [1]** 24/8
**effect [2]** 33/8 33/9
**effective [1]** 30/10
**effectively [1]** 30/6
**effectuate [1]** 31/12
**either [2]** 26/22 34/17
**Electronic [1]** 3/17
**else [4]** 26/22 32/7 33/1 33/3
**EMC [1]** 17/11
**enablement [16]** 4/16 15/20 20/11 20/14 27/20 28/6 31/22 32/10 32/21 33/3 33/7 33/7 33/16 33/24 34/3 34/18
**end [1]** 6/24
**ended [1]** 6/13
**engage [1]** 30/23
**Enix [4]** 3/21 3/23 28/21 29/24
**enough [1]** 30/9
**enter [1]** 32/1
**entertain [1]** 19/8
**Entertainment [2]** 3/18 4/1
**entire [2]** 23/7 26/16
**entirely [1]** 8/10
**entitled [1]** 35/7
**envision [1]** 34/13
**envisioning [1]** 33/11
**ere [1]** 7/9
**ERIC [2]** 2/6 3/13
**establishes [1]** 15/9
**et [5]** 1/9 3/8 4/7 18/15 18/15
**Eugene [1]** 3/16
**EVAN [2]** 2/21 4/3
**even [7]** 4/14 8/3 8/4 13/21 14/14 14/19 32/15
**ever [1]** 4/13
**every [2]** 10/2 10/13
**everybody [3]** 25/15 29/11 34/21
**evidence [7]** 11/5 12/25 19/9 21/5 24/9 25/12 26/17
**exactly [6]** 6/10 7/7 11/2 12/7 14/12 33/9
**example [3]** 8/16 8/17 21/2
**except [2]** 29/24 31/21
**exception [1]** 29/11
**exclusively [1]** 24/5
**exemplary [1]** 21/1
**Exhibit [1]** 13/5
**exist [1]** 22/1
**exists [1]** 16/5
**expect [2]** 7/13 29/7
**expert [15]** 5/7 7/6 10/1 11/19 11/20 13/3 13/11 14/22 16/25 19/2 19/9 20/1 25/1 25/3 26/6
**expert's [2]** 11/25 13/18
**experts [9]** 5/25 8/15 9/24 15/12 16/13 25/16 25/21 25/24 25/25
**explains [1]** 7/4
**expressed [1]** 5/9
**extent [1]** 21/24
**extrinsic [1]** 14/14

**F**

**face [2]** 8/9 8/12
**facial [3]** 22/18 22/19 23/22
**fact [7]** 9/4 9/25 13/3 16/6 17/7 22/9 24/15
**factual [3]** 9/20 17/16 17/22
**failed [1]** 26/4
**falls [1]** 17/22
**far [1]** 30/12
**fed [1]** 23/16
**federal [6]** 10/10 12/17 17/11 19/15 20/14 33/12
**feel [2]** 18/2 18/17
**Feess [2]** 28/20 30/3
**fighting [1]** 16/18
**Figueroa [1]** 2/22
**file [2]** 20/11 27/21
**final [1]** 34/19
**find [1]** 21/17
**fine [5]** 7/11 19/18 19/21 21/24 34/1
**finish [1]** 13/13
**FINKEL [2]** 2/21 4/4
**first [9]** 3/10 6/14 14/3 19/24 19/25 20/2 22/3 29/15 34/4
**five [4]** 5/1 6/25 10/2 30/7
**flip [2]** 7/1 7/1
**flip-flopping [2]** 7/1 7/1
**Floor [1]** 2/6
**flopping [2]** 7/1 7/1
**focused [1]** 26/12
**focusing [1]** 14/4
**FOERSTER [2]** 2/13 3/20
**follows [1]** 20/10
**footnote [2]** 19/15 22/10
**foregoing [1]** 35/5
**form [2]** 18/18 19/17
**formal [1]** 31/20
**format [1]** 35/8
**formula [5]** 20/20 21/1 25/9 25/19 26/20
**forth [1]** 10/12
**forward [4]** 4/23 28/25 29/2 31/20
**found [4]** 12/9 14/9 17/16 23/6
**four [5]** 5/1 6/12 7/1 11/1 24/9
**four-and-a-half [1]** 7/1
**Francisco [1]** 2/11
**frankly [2]** 32/12 33/5
**front [3]** 6/14 8/2 33/19
**full [4]** 6/20 29/25 30/9 34/14
**full-day [1]** 30/9
**fundamental [1]** 15/17
**further [4]** 8/13 15/23 15/24 29/6

**G**

**game [1]** 9/21
**games [4]** 1/9 5/8 5/9 9/22
**GARRETSON [2]** 2/17 3/25
**generally [1]** 31/1
**GEORGE [1]** 1/3
**get [5]** 16/18 17/13 20/7 20/12 22/19
**getting [1]** 4/20
**ginned [2]** 16/24 17/1
**give [3]** 24/2 33/2 34/19
**Given [1]** 28/5
**Gleicher [3]** 13/19 18/20 26/1
**go [9]** 4/23 10/8 15/10 15/19 28/25 29/2 32/2 32/13 32/15
**goes [3]** 7/4 19/17 30/18
**going [18]**
**good [7]** 3/11 3/15 3/19 3/22 3/24 4/3 30/19
**got [2]** 18/20 23/10
**Grand [1]** 2/18
**grant [1]** 33/4
**granted [2]** 7/10 31/14
**granting [2]** 33/6 34/12
**grants [1]** 28/8
**great [1]** 16/19
**grounds [1]** 33/14
**group [1]** 28/19
**groups [2]** 27/4 28/18
**guess [2]** 4/23 26/24
**guys [5]** 26/21 27/8 27/11 28/17 31/2
**GW [1]** 1/8

**H**

**had [14]** 4/13 5/19 8/1 10/2 10/13 15/3 15/4 26/3 29/20 29/22 29/24 31/10 31/15 32/22
**half [2]** 7/1 29/23
**handle [1]** 16/19
**happen [1]** 30/11
**happened [1]** 16/23
**happening [1]** 14/23
**happy [4]** 9/3 15/8 16/9 16/10
**HARDY [1]** 2/17
**has [27]**
**have [78]**
**haven't [3]** 11/14 12/12 24/6
**having [4]** 6/25 10/1 10/13 33/13
**he [10]** 5/8 6/10 11/20 12/13 12/14 13/5 13/8 18/21 18/21 23/23
**hear [2]** 6/7 9/14
**heard [1]** 11/14
**hearing [11]** 4/20 5/16 8/5 15/4 19/1 19/6 20/3 27/25 31/22 32/9 32/22
**held [1]** 35/6
**herd [1]** 10/17
**here [5]** 4/6 4/20 9/16 12/24 21/15
**hereby [1]** 35/4
**high [1]** 32/4
**hinting [2]** 4/14 4/15
**his [1]** 11/19
**hold [1]** 20/25
**Honor [64]**
**Honor's [4]** 6/9 7/3 17/12 28/21
**HONORABLE [1]** 1/3
**horse [1]** 30/16
**how [15]** 5/24 9/20 13/10 13/12 13/16 13/24 16/13 17/17 22/18 25/5 25/13 26/7 29/4 30/17 33/10
**However [1]** 8/22

**I**

**I'm [2]** 25/17 28/23
**inappropriate [1]** 17/5
**INC [3]** 1/6 1/9 3/18
**include [1]** 14/16
**inconsistent [3]** 5/24 11/3 16/13
**indicate [2]** 17/24 34/16
**indicated [3]** 4/11 33/21 33/24
**indicating [1]** 33/20

**I**

**individually [1]** 9/8
**Infinity [1]** 3/18
**infringe [1]** 16/11
**infringement [8]** 10/3 11/19 15/1 15/10 16/7 17/17 24/17 29/19
**insisting [1]** 30/15
**insofar [1]** 32/21
**Instead [3]** 6/25 8/12 23/9
**Interactive [2]** 3/25 4/5
**interpret [1]** 16/14
**interpretation [1]** 11/25
**interpreted [3]** 10/19 10/21 13/17
**interpreting [1]** 10/18
**intrinsic [1]** 14/14
**introduced [1]** 21/2
**invalid [1]** 24/20
**invalidity [3]** 28/5 28/6 28/9
**invention [2]** 22/16 23/1
**irrespective [1]** 7/7
**is [240]**
**isn't [2]** 20/17 23/18
**issue [11]** 4/16 6/16 7/15 15/15 28/6 29/21 30/1 33/17 34/3 34/15 34/18
**issued [2]** 4/9 15/17
**issues [2]** 29/14 33/13
**issuing [1]** 34/14
**it [122]**
**items [1]** 27/10
**its [4]** 23/6 24/25 25/11 34/14
**itself [2]** 19/6 20/25

**J**

**job [3]** 17/12 17/20 17/21
**JOHN [4]** 2/5 2/17 3/12 3/24
**joint [1]** 20/12
**JUDGE [3]** 1/4 28/19 28/20
**judging [1]** 32/2
**judgment [16]** 4/7 5/11 7/10 13/2 17/6 19/25 20/10 24/8 28/4 28/6 31/14 33/4 33/6 33/14 33/22 34/13
**Judicial [1]** 35/9
**July [7]** 27/22 28/14 29/3 29/3 29/8 30/25 35/10
**July 12 [2]** 29/3 30/25
**July 12th [2]** 28/14 29/3
**July 19th [2]** 27/22 29/8
**JUNE [2]** 1/16 3/1
**jury [1]** 17/7
**jury's [1]** 17/21
**just [22]**

**K**

**Kansas [1]** 2/19
**KATIE [2]** 1/20 35/12
**keep [2]** 4/14 12/13
**keeps [1]** 23/23
**kick [1]** 32/14
**kind [2]** 30/6 31/3
**know [13]** 8/25 13/9 18/7 22/6 22/18 28/21 29/5 29/9 30/10 30/14 30/20 33/5 33/9

**L**

**lack [1]** 32/10
**language [4]** 9/11 12/9 14/5 14/6
**LARIGAN [2]** 2/18 4/2
**later [3]** 8/23 27/22 27/24
**law [5]** 10/6 12/22 14/17 17/9 17/18
**lawyers [1]** 7/5
**lead [1]** 30/16
**least [4]** 8/13 16/6 30/13 33/12
**legal [1]** 14/18
**Leidesdorff [1]** 2/11
**less [1]** 4/11
**let [16]** 3/7 3/9 5/21 6/7 7/20 9/14 10/10 13/13 17/24 18/23 18/25 22/2 27/17 30/2 32/2 34/7
**let's [2]** 27/2 31/9
**lexicographic [2]** 12/9 14/8
**lexicographical [2]** 12/20 13/6
**light [2]** 28/20 29/16
**like [4]** 19/12 23/9 31/1 31/3
**limit [2]** 11/9 25/5
**limited [12]** 5/22 8/15 11/15 12/20 21/6 23/5 23/8 24/24 25/7 25/15 25/19 25/20
**limiting [1]** 20/1
**limits [1]** 7/19
**line [1]** 17/20
**literature [1]** 25/1
**litigating [1]** 4/25
**LLP [5]** 2/4 2/10 2/13 2/17 2/21
**locations [1]** 19/16
**longer [1]** 4/15
**look [9]** 21/10 21/11 21/12 21/18 21/22 22/6 22/12 25/18 33/17
**looked [1]** 9/23
**looking [1]** 8/19
**looks [1]** 32/4
**LOS [5]** 1/15 1/21 2/15 2/23 3/1
**loses [1]** 22/25
**lost [1]** 17/3
**lot [1]** 31/8
**Lucas [1]** 4/5

**M**

**made [3]** 8/7 14/25 20/8
**magnitude [11]** 5/22 7/19 8/15 8/17 9/8 11/10 16/2 19/22 20/22 24/3 25/8
**magnitudes [1]** 21/7
**make [4]** 18/19 29/17 30/12 30/17
**makes [3]** 12/7 20/24 23/21
**making [3]** 16/22 17/15 18/16
**MALLOY [2]** 2/13 3/23
**manner [2]** 16/13 25/16
**many [2]** 4/19 19/10
**map [1]** 5/6
**MARK [2]** 2/4 3/12
**Markman [10]** 5/16 8/1 8/1 8/5 18/3 18/18 19/1 19/5 19/9 19/10
**mathematical [2]** 5/19 8/6
**matter [5]** 3/7 14/17 17/18 33/5 35/7
**matters [1]** 24/15
**may [4]** 9/13 16/16 33/8 33/16
**maybe [3]** 6/15 18/9 31/15
**MCRO [3]** 1/6 3/8 3/12
**MD [1]** 2/19
**me [25]**
**mean [2]** 16/9 21/21
**meaning [11]** 8/14 12/15 14/16 21/14 21/17 22/4 22/9 22/11 22/25 24/15 25/14
**means [6]** 8/21 9/1 12/22 13/24 15/23 18/22
**meant [3]** 17/8 26/2 26/3
**mediate [3]** 29/1 29/18 31/6
**mediating [1]** 28/22
**mediation [12]** 28/14 29/2 29/3 29/6 29/15 29/23 29/25 30/10 30/23 30/25 31/3 31/4
**mediations [3]** 28/16 28/24 30/8
**mediator [1]** 30/19
**mediators [1]** 30/2
**meet [4]** 5/9 7/8 7/16 22/15
**MEHTA [2]** 2/10 3/15
**mention [4]** 8/17 8/18 8/18 12/24
**mentioned [3]** 8/20 23/19 26/19
**method [3]** 11/4 12/8 22/14
**MICHAEL [1]** 2/5
**might [7]** 7/14 10/21 17/13 31/8 33/12 33/16 33/20
**Mike [1]** 3/11
**minutes [1]** 27/12
**MISHCON [1]** 2/4
**model [5]** 5/5 5/6 22/19 22/19 23/22
**models [3]** 11/22 11/24 24/4
**moment [1]** 27/9
**money [1]** 29/22
**months [2]** 24/9 31/16
**more [5]** 4/11 9/1 12/21 12/21 13/9
**morning [5]** 3/15 3/19 3/22 3/24 4/3
**morph [8]** 6/16 8/8 8/24 12/10 14/7 14/8 16/1 18/15
**MORRISON [2]** 2/13 3/20
**motion [17]** 7/10 15/20 20/12 20/14 24/19 27/21 28/7 28/8 31/14 31/22 32/9 33/3 33/4 33/6 33/22 33/24 34/12
**motions [2]** 4/7 4/10
**move [2]** 22/18 23/22
**movement [1]** 24/3
**moving [1]** 28/5
**Mr [7]** 6/8 10/17 12/2 12/5 14/3 22/21 24/20
**Mr. [1]** 28/25
**Mr. Raskin [1]** 28/25
**much [3]** 22/23 29/8 29/17
**must [2]** 13/7 13/10
**my [11]** 4/2 4/16 4/20 5/13 7/24 8/1 18/3 18/17 19/4 23/20 32/3

**N**

**NAMCO [2]** 1/9 3/8
**NARESH [1]** 2/10
**narrow [2]** 21/15 21/20
**narrowing [1]** 6/2
**narrows [1]** 16/12
**nature [1]** 6/5
**Naughty [1]** 4/1
**necessary [3]** 9/12 9/13 24/17
**neutral [2]** 5/5 11/24
**never [4]** 8/24 19/23 21/7 23/7
**new [7]** 2/7 7/18 7/21 7/22 7/23 18/3 18/8
**next [3]** 8/22 13/10 22/19
**nice [2]** 20/16 34/21
**nil [1]** 4/21
**no [28]**
**nobody [2]** 4/13 14/24
**non [2]** 15/10 17/17
**non-infringement [1]** 15/10
**None [1]** 25/21
**noon [1]** 33/2
**normal [1]** 21/14
**North [1]** 1/21
**not [65]**

**N**

**Novikov [1]** 3/16
**now [18]**
**number [2]** 26/8 26/11
**numbers [1]** 11/3
**NY [1]** 2/7

**O**

**object [1]** 22/16
**objection [1]** 31/23
**obviously [8]** 19/1 21/24 29/7 29/15 29/18 31/19 32/5 32/19
**October [3]** 31/19 32/14 32/16
**October 2nd [1]** 31/19
**off [2]** 30/7 32/11
**offered [3]** 7/6 9/24 22/11
**offering [1]** 7/5
**Official [1]** 1/20
**oh [1]** 31/6
**Okay [7]** 5/21 8/12 19/12 19/14 27/1 27/8 34/20
**older [1]** 32/13
**omnibus [1]** 34/19
**once [1]** 23/8
**one [44]**
**only [10]** 4/9 12/4 12/23 13/7 21/2 24/14 29/25 31/5 32/20 34/2
**open [1]** 34/8
**operate [1]** 17/17
**operating [1]** 6/11
**operative [1]** 5/1
**opining [2]** 14/24 25/24
**opinion [3]** 7/17 15/25 34/14
**opinions [2]** 5/9 9/24
**opportunity [4]** 10/2 10/13 26/3 34/5
**opposition [2]** 23/4 27/22
**oral [1]** 32/3
**order [4]** 12/18 28/21 30/7 31/21
**ordered [1]** 11/3
**ordinary [4]** 8/14 21/17 22/4 22/9
**original [4]** 5/24 7/17 7/24 14/10
**originally [1]** 8/11
**orthogonal [1]** 26/10
**other [16]** 4/21 10/20 18/19 20/19 21/2 21/4 24/11 24/12 24/13 25/10 25/12 29/24 30/11 31/10 31/17 31/21
**Otherwise [1]** 11/23
**our [8]** 6/23 20/11 23/12 26/6 28/9 30/6 30/22 34/12
**out [15]** 4/20 10/20 12/3 12/5 12/13 12/18 15/11 17/2 17/13 19/13 20/20 20/25 22/16 22/24 32/14
**outcome [1]** 15/8
**outside [1]** 27/9
**over [1]** 6/12
**own [7]** 11/19 11/24 13/3 13/11 13/18 16/4 20/1

**P**

**page [9]** 8/5 8/19 16/3 17/25 18/12 18/13 19/13 20/23 35/7
**pages [1]** 18/11
**Paragraph [2]** 11/20 13/22
**Paragraph 44 [1]** 13/22
**Paragraph 6.10 [1]** 11/20
**parlance [1]** 8/25
**part [1]** 34/12
**partially [1]** 8/3
**particular [1]** 26/6
**parties [8]** 5/3 5/25 16/14 29/10 29/18 30/9 30/12 33/12
**parties' [3]** 8/15 29/6 30/20
**passed [2]** 11/16 11/18
**past [1]** 27/10
**patent [12]** 6/22 8/25 10/24 12/15 12/22 13/21 20/24 22/7 24/10 24/19 24/20 24/24
**patents [1]** 13/20
**pending [1]** 28/11
**per [1]** 13/21
**perspective [2]** 16/17 16/20
**PETRSORIC [2]** 2/5 3/13
**Phillips [3]** 14/13 22/5 23/2
**PILLSBURY [2]** 2/21 4/4
**PITTMAN [1]** 2/21
**place [2]** 25/5 28/16
**plaintiff [9]** 1/7 2/3 5/17 16/15 18/2 18/6 18/10 19/18 29/13
**plaintiff's [2]** 3/10 5/7
**plaintiffs [1]** 16/10
**pluck [1]** 15/11
**plucking [2]** 12/13 12/23
**point [19]**
**pointed [6]** 12/12 12/18 13/3 13/5 22/16 25/3
**pointing [2]** 7/2 24/1
**points [2]** 21/9 34/20
**portion [3]** 20/24 21/4 21/4
**portions [1]** 21/19
**position [6]** 5/6 8/4 17/7 18/3 20/17 29/6
**positions [1]** 30/20
**possible [3]** 27/5 27/7 29/11
**post [4]** 28/14 29/3 30/25 31/4
**precedent [1]** 22/6
**precisely [1]** 22/10
**preclude [1]** 6/18
**prejudice [1]** 28/10
**presently [1]** 21/25
**PRESIDING [1]** 1/4
**presume [5]** 4/18 4/19 31/9 31/10 31/23
**pretrial [2]** 32/17 32/19
**prevail [1]** 28/9
**previously [1]** 19/23
**primary [1]** 22/15
**prior [5]** 8/5 8/5 11/12 11/13 26/16
**probably [3]** 27/11 33/20 33/22
**problem [1]** 9/10
**procedural [2]** 16/17 16/20
**proceeding [1]** 6/21
**proceedings [4]** 1/14 26/16 34/24 35/6
**process [2]** 5/4 18/18
**products [4]** 9/20 10/4 10/14 17/17
**proffered [1]** 19/3
**properly [2]** 10/15 14/17
**propose [2]** 13/1 27/21
**proposed [1]** 20/13
**prospect [1]** 32/4
**prove [1]** 10/13
**provided [1]** 9/2
**publications [1]** 6/1
**Publishing [1]** 3/17
**Punch [1]** 4/1
**pure [1]** 25/6
**purports [1]** 16/3
**purposes [2]** 10/11 13/1
**pursuant [1]** 35/4
**purview [1]** 17/10
**put [8]** 7/20 10/4 10/12 27/13 28/1 31/9 32/2 34/7

**Q**

**question [28]**
**quickly [1]** 23/3
**quintessential [3]** 9/18 17/6 17/19

**R**

**raised [4]** 18/1 18/4 18/6 19/23
**RASKIN [4]** 2/4 3/12 13/5 28/25
**RAY [2]** 2/14 3/19
**read [4]** 6/2 10/14 12/17 24/16
**reading [4]** 11/2 12/16 17/5 24/11
**ready [1]** 15/19
**real [1]** 23/3
**really [2]** 12/21 26/10
**reargue [1]** 9/17
**rearguing [1]** 34/6
**reason [2]** 16/7 18/12
**reasons [4]** 18/11 18/13 18/16 33/18
**Recess [1]** 27/16
**recollection [1]** 19/4
**reconsider [1]** 21/23
**record [4]** 14/14 14/14 15/2 27/13
**reference [2]** 5/5 20/24
**referenced [1]** 20/20
**referred [1]** 5/18
**referring [1]** 14/9
**refers [2]** 16/1 18/15
**refinement [1]** 8/13
**regard [3]** 8/9 31/18 32/7
**regarding [1]** 16/6
**regards [2]** 8/7 19/9
**regulations [1]** 35/8
**rehashing [3]** 20/4 20/5 25/23
**rejected [3]** 6/21 20/8 22/22
**rejecting [1]** 18/5
**relied [1]** 11/9
**relies [1]** 25/4
**rely [1]** 14/21
**remainder [2]** 12/6 28/19
**remains [1]** 33/1
**reopened [2]** 34/9 34/9
**reopening [1]** 34/5
**repeatedly [1]** 24/24
**repeating [1]** 26/21
**reply [2]** 23/7 27/23
**report [1]** 11/20
**reported [1]** 35/6
**Reporter [1]** 1/20
**REPORTER'S [1]** 1/14
**reports [1]** 20/13
**represent [1]** 19/20
**representation [2]** 5/19 8/6
**request [2]** 27/24 34/2
**require [2]** 9/10 13/21
**required [3]** 14/12 23/15 24/4
**requirement [5]** 9/5 9/6 15/13 34/4 34/5
**requires [7]** 11/21 12/10 12/11 14/11 15/14 22/17 23/2
**requiring [1]** 21/7
**resolve [1]** 11/1
**resolved [5]** 9/18 10/7 11/12 17/15 28/8
**respect [8]** 5/2 27/20 28/13 29/15 29/22 30/11 34/11 34/14
**respectfully [2]** 21/10 21/23
**respond [1]** 22/2
**responding [1]** 18/9

R

**response [2]** 18/1 23/20
**revisit [1]** 15/10
**REYA [1]** 2/4
**right [14]** 3/7 4/6 4/24 6/10 7/8 11/2 11/17 12/24 14/19 24/21 27/1 27/17 28/12 34/4
**rotation [3]** 23/10 23/24 23/25
**RPR [1]** 35/12
**rule [1]** 33/22
**ruled [3]** 4/10 16/23 20/6
**rules [1]** 34/4
**ruling [14]** 4/12 6/10 7/3 7/7 7/8 8/1 10/7 11/6 14/10 15/9 15/17 18/18 26/13 26/15
**RYAN [2]** 2/13 3/22

S

**said [20]**
**same [2]** 20/5 30/3
**San [1]** 2/11
**say [13]** 12/23 13/9 13/10 13/12 13/16 15/8 19/16 19/19 25/18 26/25 31/6 32/4 34/8
**saying [8]** 7/22 17/4 18/11 18/13 26/6 30/17 33/15 33/18
**says [12]** 8/21 8/23 8/24 9/11 13/7 13/8 13/8 13/11 13/14 21/2 22/5 25/2
**scale [3]** 23/10 23/24 23/25
**schedule [4]** 20/13 27/18 31/18 32/9
**scheduled [5]** 28/14 28/16 28/24 32/13 32/16
**scheduling [3]** 27/2 27/9 32/25
**scope [13]** 9/19 10/4 10/5 10/15 14/17 17/13 17/14 17/15 17/20 17/23 20/9 20/10 24/22
**second [2]** 6/15 30/1
**Section [1]** 35/4
**see [5]** 8/9 31/1 33/1 33/7 33/10
**seems [2]** 8/20 29/11
**seen [1]** 24/6
**send [1]** 20/14
**sense [3]** 18/8 29/17 30/13
**sentence [18]**
**sentences [5]** 8/23 12/13 12/23 12/23 21/18
**separate [1]** 34/3
**September [3]** 28/1 32/22 33/2
**session [1]** 29/25
**sessions [1]** 29/23
**set [24]**
**sets [5]** 5/2 6/17 16/1 18/15 26/10
**Setting [1]** 22/12
**settled [1]** 31/10
**settlement [3]** 28/13 29/6 31/16
**settlements [1]** 31/12
**seven [1]** 20/12
**Seventh [1]** 2/6
**shape [1]** 18/18
**SHAW [1]** 2/21
**she [2]** 11/16 11/17
**SHOOK [1]** 2/17
**should [8]** 6/12 6/23 7/10 8/8 19/2 27/6 27/23 31/15
**show [1]** 25/18
**showed [1]** 23/4
**side [3]** 4/21 8/7 26/23
**simply [2]** 18/8 34/16
**simultaneously [1]** 30/3
**since [4]** 8/21 12/16 15/3 26/25
**situation [2]** 19/4 19/7
**skill [7]** 12/25 13/17 13/25 21/16 21/21 25/14 25/19
**skilled [3]** 13/14 21/5 21/12
**slash [1]** 16/25
**slightly [1]** 32/7
**smoke [1]** 12/3
**so [43]**
**sole [1]** 17/9
**some [8]** 4/10 5/18 9/22 10/20 12/3 31/3 31/11 33/8
**somebody [1]** 4/18
**something [12]** 4/19 11/16 11/17 11/19 17/22 18/3 18/8 21/15 27/3 31/3 33/16 34/8
**sometimes [1]** 30/19
**SONAL [2]** 2/10 3/15
**Sony [2]** 3/25 28/23
**sorry [2]** 25/17 28/23
**sort [1]** 5/18
**source [1]** 9/20
**South [1]** 2/22
**space [19]**
**spec [6]** 9/2 20/24 21/4 21/4 21/9 25/8
**specifically [2]** 13/11 13/15
**specification [20]**
**specifications [1]** 13/16
**Spring [1]** 1/21
**Square [4]** 3/20 3/23 28/21 29/24
**stack [1]** 8/22
**stage [3]** 24/7 24/8 26/1
**start [2]** 22/23 34/5
**starting [1]** 3/9
**state [2]** 19/15 20/23
**stated [4]** 18/11 18/13 25/8 25/9
**statement [4]** 8/7 18/17 24/12 26/5
**statements [1]** 14/25
**states [5]** 1/1 1/4 15/25 35/5 35/9
**status [6]** 20/13 28/15 29/4 30/25 31/1 31/4
**stenographically [1]** 35/6
**step [1]** 27/8
**stop [2]** 18/23 18/25
**storage [1]** 15/15
**stored [5]** 13/11 13/12 13/16 25/5 26/7
**Street [3]** 1/21 2/11 2/22
**subject [3]** 4/16 15/19 27/19
**such [4]** 16/6 21/16 33/23 34/17
**Sucker [1]** 4/1
**suggesting [1]** 22/21
**Suite [2]** 2/15 2/22
**summary [15]** 4/7 4/7 5/11 7/9 13/1 17/6 19/25 20/10 24/8 28/5 31/14 33/4 33/6 33/22 34/12
**support [3]** 20/22 24/11 25/7
**supported [2]** 15/18 26/18
**surprise [1]** 31/6
**sway [1]** 5/17
**system [1]** 22/14

T

**take [6]** 7/11 7/11 25/14 28/16 30/7 32/11
**talk [4]** 26/2 27/2 27/9 31/1
**talking [5]** 14/5 14/7 15/13 15/14 23/24
**talks [1]** 29/7
**TANGRI [2]** 2/10 3/16
**target [1]** 8/24
**technical [1]** 5/25
**tell [4]** ... 18/12
**telling [1]** 18/10
**tentative [22]**
**term [8]** 6/1 13/19 15/25 16/1 17/25 18/14 18/14 22/24
**terms [3]** 8/1 15/14 22/7
**testified [1]** 18/21
**testify [2]** 18/21 18/22
**testimony [4]** 13/18 14/22 19/3 19/9
**Tevrizian [2]** 28/19 30/3
**than [4]** 10/19 13/9 24/12 32/13
**Thank [8]** 6/8 27/14 27/15 28/2 34/10 34/21 34/22 34/23
**that [239]**
**their [17]** 6/21 7/5 9/24 10/13 11/2 11/19 11/24 13/1 13/11 13/18 14/22 16/25 19/25 23/7 24/17 25/3 25/21
**them [7]** 9/21 9/22 12/16 12/17 24/9 28/25 29/7
**then [19]**
**theories [3]** 7/6 16/25 17/1
**theory [6]** 7/4 7/5 10/3 10/12 16/25 24/18
**there [33]**
**therein [1]** 12/10
**these [6]** 14/25 15/16 17/14 19/17 21/18 21/18
**they [45]**
**THIBODEAUX [2]** 1/20 35/12
**thing [5]** 20/5 20/20 22/15 31/5 32/20
**things [4]** 19/13 21/20 25/5 27/4
**think [15]** 4/10 5/13 6/8 6/9 7/20 8/10 10/9 11/16 16/19 28/7 30/22 31/13 33/11 33/12 34/2
**this [61]**
**those [8]** 10/14 18/16 21/9 27/10 28/10 31/12 32/21 33/13
**though [2]** 4/14 33/15
**thought [1]** 30/9
**thoughts [1]** 34/14
**three [19]**
**threek [1]** 19/22
**through [7]** 6/20 7/4 9/25 10/1 14/13 17/14 27/10
**throughout [1]** 22/22
**THURSDAY [2]** 1/16 3/1
**time [23]**
**Title [1]** 35/4
**told [2]** 6/14 31/7
**top [1]** 19/19
**transcript [3]** 1/14 35/6 35/7
**transforms [2]** 24/1 24/17
**translation [3]** 23/11 23/25 23/25
**treat [1]** 6/1
**treatises [1]** 6/1
**trial [6]** 24/9 31/19 32/11 32/13 32/15 32/16
**true [1]** 35/5
**try [2]** 17/2 17/13
**trying [5]** 6/21 12/2 15/7 16/8 20/6
**turned [1]** 25/11
**tutorial [1]** 19/5
**twice [2]** 21/3 26/19
**two [13]** 7/6 8/22 12/23 19/13 19/20 21/9 21/18 21/18 26/11 27/3 27/23 31/16 33/13
**typical [2]** 20/25 21/19
**typically [1]** 20/1

**U**

**U.S [1]** 1/20
**unambiguous [1]** 21/16
**unclear [1]** 18/9
**under [10]** 4/25 6/11 9/4 11/20 14/13 16/5 16/11 17/2 17/13 28/6
**understand [6]** 9/6 12/25 13/15 24/23 25/20 28/25
**understanding [3]** 21/12 21/13 21/19
**understood [2]** 13/24 32/17
**UNITED [4]** 1/1 1/4 35/5 35/9
**until [3]** 33/23 34/8 34/17
**up [21]**
**us [5]** 13/23 20/11 25/11 28/20 31/1
**use [1]** 17/24
**used [6]** 12/19 17/25 21/3 21/3 25/10 25/13
**using [3]** 28/17 28/19 28/20
**utilized [1]** 31/11

**V**

**vacate [2]** 30/24 32/18
**vacating [1]** 31/21
**various [1]** 4/6
**vector [26]**
**vectors [25]**
**versus [1]** 3/8
**vertex [5]** 5/5 5/5 11/23 13/19 13/22
**vertices [5]** 11/22 19/17 19/20 23/22 24/3
**very [9]** 8/22 9/10 12/7 12/8 13/4 15/6 21/1 30/12 34/21
**viable [1]** 10/3
**viewpoint [1]** 13/17

**W**

**waiver [1]** 10/10
**want [14]** 4/15 4/18 7/10 13/23 15/10 18/19 20/19 27/8 29/1 29/3 29/4 30/14 33/1 33/7
**wanted [5]** 26/1 29/5 29/9 30/20 33/18
**wants [2]** 12/14 26/23
**Ward [1]** 3/18
**was [32]**
**wasn't [1]** 20/2
**water [1]** 30/16
**way [14]** 4/10 7/20 9/25 9/25 10/18 10/19 13/1 18/18 20/2 24/25 31/9 32/2 33/17 34/7
**ways [1]** 22/3
**we [74]**
**week [2]** 27/4 27/10
**weeks [2]** 27/22 27/24
**weight [7]** 6/17 8/8 12/10 14/7 14/8 16/1 18/15
**well [15]** 5/12 5/25 6/5 7/22 9/14 10/18 15/8 15/18 26/18 26/21 26/24 30/8 30/14 32/2 33/24
**well-supported [1]** 26/18
**WENDY [2]** 2/14 3/19
**went [3]** 6/20 14/13 19/5
**were [12]** 14/19 14/20 18/1 18/4 18/6 24/16 25/24 25/25 30/9 30/12 30/21 31/10
**WESTERN [1]** 1/2
**what [58]**
**whatever [1]** 27/10
**when [10]** 9/4 12/19 16/12 17/24 17/25 19/25 20/16 20/20 22/12 24/8
**whenever [1]** 15/3
**where [6]** 9/9 11/11 11/20 12/24 19/7 25/12
**whether [4]** 7/4 10/8 17/22 28/21
**which [28]**
**who [3]** 13/19 28/17 31/10
**whole [2]** 22/20 24/18
**whose [1]** 16/25
**why [7]** 5/9 7/4 11/14 18/12 20/9 31/4 33/18
**will [26]**
**willing [2]** 28/25 29/2
**willingness [2]** 29/10 30/15
**Wilshire [1]** 2/14
**wind [1]** 33/20
**WINTHROP [2]** 2/21 4/4
**within [6]** 10/4 10/14 14/16 17/10 17/23 20/12
**without [3]** 4/20 16/5 28/10
**won't [1]** 31/20
**word [4]** 11/9 15/11 17/25 24/12
**words [1]** 21/25
**work [2]** 9/20 30/7
**working [1]** 11/1
**world [1]** 10/20
**would [44]**
**wouldn't [2]** 32/15 32/16
**written [3]** 7/16 7/17 24/18
**wrong [2]** 6/4 6/9
**WU [1]** 1/3

**Y**

**year [1]** 19/25
**years [9]** 5/1 5/1 6/12 6/25 7/1 9/18 10/2 11/1 19/11
**Yes [8]** 9/16 11/18 20/18 20/21 27/6 27/19 31/13 32/24
**York [1]** 2/7
**you [71]**
**your [80]**
**yours [2]** 32/14 32/15
**yourselves [1]** 26/22