1  DURIE TANGRI LLP
   SONAL N. MEHTA (SBN 222086)
2  smehta@durietangri.com
   EUGENE NOVIKOV (SBN 257849)
3  enovikov@durietangri.com
   CATHERINE Y. KIM (SBN 308442)
4  ckim@durietangri.com
   TIMOTHY P. HORGAN-KOBELSKI (SBN 319771)
5  tkobelski@durietangri.com
   217 Leidesdorff Street
6  San Francisco, CA  94111
   Telephone:  415-362-6666
7  Facsimile:   415-236-6300

8  Attorneys for Defendants
   Electronic Arts Inc.; Activision Publishing, Inc.;
9  Blizzard Entertainment, Inc.; and Infinity Ward, Inc.

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12              WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| 13 MCRO, INC., D.B.A. PLANET BLUE,<br><br>14              Plaintiff,<br><br>15        v.<br><br>16 BANDAI NAMCO GAMES AMERICA,<br>17 INC., et al.,<br><br>18              Defendants. | Lead Case No. 12-cv-10322-GW (FFMx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>Date:   September 6, 2018<br>Time:  8:30 a.m.<br>Ctrm:  9D<br>Judge: Honorable George H. Wu<br><br>CONSOLIDATED WITH: |
| 19 | |
| 20 MCRO, INC., D.B.A. PLANET BLUE,<br><br>21              Plaintiff,<br><br>22        v.<br><br>23 ELECTRONIC ARTS INC.,<br><br>24              Defendant. | Case No. 2:12-cv-10329-GW (FFMx) |

25

26

27

28

| | |
|---|---|
| MCRO, INC., D.B.A. PLANET BLUE,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION PUBLISHING, INC. and BLIZZARD, ENTERTAINMENT, INC.,<br><br>Defendants. | Case No. 2:14-cv-00336-GW (FFMx) |
| MCRO, INC., D.B.A. PLANET BLUE,<br><br>Plaintiff,<br><br>v.<br><br>INFINITY WARD, INC.,<br><br>Defendant. | Case No. 2:14-cv-00352-GW (FFMx) |
| MCRO, INC., D.B.A. PLANET BLUE,<br><br>Plaintiff,<br><br>v.<br><br>NAUGHTY DOG, INC.,<br><br>Defendant. | Case No. 12-cv-10335 GW (FFMx) |
| MCRO, INC., D.B.A. PLANET BLUE,<br><br>Plaintiff,<br><br>v.<br><br>SUCKER PUNCH PRODUCTIONS LLC,<br><br>Defendant. | Case No. 14-cv-00332 GW (FFMx) |
| MCRO, INC., D.B.A. PLANET BLUE,<br><br>Plaintiff,<br><br>v.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA LLC,<br><br>Defendant. | Case No. 14-cv-00383 GW (FFMx) |

| | |
|---|---|
| MCRO, INC., D.B.A. PLANET BLUE, | Case No. 12-cv-10323 GW (FFMx) |
| Plaintiff, | |
| v. | |
| DISNEY INTERACTIVE STUDIOS, INC., | |
| Defendant. | |
| MCRO, INC., D.B.A. PLANET BLUE, | Case No. 14-cv-00358 GW (FFMx) |
| Plaintiff, | |
| v. | |
| LUCASARTS, A DIVISION OF LUCASFILM ENTERTAINMENT COMPANY LTD. LLC, | |
| Defendant. | |

# <u>TABLE OF CONTENTS</u>

Page

I.   INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 2

     A.   Specification Support for "First Set of Rules." ............................. 3

     B.   McRo's Changing Views on Claim Construction........................... 6

     C.   Defendants' Expert Opines That the Specification Does Not Enable the
          Full Scope of the "First Set of Rules" Limitation. ........................ 8

III. LEGAL STANDARD ......................................................................... 9

IV.  ARGUMENT...................................................................................... 11

     A.   The Specification Discloses a "First Set of Rules" for Only One Type
          of System, and Provides Only a Small Exemplary Set. ............... 11

     B.   Practicing the Full Scope of the Claims Would Require Undue
          Experimentation. .......................................................................... 13

     C.   The Asserted Dependent Claims Are Not Enabled Either. ............ 17

V.   CONCLUSION.................................................................................... 18

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY / CASE NO. 12-CV-10322-GW (FFMX)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AK Steel Corp. v. Sollac and Ugine*,
  344 F.3d 1234 (Fed. Cir. 2003) ................................................................. 9, 11

*ALZA Corp. v. Andrx Pharms., LLC*,
  603 F.3d 935 (Fed. Cir. 2010) ...................................................................... 10

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
  501 F.3d 1274 (Fed. Cir. 2007) ......................................................... 10, 12, 16

*MagSil Corp. v. Hitatchi Global Storage Techs., Inc.*,
  683 F.3d 1377 (Fed. Cir. 2012) ..................................................................... 11

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
  579 F.3d 1363 (Fed. Cir. 2009) ..................................................................... 17

*McRo, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed Cir. 2016) ................................................................... 7, 16

*Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*,
  166 F.3d 1190 (Fed. Cir. 1999) ..................................................................... 10

*Promega Corp. v. Life Techs. Corp.*,
  773 F.3d 1338 (Fed. Cir. 2014) .................................................................. 9, 13

*Sitrick v. Dreamworks, LLC*,
  516 F.3d 993 (Fed. Cir. 2008) .................................................................. 9, 10

*In re Vaeck*,
  947 F.2d 488 (Fed. Cir. 1991) ....................................................................... 12

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1988) ...................................................... 10, 13, 16, 17

*Wyeth and Cordis Corp. v. Abbott Labs.*,
  720 F.3d 1380 (Fed. Cir. 2013) ..................................................................... 10

**Statutes**

35 U.S.C. § 112 ....................................................................................... 2, 9, 11

ii

## I. INTRODUCTION

To satisfy the enablement requirement, the specification of a patent must teach those skilled in the art how to make and use the ***full scope*** of the claimed invention without undue experimentation.  The heart and purported novelty of the claimed invention in this case is the use of a "first set of rules" to automate a known process for generating lip-synchronized facial animation.  Though McRo argued to the Federal Circuit that the claimed rules cabin the invention to a "highly specific application of any underlying ideas," (SUF ¶ 1[1]), McRo has simultaneously resisted any limitation of the scope of the "first set of rules" term, arguing that ***any*** rules within the genus of rules that generate morph weight sets based on phoneme sequence and timing would satisfy this limitation.

But the specification of the '278 patent does not enable a "first set of rules" so broad in scope.  Instead, the specification identifies only two species of the above genus: correspondence rules and transition rules that function by specifying morph weight sets at each keyframe (correspondence), and then specifying transition parameters for interpolating between the keyframes (transition).  The specification provides only a small set of rudimentary examples of these types of rules, and does not enable one of ordinary skill in the art to construct a working system using only these types of rules to create acceptable facial animation.  As McRo's expert has admitted, it leaves the problem of actually designing a working system to the reader.  And as Defendants' expert opined, coming up with the ***specific rules*** used to perform the animation is the most difficult part of designing an automated lip synchronization system like this.

Nor does the specification enable a person of ordinary skill in the art to construct, without undue experimentation, a system that uses any types of rules other than the correspondence and transition rules described above.  The specification does not disclose ***any*** examples of such different rules, does not describe their structure (or the structure of

---

[1] Citations to "SUF" refer to the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendants' Motion for Summary Judgment.

a system that would use them), and does not instruct the reader how to construct them.

The specification thus fails to meet the enablement requirement because it fails to teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation. McRo should not be able to claim, on one hand, that the "first set of rules" limitation tethers the claims to a concrete technological application, and, on the other hand, that its scope extends well beyond anything taught in the specification. If the claims are as broad as McRo has argued in this case, then they are not enabled. Defendants therefore now ask the Court to hold that the claims of the '278 patent are invalid as a matter of law under 35 U.S.C. § 112.[2]

## II.   BACKGROUND

The only remaining asserted independent claim in this case – claim 1 of the '278 patent – recites a "first set of rules that defines a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence," which thereafter gets applied to a plurality of phoneme subsequences to generate an output morph weight set stream:

> A method for automatically animating lip synchronization and facial expression of three-dimensional characters comprising:
>
> **obtaining a first set of rules that defines a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence**;
>
> obtaining a plurality of sub-sequences of timed phonemes corresponding to a desired audio sequence for said three-dimensional characters;
>
> generating an output morph weight set stream by **applying said first set of rules to each sub-sequence of said plurality of**

---

[2] On June 28, 2018, the Court issued a tentative ruling granting Defendants' summary judgment of non-infringement of all asserted claims of U.S. Patent No. 6,611,278 ("the '278 patent"). SUF ¶ 2. The Court indicated that, in making its tentative final, it wished to also consider the issue of enablement, inviting the instant motion.

**sub-sequences of timed phonemes**; and

applying said output morph weight set stream to an input sequence of animated characters to generate an output sequence of animated characters with lip and facial expression synchronized to said audio sequence.[3]

SUF ¶ 3.

### A.   Specification Support for "First Set of Rules."

The specification does not provide a set of rules – exemplary or otherwise – that, if implemented as instructed in the claims, would actually make the system function to "automatically animat[e] lip synchronization and facial expression."  Instead, it offers a general description of the types of rules it contemplates, and provides a small set of isolated examples.   The description of the rules (including every single example provided) instructs the reader that the rules must specify the correspondence between phoneme subsequences and morph weight set ("correspondence rules") at certain specific times (keyframes), and must specify the parameters for transitioning between the keyframes generated by the correspondence rules ("transition rules").  Below, for example, is the specification's guidance with respect to how to design the claimed "first set of rules":

Each sub-sequence of time aligned phonetic transcription (TAPT) or other timed data such as pitch, amplitude, noise amount or the like, is checked against a rule's criteria to see if that rule is applicable. If so, the rule's function is applied to generate the output. **The primary function of the rules is to determine 1) the appropriate morph weight set correspondence with each TAPT sub-sequence; and 2) the time parameters of the morph weight set transitions between the representation of the prior TAPT subsequence or other timed data, and the current one**. Conditions 1) and 2) must be completely specified for any sequence of phonemes and times encountered. Together, such rules are used to create a continuous stream of morph weight sets.

---

[3] Emphases added throughout unless otherwise noted.

SUF ¶ 4.

After discussing how these rules may be further divided into "default," "secondary," and "post-processing" rules, the specification goes on to describe how the rules are applied to create the animation.  In that description – the only one provided – the correspondence rules specify morph weight sets at keyframes, and the transition rules (if applicable) specify the timing for interpolating between the keyframes to obtain intermediate frames:

> A specific sub-sequence **20** is selected from the TAPT file **12** and is evaluated **22** to determine if any secondary rule criteria for morph weight set target apply. Time aligned emotional transcription file **14** data may be inputted or data from an optional time aligned data file **16** may be used. Also shown is a parallel method **18** which may be configured identical to the primary method described, however, using different timed data rules and different delta sets. **Sub-sequence 20 is evaluated 22 to determine if any secondary rule criteria apply. If yes, then a morph weight set is assigned 24 according to the secondary rules, if no, then a morph weight set is assigned 26 according to the default rules. If the sub-string meets any secondary rule criteria for transition specification 28 then a transition start and end time are assigned according to the secondary rules 32, if no, then assign transition start and end times 30 according to default rules. Then an intermediate file of transition keyframes using target weights and transition rules as generated are created 34, and if any keyframe sequences fit post process before interpolation rules they are applied here 36.** This data may be output **38** here if desired. If not, then **interpolate using any method post processed keyframes to a desired frequency or frame rate 40 and if any morph weight sequences generated fit post processing after interpolation criteria, they are applied 42 at this point.**

SUF ¶ 5.  The specification's description of Fig. 2 then reiterates that "the method . . . according to the invention" involves the steps of "configuring a set of default

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY / CASE NO. 12-CV-10322-GW (FFMX)

correspondence rules between a plurality of visual phoneme groups or other timed input data and a plurality of morph weight sets," and "specifying a plurality of morph weight set transition rules for specifying durational data for the generation of transitionary curves between the plurality of morph weight sets."  SUF ¶ 6.  The discussion concludes:

> It is seen that through the use or [sic] these rules, an appropriate morph weight stream is produced. **The uninterpolated morph weight stream has entries only at transition start and end time, however. These act as keyframes. A morph weight set may be evaluated at any time by interpolating between these keyframes, using conventional methods. This is how the output stream is calculated each desired time frame.** For example, for television productions, the necessary resolution is 30 evaluations per second.

SUF ¶ 7.

The specification then lists a small set of examples of specific rules – twenty in all – that could be implemented as part of the claimed system.  SUF ¶ 8.  These examples do not come close to being a rule set sufficient to create a working system because they do not contain rules for anything like the complete set of phonemes encountered in speech. The examples also are insufficient to create a working system because they do not instruct the reader how to integrate this automated rule-based implementation into a larger animation context where the character is moving and performing activities other than looking directly at the camera and speaking.  And each one of the example rules hews to the structure described above:  correspondence rules generating morph weight sets at keyframes, and rules specifying the timing of transition between them.  For example, the rules at the bottom of column 7 and the top of column 8 specify the keyframe morph weight sets ("transition targets") to be used when particular phonemes are encountered (correspondence rules), followed by a rule that specifies the transition start and end times between keyframes (transition rule).  The "secondary rules" and "post-processing rule" that follow in column 8 modify those correspondences and transition parameters in certain

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY / CASE NO. 12-CV-10322-GW (FFMX)

1  circumstances.  And the additional rules provided in columns 9 and 10 are merely

2  variations on the above.

3        In short, the specification fails to provide a set of rules that would enable a reader to

4  design a working system, and fails to even suggest that such a set of rules could be

5  structured in any manner other than correspondence rules that specify keyframes and

6  transition rules that specify the timing of the interpolation of intermediate frames.

7        **B.    McRo's Changing Views on Claim Construction.**

8        Prior to Defendants' Section 101 Motion, McRo took an expansive view of the

9  claim term's meaning.  McRo argued during claim construction that "[a] set of rules is,

10 quite simply, a set of instructions" that accept an input and generate an output.  SUF ¶ 9.

11 This, of course, describes **_all_** software, and—since McRo also refused to accept the

12 limitation that the rules be embodied in a software program—a lot more besides. SUF ¶

13 10.

14       In its claim construction ruling, the Court accepted McRo's argument for purposes

15 of claim construction, holding that no construction of the term was necessary.  SUF ¶ 11.

16 The Court then returned to the subject of what "first set of rules" means when ruling on

17 Defendants' Section 101 motion.  There, the Court reasoned that since the concept of

18 rules is "specified at the highest level of generality" – as argued in McRo's claim

19 construction brief—and since the patent provides only "an example of a very partial set of

20 default and secondary rules," leaving the work of defining the rules to the user, the

21 **_concept_** of using rules to generate morph weight sets did not add anything more to the art

22 than an abstract idea.  SUF ¶ 12.

23       Seeking to reverse this ruling on appeal, McRo changed its view of what the

24 claimed rules were.  In describing the claimed invention to the Federal Circuit, McRo

25 hewed a lot closer to what the specification actually describes:

26              What sets the invention apart is how it determines the facial
               movements that will be synchronized with the audio dialogue.
27             Among other things, it uses rules that evaluate the [time-aligned
               phonetic transcript] and – depending on the sequence of
28

6

> phonemes, the context of each phoneme with respect to surrounding phonemes, and the pace of speech – automatically determines when to set keyframes, the appropriate morph weight set at each keyframe, and how the animation should transition between keyframes.

SUF ¶ 13.  McRo further echoed the specification in detailing the nature of the claimed rules, describing the "correspondence" and "transition" rules the invention allows, and the further subcategories (default, secondary, and post-processing) into which they may fall. SUF ¶ 14.  And as in the specification, each example of rules provided to the Federal Circuit specified morph weight sets at keyframes (correspondence), and provided parameters for interpolation (transition).  SUF ¶ 15.  This discussion did not appear in McRo's claim construction briefing.  Instead, during claim construction, McRo chided Defendants for "fail[ing] to grasp that while any morph weight set generated by interpolating between keyframes **may** be the final output morph weight set, nothing in the patent **requires this to be the case**."  SUF ¶ 16 (emphases in original).

Although the Federal Circuit held that the term "first set of rules" did not need construction, the appellate court accepted McRo's characterization of the invention, describing the patents as "aim[ing] to automate a 3-D animator's tasks, specifically, determining when to set keyframes and setting those keyframes.  This automation is accomplished through rules that are applied to the timed transcript to determine the morph weight outputs."  *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1307 (Fed Cir. 2016).  And these characteristics of the rules were at least part of the basis for the appellate court's holding that the claims transcended merely organizing information or carrying out a fundamental economic practice:  it was the incorporation of mathematical rules to **automate the setting of keyframes** by use of a "distinct process" that "evaluate[d] sub-sequences, generate[s] transition parameters, [and] appl[ies] transition parameters to create a final morph weight set" that "improved [the] existing technological process by allowing the automation of further tasks."  *Id.* (internal quotation marks and citation

7

omitted).

On remand, Defendants attempted to hold McRo to its representations to the Federal Circuit by limiting the construction of "first set of rules" to McRo's characterization of the rules on appeal: "rules that evaluate the time-aligned phonetic transcript and (depending on the sequence of phonemes, the context of each phoneme with respect to surrounding phonemes, and the pace of speech) automatically determine when to set keyframes, the appropriate morph weight set at each keyframe, and how the animation should transition between keyframes."  SUF ¶ 19.  McRo objected that although it appealed to this description of the rules to save its claims from invalidity, it "never argued that the *claims* are limited to the specific keyframing technique," and instead "merely described the technology at issue and the teachings of the invention as set forth in the specification."  SUF ¶ 20.

In its tentative ruling on Defendants' supplemental claim construction request, the Court found that the specification's disclosure – as recited by McRo to the Federal Circuit – was non-limiting and exemplary and that Defendants' proposal should not be adopted. SUF ¶ 21.  The Court noted, however, that the resulting broad scope of the claims potentially created a question concerning whether the full scope of the claims was enabled.  SUF ¶ 22.

Following the supplemental claim construction briefing, the parties commenced expert discovery.  In expert discovery, McRo again asserted its broad interpretation of what "first set of rules" entails.  Indeed, in its infringement report, McRo asserted that members of the "first set of rules" included rules that split or merged phonemes, or that modified the keys of a phoneme curve.  SUF ¶ 23.

### C.   Defendants' Expert Opines That the Specification Does Not Enable the Full Scope of the "First Set of Rules" Limitation.

Defendants' expert, Dr. Brian Wyvill, is a leading expert in computer graphics and lip synchronization, and even built an early, rule-based prior art system that performed

automated lip-synchronization.  In his invalidity report, he opined that "the '278 Patent's specification fails to provide a person of ordinary skill in the art with the tools needed to develop, without undue experimentation, rules having the breadth and complexity of the claimed genus for 'first set of rules.'"  SUF ¶ 24 .  This is because, "the '278 patent makes explicit that the actual development of working, effective rules is left *entirely* to the user, even with respect to the default rules that constitute the foundation of the claimed method."  SUF ¶ 25. The Court recognized this fact in its Section 101 ruling, *supra* at 6, and McRo's expert agreed, writing that the '278 patent "does not need to detail all necessary rules," (SUF ¶¶ 26, 27) and indeed does not "waste time" enumerating sets of rules to account for coarticulation phenomena and artistic effects.  SUF ¶ 27.  Instead, it provides only a "rule schema." SUF ¶ 28.

As Dr. Wyvill further opined, however, the examples in the patent fail to cover even a small percentage of the potential phoneme sequences that could be encountered, and the specification provides no guidance for how to generate rules that would actually create a working system.  SUF ¶ 29.  "While it would have been within the knowledge and skill of a person of ordinary skill in the art (given the prior art discussed above) to come up with certain types of claimed rules, it would have required an incredible amount of effort and experimentation to develop a working system that produced high-quality animation."  SUF ¶ 30.

## III.   LEGAL STANDARD

Under 35 U.S.C. § 112(a), a patent's specification must enable those skilled in the art to make and use the full scope of the claimed invention without "undue experimentation" as of the patent filing date (here, October 1997).  "Enabling the full scope of each claim is "part of the *quid pro quo* of the patent bargain.'"  *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) (quoting *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003).  If a patent enables some embodiments within the scope of a claim, but not others, then the claim is invalid.  *Promega Corp. v.*

*Life Techs. Corp.*, 773 F.3d 1338, 1347-50 (Fed. Cir. 2014) (reversing denial of summary judgment of no enablement where the specification only enabled evaluating a narrow set of DNA sequences, but the claim was drawn to the analysis of an open set of sequences); *ALZA Corp. v. Andrx Pharms., LLC*, 603 F.3d 935, 939-43 (Fed. Cir. 2010) (affirming judgment that claims encompassing medicinal tablets in both osmotic and non-osmotic dosage forms were invalid where specification taught only osmotic dosage forms); *Sitrick*, 516 F.3d at 999-1001 (affirming summary judgment that claims encompassing both video games and movies were invalid where specification only taught use of invention in video games); *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1281-85 (Fed. Cir. 2007) (affirming summary judgment that claims encompassing both mechanical and electronic side-impact sensors were invalid where specification taught only mechanical sensors).

"The scope of enablement . . . is that which is disclosed in the specification plus the scope of what would be known to one of ordinary skill in the art without undue experimentation." *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999).  However, while the knowledge of one skilled in the art is relevant to the enablement inquiry, the enabling disclosure for the novel aspects of the claimed invention must be provided by the specification, not merely the knowledge of one skilled in the art.  *Auto. Techs.*, 501 F.3d at 1283.

Whether a patent satisfies the enablement requirement "is a question of law based on underlying facts." *Wyeth and Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380, 1384 (Fed. Cir. 2013).  Relevant factors in considering whether  practicing the full scope of the claims requires undue experimentation include "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

1    Summary judgment of non-enablement may be granted when there is no genuine

2    issue of material fact that practicing the full scope of the claims would have required

3    undue experimentation.  *AK Steel Corp.*, 344 F.3d at 1244-45.

4    **IV.   ARGUMENT.**

5    McRo has insisted that the "first set of rules" limitation encompasses more than

6    correspondence rules that set morph weight sets at keyframes, and transition rules that

7    specify interpolation parameters.  But the specification's disclosure of rules consists ***only***

8    of those types of rules, and contains ***no*** guidance for how to design or implement ***any***

9    other types.  Thus, the specification does not teach or provide guidance on how to

10   implement the vast bulk of the genus that McRo has claimed.[4]  And as Defendants' expert

11   has opined, ***even within the scope of the keyframing system contemplated in the***

12   ***exemplary rules*** (much less for a different type of system), actually designing and

13   implementing a set of rules that would produce satisfactory animation would require

14   massive amounts of experimentation, and indeed would be the most difficult part of

15   making a system that practiced these claims.

16    **A.   The Specification Discloses a "First Set of Rules" for Only One Type of System, and Provides Only a Small Exemplary Set.**

17

18   The '278 specification discloses only two narrow species of rules:  correspondence

19   rules and transition rules that set keyframes and parameters for interpolation between

20   them.  At the same time, the Court has, at McRo's insistence, construed the claims such

21   that the "first set of rules" limitation encompasses ***any*** rule that generates morph weight

22   sets as a function of phoneme sequence and timing.  That has consequences.  "[A]

23   patentee chooses broad claim language at the peril of losing any claim that cannot be

24   enabled across the full scope of coverage."  *MagSil Corp. v. Hitatchi Global Storage*

25

26   _____

[4] This also presents a written description problem under 35 U.S.C. § 112, in that one of

27   skill in the art reading the specification would not understand that the patentee to have

     possession of the full scope of the "first set of rules" limitation.

28

*Techs., Inc.*, 683 F.3d 1377, 1381 (Fed. Cir. 2012).  And while a patentee is not required to disclose every species encompassed by the claim, "there must be sufficient disclosure, either through illustrative examples or terminology, to teach those of ordinary skill in the art how to make and how to use the invention as broadly as it is claimed.  This means that the disclosure must adequately guide the art worker to determine, without undue experimentation, which species among all those encompassed by the claimed genus possess the disclosed utility."  *In re Vaeck*, 947 F.2d 488, 496 (Fed. Cir. 1991).

The Federal Circuit's opinion in *Automotive Technologies*, 501 F.3d at 1282-85, is instructive.  There, the district court construed a term in a claim for a vehicle crash sensor to include both *mechanical* and *electronic* sensors. But while the specification devoted "two full columns and five figures" to mechanical sensors, "only one short paragraph and one figure relate[d] to an electronic sensor," and "d[id] little more than provide an overview of an electric sensor without providing any details of how the electronic sensor operates." *Auto. Techs.*, 501 F.3d at 1282.  While the patentee argued that one of skill in the art would know how to make and use an electronic sensor, that was not sufficient because enabling disclosure for the ***novel*** aspects of an invention must be provided by the specification, not by the knowledge of one skilled in the art.  *Id.* at 1283.  The Federal Circuit concluded that the specification failed to enable electronic sensors, and thus the claims encompassing both mechanical and electronic sensors were invalid.

The problem here is more serious than in *Automotive Technologies*.  The '278 specification does not provide fulsome disclosure of some types of rules and scant disclosure of others.  Rather, it ***only*** discloses ***two*** types of rules usable in ***one*** type of system:  correspondence rules and transition rules for a system that generates keyframes and then interpolates between them.  Despite McRo's repeated insistence that the claims also cover other types of systems, no rules for those types of systems are ever disclosed. For example, the patent does not provide exemplary rules, or instruct the reader how to construct rules, to create a system such as the ones accused in this case:  systems that

generate animation curves with alleged "morph weight set" values at every frame in a single pass, rather than first generating a morph weight set that defines the frame of animation at certain special times (i.e., a keyframe) and then interpolating between those morph weight sets.[5]  SUF ¶ 31.  Nor does it disclose (or describe how to integrate into the type of system it describes) the sorts of rules Dr. Gleicher describes in his report:  e.g., rules for splitting diphthongs, or for merging phonemes.  SUF ¶ 32.

Claiming an infinitely variable genus but describing only a narrow species, with no guidance for how to use the claimed method with the vast remainder of the genus's scope, presents an enablement problem at least as serious as claiming two varieties but enabling only one.  *See Promega Corp.*, 773 F. 3d at 1346-1350 (a claim to a DNA analysis kit for evaluating an open set of DNA sequences not enabled when the specification only describes how to evaluate a narrow set of sequences, and to figure out how to evaluate others would require a great deal of experimentation).  Having argued repeatedly that the "first set of rules" limitation covers any "set of instructions" that has the claimed characteristics, McRo cannot run away from the fact that its specification does not teach one of skill in the art how to design a system of that scope and complexity.

**B.    Practicing the Full Scope of the Claims Would Require Undue Experimentation.**

The *Wands* factors favor a finding that practicing the full scope of the "first set of rules" limitation would require undue experimentation, because the specification does not enable one of skill in the art to *either* develop a working keyframing system with correspondence and transition rules *or* an entirely different type of system with different

---

[5] Notably, the other patent initially asserted in this case, U.S. Patent No. 6,307,576, more particularly claimed the keyframing implementation disclosed in the specification, because it required generating an "intermediate stream of morph weight sets" before a "final stream."  McRo ultimately dropped the '576 patent before expert discovery, perhaps recognizing that the accused systems do not interpolate between keyframes to generate the final animation.

types of rules that the claims cover but the specification does not even begin to describe:

> (1)    With respect to the "quantity of experimentation necessary," Defendants'
> expert, Dr. Wyvill, opined that coming up with a working set of rules with the
> breadth and complexity of the claim scope McRo asserted would require "years
> of development and experimentation – far more than could ever be considered
> routine."  SUF ¶ 33.

> (2)    As discussed above, the patent provides **no** "direction or guidance"
> concerning how to develop rules other than the two narrow varieties recited in
> the specification, and no "working examples" that transcend those categories.
> Nor are the "working examples" of the types of rules discussed sufficient to
> enable the practitioner to build a working system of the narrow type
> contemplated.  Dr. Wyvill opined that "the limited disclosure of simple, crude
> 'exemplary' rules in the '278 Patent's specification underscore the extent to
> which the specification leaves to others the hard work of developing rules that
> could actually produce realistic animation," and that the specification "fails to
> provide even an exemplary set of 'default correspondence rules' that covers 'all
> visual phoneme groups'—something that the patent describes as a necessary
> first step for any use of the claimed method—much less representative examples
> of the admittedly 'complex' rules that the Plaintiff alleges the claims cover."
> SUF ¶ 34.

> (3)    With respect to the nature of the invention and the predictability and
> unpredictability of the art, Dr. Wyvill opined that "the results of experimenting
> with new sets of rules would have been difficult to predict, particularly for more
> complicated sets of rules," and that in order to get the claimed invention to work
> sufficiently well to achieve its stated goal would require rules "far more
> complex than the examples given," highlighting the clear disconnect between
> the nature of the invention and the scarcity of the disclosure.  SUF ¶ 35.

(4)    With respect to the breadth of the claims, as discussed above, if "rules" are
interpreted merely as a "set of instructions," then the "rules" include all software
– in this case, all software that generates morph weight sets from a sequence of
phonemes and their timings.  And during claim construction McRo insisted that
even requiring that the rules be embodied in software was too limiting.  *See
supra* at 6.The scope of the claimed rules is thus maximally broad.

While McRo's technical expert, Dr. Gleicher, disagreed with Dr. Wyvill's
conclusion that practicing the full scope of the claims would require undue
experimentation, his rebuttal is insufficient as a matter of law to raise a genuine issue of
material fact.  Dr. Gleicher's opinion is premised on the assertion that the specification
did not ***need*** to provide more fulsome disclosure of the claimed rules, because it is
sufficient to (1) provide "examples of how common rule types [sic] and how they can be
embellished with artistic effects," and (2) "instruct[] one of skill in the art on how to
transfer known rules from other systems."   SUF ¶ 36.

That argument fails for several reasons.  With respect to "examples of []common
rule types," the only examples provided are correspondence and transition rules for a
keyframing system.  The patent nowhere instructs how to extrapolate from that variety of
rule to other types of rules, and Dr. Gleicher does not argue otherwise.  As discussed
above, providing examples of one narrow species of rule does not relieve the patentee of
the obligation to enable the remainder of the genus, when the entire genus is claimed.

With respect to "transfer[ring] known rules from other systems," there are two
problems.  First, McRo cannot rely on the prior art to enable the only feature of the
invention that is novel over the prior art.  As this Court and the Federal Circuit have both
recognized, performing lip-synchronized facial animation using morph weight sets was
known in the art, and the novelty of the claimed invention lies in using the claimed rules
to automate the process:

> As the specification confirms, the claimed improvement here is
> allowing computers to produce "accurate and realistic lip

15

1
2
3
4
5

> synchronization and facial expressions in animated characters"
> that previously could only be produced by human animators.
> '576 patent col. 2 ll. 49–50. As the district court correctly
> recognized, this computer automation is realized by improving
> the prior art through "the use of rules, rather than artists, to set
> the morph weights and transitions between phonemes."

*McRO, Inc.*, 837 F.3d at 1313.  In describing the alleged novelty of the claimed invention in his validity report, Dr. Gleicher set forth "three key aspects" of the patent that were "contrary to the prevailing wisdom of the academic literature:  (1) using a morph weight set approach to controlling the face "in an automated setting," (2) using "contextualized rules" that can be "defined over a sequence of phonemes, not just individual phonemes," and (3) using rules that output morph weight sets.  SUF ¶ 38.

Because the use of the claimed rules to automate morph weight set animation is the patents' claimed contribution to the art, the ***specification*** must contain the enabling disclosure for the claimed rules.  "Although the knowledge of one skilled in the art is indeed relevant, the novel aspect of an invention must be enabled in the patent." [6]  *Auto. Techs.*, 501 F.3d at 1283.  In *Automotive Technologies*, the "essential concept of the invention" was to use "an inertial or acceleration sensor on a motor vehicle for sensing side impacts," and it was thus "insufficient to merely state that known technologies can be used to create an electronic sensor."  *Id.*  So too here, the claimed rules are the "essential concept of the invention," and McRo may not rely on the prior art to supply their content.

Second, the entire premise of McRo's validity rebuttal was that the prior art asserted by Defendants – most notably the Pelachaud reference – is fundamentally different from the claimed invention because it used a more complex facial model resulting in rules that were defined differently and operated differently:

> Pelachaud shows that the system creator can define the behavior

---

[6] This addresses the remaining two *Wands* factors:  the state of the art and the relative skill of one of skill in the art.  Because McRo may not rely on the prior art or the knowledge of one of skill in the art to supply the enabling disclosure, those factors cannot help McRo.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY / CASE NO. 12-CV-10322-GW (FFMX)

of the face in response to a sequence of phonemes by defining rules that govern the influence of the phonemes over the human face model's detailed musculature in order to create resulting motion.  While this approach, in the skilled hands of a Ph.D. student, may lead to realistic human facial motions, it means that the rule author must think in terms of the complexities of human anatomy. This means that defining new rules, or tweaking existing ones, requires a great deal of specialized knowledge. It also means that the approach may not apply to characters whose facial features are not defined on human musculature. In contrast, the '278 Patent teaches and claims that rules are defined in terms of animator-provided facial shapes.

SUF ¶ 39.  While Defendants dispute that the claimed invention was novel or non-obvious because the prior art was ***more*** sophisticated, it begs credulity for Dr. Gleicher to turn around and assert, in the same report, that the content of the claimed rules could have been provided by Pelachaud and that the '278 patent teaches how to "transfer this knowledge into a production compatible system."  SUF ¶ 40.

Dr. Gleicher's reliance on the prior art to attempt to establish that undue experimentation would not be required cannot rebut Dr. Wyvill's opinions concerning the *Wands* factors.  There is thus no genuine issue of material fact that the specification does not provide sufficient enabling disclosure for the full scope of claim 1 of the '278 patent.

## C.    The Asserted Dependent Claims Are Not Enabled Either.

Narrower dependent claims may sometimes be enabled even though the claim on which they depend is not, because the specification may contain support for a narrower claim but not a broader one.  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1378-79 (Fed. Cir. 2009).  That is not the case here because none of the asserted dependent claims are directed to a narrower species of rules than the "first set of rules" recited in claim 1.  Claim 4 adds the requirement that the "desired audio sequence [of claim 1] is from a pre-recorded live performance."  Claim 13 adds the requirement that "said plurality of subsequences of timed phonemes comprises a timed aligned phonetic

transcriptions sequence." Because neither claim narrows the claimed set of rules to be commensurate with the scope of the patent's enabling disclosure, they cannot be enabled where claim 1 is not.

## V.   CONCLUSION

Defendants respectfully request that the Court grant the motion for summary judgment of invalidity and hold that the asserted claims of the '278 patent are not enabled.

Dated:  July 19, 2018                      DURIE TANGRI LLP

                                           By: _____*/s/ Eugene Novikov*_____
                                                  EUGENE NOVIKOV

                                           Attorney for Defendants
                                           Electronic Arts Inc.; Activision Publishing,
                                           Inc.; Blizzard Entertainment, Inc.; and
                                           Infinity Ward, Inc.

Dated:  July 19, 2018                      PILLSBURY WINTHROP SHAW
                                           PITTMAN LLP

                                           By: _____*/s/ Evan Finkel*_____
                                                  EVAN FINKEL

                                           Attorney for Defendants
                                           Disney Interactive Studios Inc. and LucasArts,
                                           a division of Lucasfilm Entertainment
                                           Company Ltd. LLC

Dated:  July 19, 2018                      MORRISON AND FOERSTER LLP

                                           By: _____*/s/ Benjamin J. Fox*_____
                                                  BENJAMIN J. FOX

                                           Attorney for Defendant
                                           Square Enix Inc.

Dated:  July 19, 2018                      SHOOK HARDY AND BACON LLP

                                           By: _____*/s/ Beth A. Larigan*_____
                                                  BETH A. LARIGAN

                                           Attorney for Defendants
                                           Naughty Dog Inc.; Sony Computer
                                           Entertainment America LLC; Sucker Punch
                                           Productions LLC

## ATTESTATION OF SIGNATURES

I, Eugene Novikov, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Eugene Novikov*
EUGENE NOVIKOV

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY / CASE NO. 12-CV-10322-GW (FFMX)

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on July 19, 2018 the within document was filed with the Clerk

3   of the Court using CM/ECF which will send notification of such filing to the attorneys of

4   record in this case.

5                                                           */s/ Eugene Novikov*
                                          _____
6                                                           EUGENE NOVIKOV

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY / CASE NO. 12-CV-10322-GW (FFMX)