# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-10322-GW(FFMx) | | Date | September 13, 2018 |
|---|---|---|---|---|
| Title | *McRO, Inc., v. Namco Bandai Games America, Inc., and Related Actions* | | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael S. DeVincenzo | Sonal N. Mehta |
| Eric P. Barger | Beth A. Larigan |
| Mark S. Raskin | Wendy J. Ray |
| Brian D. Ledahl | Evan Finkel |

**PROCEEDINGS:      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY [756]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the Motion is TAKEN UNDER SUBMISSION. Court to issue ruling.

| | : | 50 |
|---|---|---|
| Initials of Preparer | JG | |

___McRO, Inc., d.b.a. Planet Blue v. Namco Bandai Games America, Inc.___, Case No. CV 12-10322-GW (FFMx) (LEAD TRACK 1 CONSLIDATED CASE);  Tentative Ruling on Defendants' Motion for Summary Judgment of Invalidity (for Lack of Enablement)

Plaintiff McRO, Inc., d.b.a. Planet Blue ("Plaintiff" or "Planet Blue") filed numerous patent infringement cases in this District.[1]  Plaintiff alleges that the remaining Defendants[2] directly or indirectly infringe Claims 1, 4, and 13 of U.S. Patent No. 6,611,278 ("the '278 Patent").[3]  *See* Docket No. 710 ¶¶ 13, 14.  The '278 Patent relates to automatically animating the lip synchronization and facial expressions of 3-D characters.

In previous orders and hearings in this case, the Court expressed concerns about whether the "first set of rules" limitation of the asserted claims met the enablement requirements of 35 U.S.C. § 112.  Despite the Court's comments on the issue, Defendants failed to challenge the asserted patents on the basis of enablement until ordered to do so at the hearing on the parties' latest round of summary judgment briefs.  In that latest summary judgment round, the Court issued a tentative order that would grant Defendant's Motion for Summary Judgment of Non-Infringement (Docket No. 643).[4]  *See* Docket No. 755.  The Court indicated that it would not

---

[1] The remaining cases are: *McRO, Inc. v. Electronics Arts, Inc.*, CV 12-10329; *McRO, Inc. v. Naughty Dog, Inc.*, CV 12-10335; *McRO, Inc. v. Square Enix, Inc.*, CV 12-10338; *McRO, Inc. v. Sucker Punch Productions, LLC*, CV 14-332; *McRO, Inc. v. Activision Blizzard Inc.*, CV 14-336; *McRO, Inc. v. Infinity Ward, Inc.*, CV 14-352; *McRO, Inc. v. LucasArts Entertainment Company LLC*, CV 14-358; *McRO, Inc. v. Sony Computer Entertainment America, LLC*, et al., CV 14-383; and *McRO, Inc. v. Disney Interactive Studios, Inc.*, CV 12-10333.

[2] The remaining Defendants are: Electronic Arts Inc.; Naughty Dog, Inc.; Square Enix, Inc.; Activision Publishing, Inc.; Blizzard Entertainment, Inc.; Infinity Ward, Inc.; Sony Computer Entertainment America LLC (now known as Sony Interactive Entertainment LLC); Sucker Punch Productions LLC; Disney Interactive Studios, Inc.; and LucasArts, a division of Lucasfilm Entertainment Company Ltd. LLC (collectively, "Defendants").

[3] Although Plaintiff has not formally withdrawn its infringement claims as to the other previously-asserted patent (U.S. Patent No. 6,307,576 ("the '576 Patent")) from the case, Plaintiff states it has dropped its infringement claims for that patent.  All of the remaining Defendants except Square Enix, Inc. have asserted non-infringement and invalidity counterclaims as to the '278 and '576 Patents.  *See* Docket No. 488 (Activision and Blizzard's Answer and Counterclaims); Docket No. 322 (LucasArts' Answer and Counterclaims); Docket No. 318 (Infinity Ward's Answer and Counterclaims); Docket No. 284 (Sony's Counterclaim); Docket No. 283 (Sucker Punch's Counterclaim); Docket No. 174 (Naughty Dog's First Amended Counterclaim); Docket No. 159 (Disney's First Amended Answer and Counterclaim).  For the first time in the current motion papers, the parties raise a dispute regarding the status of Defendants' counterclaims regarding the '576 Patent.  The parties separately filed a report indicating that they dispute whether those counterclaims must be dismissed with/without prejudice.  Docket No. 765.  The Court declines to address this issue at this time and finds that additional briefing will be necessary to clarify the scope/circumstances of the dispute.

[4] The tentative ruling on the parties' summary judgment motions also included the Court's tentative views that it would: (1) **OVERRULE** Defendants' Objections to Plaintiff's Opposition to Defendants' Motion for

1

issue a final ruling, however, until the parties had submitted briefs regarding the enablement issue for the Court's consideration.

With this directive, Defendants filed their Motion for Summary Judgment of Invalidity (for Lack of Enablement) on July 19, 2018.  *See* Docket No. 756-1.  Plaintiff has filed an Opposition (Docket No. 758) and Defendants have filed a Reply (Docket No. 760).  The parties have also submitted their chart outlining allegedly uncontroverted/genuinely disputed facts.  *See* Docket No. 761 (Defendants' Response to Plaintiff's Statement of Genuine Disputes in Response to Defendants' Statement of Uncontroverted Facts).

# I. <u>BACKGROUND</u>

## A. The '278 Patent

The '278 Patent issued August 26, 2003 to inventor Maury Rosenfeld.  It is titled "Method for Automatically Animating Lip Synchronization and Facial Expression of Animated Characters."

Much of the factual background regarding the '278 Patent is explained in the Court's Final Ruling on Claim Construction (Docket No. 298), the Federal Circuit's opinion regarding the patent eligibility of the '278 and '576 Patents, *see McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1303-07 (Fed. Cir. 2016), and the Court's tentative ruling on Defendants' Motion for Summary Judgment of Non-infringement (Docket No. 755).  Briefly, the patent "relate[s] to automating part of a preexisting 3-D animation method."  *Id.* at 1303; *see also* '278 Patent Abstract, *id.* at 1:35-52.  The animation method relies on a "neutral model" of a character's face in conjunction with "morph targets."  *Id.* at 1:48-59.  A "morph target" is a character's expression as it pronounces a particular phoneme, *i.e.*, makes a certain sound.  *Id.* Each morph target corresponds to a delta set "consisting of the vectors by which the vertices on

---

Summary Judgment of Non-Infringement or Invalidity (*see* Docket Nos. 711, 727); (2) **DENY** all of the Defendants' other pending motions before the Court (including Defendants' still-pending early Motion for Summary Judgment of Non-Infringement, filed June 23, 2017 (*see* Docket No. 431)) as **MOOT** (*see also* Docket Nos. 638, 634, 628, 629, 632, and 635); and (3) **GRANT-IN-PART**, based on representations by Defendants, Plaintiff's Motion for Summary Judgment of No Anticipation except as to two prior art references: (1) Catherine Pelachaud, "Communication and Coarticulation in Facial Animation" (1991); and (2) Antai Peng, "Speech Expression Modeling and Synthesis" (1996).  At the hearing on the summary judgment motions, Defendants further informed the Court that − if the Court adopted its tentative ruling regarding Defendants' Motion for Summary Judgment of Non-Infringement, but the Court ultimately denied Defendants' Motion for Summary Judgment for Lack of Enablement − Defendants would seek to withdraw their invalidity counterclaim for the '278 Patent.  If Defendants were permitted to do so, this would also moot the remainder of Plaintiff's Motion for Summary Judgment of No Anticipation.

that morph target differ from the neutral model." *McRO, Inc.*, 837 F.3d at 1303; *see also* '278 Patent 1:63-65.

Facial expressions are "described as a function of the amount each morph target, and its corresponding delta set, is applied to modify the character model." *McRO, Inc.*, 837 F.3d at 1304; *see also* '278 Patent 2:1-2:13. "In producing animation products, a value usually from 0 to 1 is assigned to each delta set by the animator and the value is called the 'morph weight.'" '278 Patent 1:65-67.

Animators previously accomplished lip synchronization using a "keyframe approach" where the artist manually set morph weights "at certain important times ('keyframes')." '278 Patent 2:29-32. "Animators knew what phoneme a character pronounced at a given time from a 'time aligned phonetic transcription' ('timed transcript')." *McRO*, 837 F.3d at 1304.

The purported aim of the '278 Patent was to "provide a method for automatically animating lip synchronization and facial expression." '278 Patent 2:44-45. In particular, the claims require using a computer to obtain and apply a set of rules to data to ultimately "generate an output sequence of animated characters with lip and facial expression synchronized to said audio sequence." *Id.* at Claim 1.

For instance, Claim 1 of the '278 Patent (the only remaining asserted independent claim in this case) recites:

> 1.      A method for automatically animating lip synchronization and facial expression of three-dimensional characters comprising:
>> ***obtaining a first set of rules*** that defines a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence;
>> obtaining a plurality of sub-sequences of timed phonemes corresponding to a desired audio sequence for said three-dimensional characters;
>> generating an output morph weight set stream ***by applying said first set of rules*** to each sub-sequence of said plurality of sub-sequences of timed phonemes; and
>> applying said output morph weight set stream to an input sequence of animated characters to generate an output sequence of animated characters with lip and facial expression synchronized to said audio sequence.

'278 Patent, Claim 1 (emphasis added). The term "first set of rules" as it appears in Claim 1 of the '278 Patent is the central issue of Defendants' current motion.

*B. Relevant Procedural History*

3

### i. Early District Court Proceedings

During claim construction, the Court found no construction necessary for the claim term "first set of rules." *See* Docket No. 298-1 at 17. In doing so, the Court rejected Defendants' argument that the claimed "first set of rules" means "a group of logic statements that are embodied in a computer software program and used together." *See id.* at 14-16. As part of its analysis, the Court noted that "the claims themselves set out meaningful requirements for the first set of rules: they 'define[] a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence" . . . [and] 'generat[e] an output morph weight set stream by applying said first set of rules to each sub-sequence of said plurality of sub-sequences of timed phonemes.'" *Id.* at 16.

However, in deciding a Motion for Judgment on the Pleadings filed soon after, the Court concluded that the asserted claims were still drawn to patent-ineligible subject matter. *See* Docket No. 365. The Court found that the claimed first set of rules limitation was a critical aspect of the claimed invention. *Id.* at 18. The Court noted that according to the specification, "[i]n operation and use, the user must manually set up default correspondence rules' that 'specify the durational information needed to generate appropriate transitionary curves between morph weight sets, such as transition start and end times.'"[5] *Id.* (citing '576 Patent at 6:16-54). The Court further noted that "while the patent does provide an example of a very partial set of default and secondary rules, it expressly states that 'this is only an example of a set of rules which could be use[d] for illustrative purposes, and many other rules could be specified according to the method of the invention.'" *Id.* (citing '576 Patent at 7:36-9:23). The Court concluded that the asserted claims "preempt[ed] the field of such lip synchronization using a rules-based morph target approach." *Id.* at 19.

### ii. The Federal Circuit's Decision

The Federal Circuit reversed this Court's § 101 determination. *See generally*, *McRO*, 837 F.3d at 1302-03 ("We hold that the ordered combination of claimed steps, using unconventional rules that relate subsequences of phonemes, timings, and morph weight sets, is not directed to an abstract idea and is therefore patent-eligible."). In describing the claimed invention, the Federal Circuit observed that:

---

[5] In Plaintiff's briefing on the issue, Plaintiff's expert opined "that a central part of the patents is 'using morph weight set representations of the facial shape coupled with rules, including explicit and distinct timing rules, to generate keyframes.'" Docket No. 365 at 17.

> [e]ssentially, the patents aim to automate a 3-D animator's tasks, specifically, determining when to set keyframes and setting those keyframes. This automation is accomplished through rules that are applied to the timed transcript to determine the morph weight outputs. The patents describe many exemplary rule sets that go beyond simply matching single phonemes from the time transcript with the appropriate morph target. Instead, these rule sets aim to produce more realistic speech by "tak[ing] into consideration the differences in mouth positions for similar phonemes based on context."

*Id.* at 1307 (quoting '576 Patent at 10:6-7). The Federal Circuit went on to describe the patents' exemplary set of rules for a character transitioning from silence through saying "hello" and observed, "[t]he invention . . . uses rules to automatically set a keyframe at the correct point to depict more realistic speech, achieving results similar to those previously achieved manually by animators." *Id.* (citing '576 Patent at 7:36-9:22).

The Federal Circuit further characterized the rules claimed in the asserted patents as "limited to rules with certain common characteristics, i.e., a genus." *Id.* at 1313. The Federal Circuit observed:

> Claims to the genus of an invention, rather than a particular species, have long been acknowledged as patentable . . . Patent law has evolved to place additional requirements on patentees seeking to claim a genus; however, these limits have not been in relation to the abstract idea exception to § 101. Rather they have principally been in terms of whether the patentee has satisfied the tradeoff of broad disclosure for broad claim scope implicit in 35 U.S.C. § 112. *Carnegie Mellon Univ. v. Hoffmann–La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008).

*Id.* at 1313-14 (internal citation and parenthetical omitted). The Federal Circuit concluded that in the context of § 101, the use of the "genus" of rules claimed in the asserted patents improved an existing technological process "by allowing the automation of further tasks." *Id.* at 1314, 1315. The Federal Circuit further observed: "Claim 1 [of the '576 Patent] requires that the rules be rendered in a specific way: as a relationship between sub-sequences of phonemes, timing, and the weight to which each phoneme is expressed visually at a particular timing (as represented by the morph weight set)." *Id.* at 1315. On this basis, the Federal Circuit concluded that "[t]he specific structure of the claimed rules would prevent broad preemption of all rules-based means of automating lip synchronization, unless the limits of the rules themselves are broad enough to cover all possible approaches."[6] *Id.*

---

[6] The Federal Circuit noted Defendants' arguments to the contrary on the preemption point, but observed that there was "no record evidence" to support the conclusion that "any rules-based lip-synchronization process must

### iii. District Court Litigation After the Federal Circuit's Decision

After the Federal Circuit remanded the case back to this Court, Defendants filed an early summary judgment motion for non-infringement and requested supplemental claim construction regarding the "first set of rules" limitation. Defendants sought a new construction of the term "first set of rules" based on Plaintiff's characterization of the "first set of rules" limitation during appeal. Specifically, Defendants requested that the term be construed as "rules that evaluate the time-aligned phonetic transcript and (depending on the sequence of phonemes, the context of each phoneme with respect to surrounding phonemes, and the pace of speech) automatically determine when to set keyframes, the appropriate morph weight set at each keyframe, and how the animation should transition between keyframes." *See* Docket No. 455 at 14 (Court's Tentative Order[7] on Defendants' early motion for summary judgment of non-infringement and request for supplemental claim construction). The Court's Tentative Order found that Defendants' proposal was not supported by the record. The Tentative Order observed, for instance that:

> [t]he specification . . . repeatedly provides that its disclosure regarding rules is non-limiting and exemplary. '576 Patent 4:5-11 (describing "correspondence rules" and "transition rules" as part of "one embodiment"); 4:50-51 (stating "*[p]referably*, each rule comprises two parts"); 7:1-4 ("According to the method of the invention, other rules involving phoneme's duration and/or context can be specified."); 7:53-57 ("The following is an example of a set of rules, according to the present method, of course this is only an example of a set of rules which could be used for illustrative purposes, and many other rules could be specified according to the method of the invention."); 9:23-26 ("The rules of the present invention are extensible and freeform in the sense that they may be created as desired and adapted to a wide variety of animation, characters, situations, and products.").

Docket No. 455 at 15-16. The Tentative Order noted that even if the Court were to accept Defendants' argument that the exemplary rules in the specification only related to rules in the categories of "correspondence rules" and "transition rules," "Defendants [had] not demonstrated that the patentee had a clear intention to limit the claim scope to these two categories of rules." *Id.* at 16.

---

use the claimed type of rules." *McRO*, 837 F.3d at 1315.

[7] The Court's Tentative Order regarding Defendants' early summary judgment motion and request for supplemental claim construction has not been adopted as the final ruling of this Court, and thus the views on supplemental claim construction expressed in the Tentative Order have not been entered in this matter.

After further discussion after oral argument, a decision was made to wait until the normal dispositive motion deadline for Defendants to renew their non-infringement motion.  Defendants eventually did bring a second motion for summary of non-infringement, but in that motion, Defendants did not renew their claim construction argument for the "first set of rules" limitation.

## II.  <u>LEGAL STANDARD</u>

### A.  *Summary Judgment*

Under Federal Rule of Civil Procedure ("Rule") 56, a party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought, and the court shall grant it when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005).  As to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

To satisfy its burden at summary judgment, a moving party with the burden of persuasion must establish "beyond controversy every essential element of its [claim or defense]."  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003); O'Connell & Stevenson, *Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial* ("*Federal Practice Guide*") § 14:126 (2016).  By contrast, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and citing *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (holding that the *Celotex* "showing" can be made by "pointing out through argument . . . the absence of evidence to support plaintiff's claim")).

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted) (citing, among other cases, *Celotex*, 477 U.S. at 323). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *See FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In addition, the evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Relatedly, "[a]ny objections to declarations or other evidence must be made at or (preferably) before the hearing, and should be ruled upon by the court before ruling on the motion itself." *Federal Practice Guide* § 14:333 (citing *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 n.9 (9th Cir. 1980); *Sigler v. American Honda Motor Co.*, 532 F3d 469, 480 (6th Cir. 2008)). In judging evidence at the summary judgment stage, however, courts do not make credibility determinations or weigh conflicting evidence at the summary judgment stage, and must view all evidence and draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [the non-movant's] favor.").

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g); *see also* Federal Practice Guide § 14:352 ("A partial summary judgment may be granted on motion of either party for adjudication of particular claims or defenses.") (citing *id.* § 14:33).

B. *Patent Invalidity for Lack of Enablement*

A patent's specification shall describe "the manner and process of making and using [the invention], in such clear and concise, and exact terms as to *enable* any person skilled in the art to

which it pertains, or with which it is most nearly connected, to make and use [the invention]." 35 U.S.C. § 112, ¶ 1 (emphasis added).[8]   The enablement requirement implicit in 35 U.S.C. § 112 ¶ 1 "serves the dual function in the patent system of ensuring adequate disclosure of the claimed invention and of preventing claims broader than the disclosed invention*." MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380-81 (Fed. Cir. 2012) (citations omitted).   Enablement is a question of law based on underlying facts.  *Wyeth and Cordis Corp. v. Abbott Labs*., 720 F.3d 1380, 1384 (Fed. Cir. 2013).

The search for enablement requires a determination of whether there is "sufficient disclosure, either through illustrative examples or terminology, to teach those of ordinary skill how to make and how to use the invention as broadly as it is claimed."  *In re Vaeck*, 947 F.2d 488, 496 (Fed. Cir. 1991).   Even if a considerable amount of experimentation would be necessary for a person of skill in the art to practice the full scope of the claimed invention, a claim is sufficiently enabled "so long as the experimentation 'is merely routine, or if the specification in question provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed.'"  *Vasudevan Software, Inc. v. MicroStrategy Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015) (citing *In re Wands,* 858 F.2d 731, 737 (Fed. Cir. 1988)).   In determining whether experimentation is undue, courts consider the *Wands* factors: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.  *Id*. (quoting *In re Wands*, 858 F.2d at 737).   "Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations."  *In re Wands*, 858 F.2d at 737.

For claims that cover multiple embodiments, "the specification must enable the full scope of the claims."  *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.,* 501 F.3d 1274, 1285 (Fed. Cir. 2007) (finding the asserted patent invalid for lack enablement when the specification, which enabled mechanical side impact sensors, did not satisfy the enablement requirement for claim limitations which included both mechanical and electronic side impact sensors).   However, this

---

[8] The America Invents Act did not change the relevant language of 35 U.S.C. § 112 at issue here, but did change the paragraph numbering convention for this section of the statute from numbers to letters.  In other words, for patent applications filed after September 16, 2012, 35 U.S.C. § 112(a) applies rather than 35 U.S.C. § 112 ¶ 1.  The patent at issue in this case was first filed before September 16, 2012, and thus the Court will refer to the pre-AIA section numbers.

9

does not necessarily mean that a patent must disclose every "embodiment," *i.e.* species, implicated by a claimed genus.  *In re Vaeck*, 947 F.2d 488, 496 (Fed. Cir. 1991) ("It is well settled that patent applicants are not required to disclose every species encompassed by their claims, even in an unpredictable art.").  Instead, "the disclosure must adequately guide the art worker to determine, without undue experimentation, which species among all those encompassed by the claimed genus possess the disclosed utility."  *Id.* (footnote omitted); *cf. Auto Techs.*, 501 F.3d at 1285 ("[e]lectronic side impact sensors are not just another known species of a genus consisting of sensors, but are a distinctly different sensor compared with the well-enabled mechanical side impact sensor that is fully discussed in the specification.").

## III.  <u>ANALYSIS</u>

There are many layers to the parties' enablement arguments, and the Court has concerns about many of them.  First, apparently the parties still dispute the scope of the claims, particularly as to the meaning of the phrase "first set of rules" itself.  Second, the parties dispute the scope of the disclosure in the specification, including whether the specification's examples are limited to focusing on a specific "keyframe approach."  Besides these apparent disputes about the specific record in this case, the parties also demonstrate some disagreement about the law on enablement.  And only then, after teeing up all of those various issues, do the parties submit their competing expert testimony to support their positions over whether a person of skill in the art would be able to practice the full scope of the claim, based on the specification's teachings, without undue experimentation.

The parties' dispute over the scope of the claims does not take center stage in their briefs, but seems to potentially be a pivotal issue for consideration.  Specifically, Plaintiff takes the position that the claims do not require that a person be in possession of a first set of rules for every visual phoneme relating to every word in the English language.  As Plaintiff puts it, "the claims require only rules that are applied to the phoneme sub-sequences in a transcript.  For example, as taught in the specification, animating the word 'hello' requires as few as four rules."  Docket No. 758 at 17.  Defendants respond by briefly arguing that, according to the specification, "[i]n operation and use, the user must manually set up default correspondence rules between ***all visual phoneme groups*** and morph weight sets."  Docket No. 760 at 15 (citing '278 Patent at 6:43–45).

This appears to be a somewhat significant issue getting casually tossed into the parties'

papers.  Whether or not the term "first set of rules" in Claim 1 must cover a full set of rules for all visual phoneme groups, or can just be a set of rules that is enough to cover only the words in whatever time-aligned phonetic transcript is at hand appears to be a claim construction question. But the parties have not presented fulsome claim construction arguments to support their competing positions.  On the one hand, Plaintiff cites to the claim language ('278 Patent at Claim 1 ("A method for automatically animating lip synchronization and facial expression of three-dimensional characters comprising: obtaining ***a first set of rules that defines a morph weight set stream*** as a function of phoneme sequence and times associated with said phoneme sequence." (emphasis added)).  On the other, Defendants cite to one line from the patent specification.  '278 Patent at 6:43–45 ("In operation and use, the user must manually set up default correspondence rules between all visual phoneme groups and morph weight sets.").  The Court declines to make a further determination about the scope of the phrase on such a limited record.

The Court speculates, though, that if the claims only require a first set of rules that would address whatever time-aligned phonetic transcript has been submitted for animation, Plaintiff's caselaw would suggest that it is more likely that the claims are enabled.  *See CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003).  This is because a person of skill in the art would be more likely to be able to create a full set of rules for a short phonetic transcript based on the patent disclosure without undue experimentation.  For what appears to be an important point, the Court questions why Defendants do not spend more time rebutting it, either with caselaw or evidence showing that *even if* the first set of rules need not include all visual phoneme groups, enablement problems remain.  The unresolved nature of this dispute alone may defeat Defendants' bid for summary judgment.

Besides this issue and one other issue about the scope of the claims,[9] the parties apparently agree that this Court's construction of "first set of rules" encompasses more than simply a rule scheme that involves rules applied at keyframes.[10]  *See, e.g.*, Docket No. 758 at 4-

---

[9] The parties also dispute whether the animation produced by the claimed method must be "high-quality" to be consistent with the disclosure in the specification.  *See* Docket No. 758 at 16 ("the claims are not directed to 'high quality' animation at all, let alone for every known phoneme sequence in the English language."); Docket No. 760 at 15 ("the specification states that the 'primary object' of the invention is 'producing ***accurate and realistic*** lip synchronization and facial expressions in animated characters." (emphasis in original).)  Although this issue is also likely relevant, it does not appear to be as important as the issue of the scope of the term "first set of rules."

[10] Defendants state that they reserve the right to appeal the Court's claim construction for this term, but accept the current interpretation of the limitation for purposes of their motion only.

5; Docket No. 760 at 1 ("Defendants do not dispute that McRO prevailed on having the Court adopt its broad construction of 'first set of rules.'").  It is on this keyframe issue that Defendants' motion focuses its energy, and it is particularly in terms of the disclosure in the patent specification.

Indeed, Defendants spend a significant portion of their opening brief "setting the stage" for their enablement arguments by characterizing the '278 Patent specification as only providing *any* amount of specific information about rules that are part of a "keyframe approach." According to the '278 Patent, the general structure of a "keyframe approach" is a two-step process.  First, a set of "correspondence rules" marks the beginning of each new phoneme (*i.e.*, each "keyframe").  *See, e.g.*, '278 Patent at 4:1-11.  Second, a set of "transition rules" is used to interpolate between the keyframes.[11]  *Id.*  Defendants argue that the '278 Patent's only general description explaining how rules are applied to create an animation is explained in terms of these correspondence rules and transition rules.  Docket No. 756-1 at 4 (citing '278 Patent at 5:45-6:2). Defendants further state that the "small set of examples of specific rules – twenty in all" all "hew" to these same correspondence and transition rules.  Defendants argue that because: (1) the specification only provides *some* information about a particular species of rules (correspondence and transition rules) and (2) even then, does not provide sufficient information to disclose a full rule set, the claims are not enabled.

Plaintiff initially challenges Defendants as raising a late claim construction argument and accuses Defendants of again attempting to propose a construction of "first set of rules" limited to keyframing.  Although Plaintiff misses Defendants' point a bit, Plaintiff does observe that certain disclosure in the specification refers to rules that do not necessarily have to be applied at keyframes.  Plaintiff cites a portion of the '278 Patent describing "post processing rules," and stating, "some rules may apply only to keyframes before interpolation, some to interpolated data."  '278 Patent at 7:17-19.  In other words, Plaintiff points to disclosure in the '278 Patent specification to suggest that the specification describes more than just a particular species of rules, and to perhaps suggest even further that this disclosure supports the conclusion that the full

---

[11] This approach is very similar to the process for manual animation described in the Background of the Invention section of the '278 Patent.  *See* '278 Patent at 2:27-32 ("to animate speech, the artist needs to set all of these weights at each frame to an appropriate value.  Usually this is assisted by using a 'keyframe' approach, where the artist sets the appropriate weights at certain important times ('keyframes') and a program interpolates each of the channels at each frame.").

breadth of the claimed "first set of rules" limitation is enabled.

Here, the Court again has concerns with how both parties address the issue. Plaintiff, for instance, fails to provide any reasoning, through an expert report or otherwise, to explain how this sentence of disclosure helps to enable rules that could potentially be significantly different from the species of correspondence/transition rules disclosed in the specification. Notably, even this portion of the specification's disclosure relates to an embodiment that uses keyframing and interpolation as part of the animation process, but simply includes additional rules on top of those related the keyframes. *See also* '278 Patent at 7:16-32; 9:15-27. Defendants, meanwhile, do not submit evidence or argument to thoughtfully rebut Plaintiff's citation to the specification, but rather dismiss Plaintiff's cited portions of the specification's disclosure as "oracular." But Plaintiff's citations are not the only portions of the patent specification disclosing that rules need not be implemented solely at keyframes. *See also* '278 Patent at 9:15-27 (describing post-processing rules that can be applied to a morph weight set stream after interpolation).

The issue here is that Plaintiff might have an easier time demonstrating enablement if it is able to show that the exemplary rules in the '278 Patent have general applicability outside of just the context of correspondence and transition rules. And conversely, Defendants would have an easier time demonstrating lack of enablement if their characterization of the specification as only somewhat disclosing rules relating to correspondence and transition is correct. This aspect of the parties' dispute may not be so critical to the enablement determination. But it does again highlight that each party fails to thoughtfully grapple with the other party's position in a way that allows the Court to fully consider and resolve the issues.

The reason this aspect of the dispute may not be critical to the enablement determination is that, either way (and for now assuming that a "first set of rules" requires a set of rules for all visual phoneme groups), Plaintiff faces an uphill battle. Plaintiff effectively concedes that the '278 Patent does not disclose a full set of rules for all visual phonemes with morph weight sets. Although Plaintiff disagrees with Defendants that the patent's twenty examples represent only a "small set" of examples, Plaintiff does not provide any context for its challenge to Defendants' characterization. Beyond citing to the language of the claim itself, Plaintiff does not provide the Court with any exemplary metric that might allow the Court to understand the exact bounds of what is claimed in the patent as a first set of rules. For instance, the Court does not know (from either party) how many rules one might estimate would be necessary to create a full first set of

13

rules for all visual phoneme groups.  The Court also does not know (from either party) how much the information provided in the exemplary rules disclosed in the specification is translatable over to related rules.

These comments lead the Court to another issue relating to the parties' interpretations of the scope of the patent specification: a significant part of the Court's concerns with the parties' (and particularly Defendants') papers and supporting evidence is that the parties frame their arguments one way, but their experts frame them in a completely different way.  For instance, even though Defendants raise their points regarding the keyframe approach as central to their enablement argument, Defendants do not submit *evidence* that describes the enablement dispute in the same way as it is described in Defendants' papers (and Plaintiff does not submit rebuttal evidence directly responding to Defendants' keyframe approach characterization, either).  That is, neither expert considers this dispute as one about: (1) whether the patent only (inadequately) discloses a keyframe approach species within the genus of claimed rules (that is, a genus of rules defining morph weight set stream as a function of phoneme sequence and timing); and (2) whether a person of skill in the art, reviewing the disclosure of the '278 Patent, including its disclosure regarding the keyframe species, would conclude that the specification does not provide sufficient disclosure to enable the use of other species not disclosed in the patent, but covered by the claimed genus.  Instead, both Plaintiff and Defendants rely on expert reports where each expert simply opines in general terms that in their opinion, the '278 Patent enables (or does not enable) a first set of rules.  *See* Expert Report of Dr. Michael Gleicher ("Gleicher Decl."), Docket No. 658-6; Expert Report of Defendants' Expert Dr. Brian Wyvill ("Wyvill Decl."), Docket No. 659.  The parties' failure – and particularly Defendants' failure – to submit expert testimony to support their own arguments about how a person of ordinary skill in the art reviewing the patent disclosure would interpret that disclosure (*i.e.*, as potentially, but not quite, disclosing a keyframe method that fails to enable the full scope of the claim phrase "first set of rules) creates just another problem with Defendants' motion that, despite what appear to be some serious shortcomings in the patent specification, supports denial.

This is particularly true where much of the dispute both before and during the appeal to the Federal Circuit involved the parties initially explaining the technology in terms of keyframes.  In other words, this enablement dispute and how Defendants have chosen to frame it has been a long time coming.  Indeed, after returning from the Federal Circuit, Defendants' request for

14

supplemental claim construction essentially sought that the Court add keyframe limitations into the construction of "first set of rules."   The Court is quite perplexed why, despite this long and significant procedural history, Defendants did not muster an expert report or other evidence that directly addressed the issues it raises in its briefs.

With no evidentiary support for their own characterization of the intrinsic record, Defendants instead can only rely on their expert testimony for a more general assertion that developing a set of rules is hard and it would have required undue experimentation.   For instance, Defendants argue their expert, Wyvill, "opined that to practice the claims as part of a functional lip-synchronization system would require rules of far greater complexity than the small set of crude examples that the specification discloses − rules that all fall into the narrow category of correspondence and transition rules, encompassed in simple if-then logic statements."   Docket No. 760 at 5 (citing Expert Report of Dr. Brian Wyvill ("Wyvill Decl."), Docket No. 659 ¶¶ 51-55, 378-382).   Thus, Defendants assert, the fact that Wyvill did not mention keyframing in his expert report is irrelevant.   *Id.*   Unfortunately, by failing to frame the issue in terms of keyframing (that is, the way Defendants frame the issue in their briefs), Wyvill then fails to describe with particularity why a person of skill in the art would face undue experimentation both in terms of the keyframing method and rules directed to non-keyframing approaches.

Of course, there are possibly more significant problems with Gleicher's report.   First of all, Gleicher does not offer much more specifics in way of rebutting Wyvill's statements.   But Gleicher also appears to potentially rely on an incorrect understanding of the law on enablement. Near the end of the section of his report addressing enablement, Gleicher states, "[i]t is my understanding that a single species can suffice to claim the genus."   Gleicher Decl. ¶ 210.   This statement is similar to one that Plaintiff makes in its opposition: "[a]s a general rule, in the predictable arts 'the enablement requirement is met if the description enables ***any mode of making and using the invention***.'"   Docket No. 758 at 8 (quoting *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005)).   The *Invitrogen* case, however, was specifically limited to addressing the enablement of a claimed composition, not a claimed method.   Indeed, *Invitrogen* specifically distinguished itself from other cases involving questions of enablement of method claims more similar to the ones at issue in this case.   *Invitrogen*, 429 F.3d at 1071 (citing *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d

15

1190, 1198 (Fed. Cir. 1999)) (observing that in *National Products*, "[t]he claim was to a method, not a compound."). In the context of method patents, the issue is not so black and white, and disclosing only one species of a genus is not necessarily enough. *See, e.g.*, *Auto Techs.*, 501 F.3d at 1285.

It is possible that Plaintiff/Gleicher's limited reading of the law infected their arguments/opinions such that, even on the limited evidentiary record submitted by Defendants, they cannot show a genuine issue of material fact even as to the issue of undue experimentation. But if that is not the case, Defendants will still need to explain to the Court how summary judgment remains appropriate, given the many factual disputes that, according to Plaintiff, "abound." *See in re Wands*, 858 F.2d at 737 ("Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations.")

## III.  <u>CONCLUSION</u>

For the reasons stated and others, the Court has not reached a final determination on this issue and expects the parties to closely direct their arguments to either the issues raised in the tentative or others that will directly resolve the dispute one way or the other from their particular point of view.